United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDD KING, et al.,

            Plaintiffs,

    v.

NATIONAL GENERAL INSURANCE
COMPANY, et al.,

            Defendants.

Case No.  15-cv-00313-DMR

**ORDER ON MOTION TO DISMISS,
MOTION TO STRIKE, AND MOTION
TO FILE SURREPLY**

Re: Dkt. Nos. 39, 40, 53

Plaintiffs[1] are qualified "Good Drivers"[2] who purchased car insurance from the Defendant insurance companies.  Plaintiffs now bring a putative class action alleging that Defendants failed to offer Plaintiffs and the putative class members their lowest Good Driver rates, as required by California law.  Before the court are Defendants' motion to dismiss ("MTD") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and motion to strike ("MTS") pursuant to Federal Rule of Civil Procedure 12(f).  [Docket Nos. 40, 39, respectively.]  Plaintiffs have also filed a motion for leave to file a surreply to the MTD.  [Docket No. 53.]  The court held a hearing on the motions on September 10, 2015.  For the reasons stated below and at the hearing, the motion to dismiss is **granted in part and denied in part,** and the motion to strike is **denied without prejudice.**

---

[1]  The named Plaintiffs are Edd and Diedre King and Elmo Sheen.  Defendants are National General Insurance Company ("NGIC"), National General Assurance Company ("NGAC"), Integon National Insurance Company ("Integon National"), Integon Preferred Insurance Company ("Integon Preferred"), MIC General Insurance Corporation ("MIC"), Personal Express Insurance Company ("Personal Express"), and Sequoia Insurance Company ("Sequoia").

[2]  Section 1861.025 of the California Insurance Code defines criteria for individuals to qualify as "Good Drivers" who may purchase a "Good Driver Discount policy."

# I.       BACKGROUND[3]

## A.       Good Driver Discount Rate

Plaintiffs all held insurance policies issued by one or more of the Defendants.  Plaintiffs allege that they and all members of the putative class are "Good Drivers" as defined by California statute.  First Am. Compl. ["FAC," Docket No. 28] at ¶ 4.  California requires insurers providing private passenger automobile insurance ("PPA" policies) to offer a Good Driver discount to qualified drivers.  *Id.* at ¶ 24.  *See also* Cal. Ins. Code § 1861.025 (defining persons qualified to purchase a "Good Driver Discount policy"); § 1861.02(b)(1) ("Every person who meets the criteria of Section 1861.025 shall be qualified to purchase a Good Driver Discount policy from the insurer of his or her choice."); § 1861.02(b)(2) ("The rate charged for a Good Driver Discount policy shall comply with subdivision (a) and shall be at least 20% below the rate the insured would otherwise have been charged for the same coverage.").

## B.       Common Control Group

According to Plaintiffs, if one or more insurers are commonly owned or are operated under common management, California law requires any insurer within that group to offer a qualified Good Driver the policy with the lowest rates for that coverage offered by any of the insurers within the group.  FAC at ¶ 24.  *See also* Cal. Ins. Code § 1861.16(b) ("An agent or representative representing one or more insurers having common ownership or operating in California under common management or control shall offer, and the insurer shall sell, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control

---

[3]  When reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). Defendants also style their motion to dismiss as being a motion to dismiss for lack of subject matter jurisdiction based on Rule 12(b)(1), which in some circumstances permits the court to consider evidence outside the pleadings and does not require the court to presume the truthfulness of the allegations. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  The court need not presume the truthfulness of the plaintiff's allegations.") (citation omitted). The information in this section is derived from the allegations in the First Amended Complaint unless otherwise noted.

group, which offers the lowest rates for that coverage.").

Plaintiffs allege that Defendants are part of a common control group as defined by California Insurance Code § 1861.16(b). *Id.* at ¶¶ 1, 15. Specifically, from at least January 1, 2008, "Defendants' applicable policy form filings, rate filings, rule filings and/or marketing representations with respect to the offering of the policies at issue and the Good Driver discounts were all drafted, developed, filed and/or approved for use by each Defendant insurer in the same or similar manner and by the same managers and personnel." *Id.* at ¶ 16. Defendants hold themselves out as a single entity when marketing their insurance products, including offering a Good Driver Discount policy for California automobile policyholders. *Id.* at ¶ 17. There is actual or apparent agency among the Defendants with respect to the conduct, marketing of policies, marketing of Good Driver discounts and the resulting legal and contractual responsibilities of each of the Defendant companies on behalf of the other named Defendant companies. *Id.*

The California Insurance Code provides for exceptions to the general rule that requires any insurer within a common control group to offer the lowest Good Driver rate of the group. *Id.* at ¶ 25 (citing Cal. Ins. Code § 1861.16(c)(1)). Plaintiffs allege that Defendants do not meet the criteria for any exemption from the rule that insurers within a common control group must offer the lowest Good Driver rate of any insurer within that group. *Id.* at ¶ 26.

### C.   Allegedly Wrongful Behavior

Plaintiffs allege that "[a]cting together in concert and holding themselves out to be a single entity, [Defendants] have unlawfully overcharged Plaintiffs and other qualified Good Drivers for automobile insurance" and "failed to provide the lowest Good Driver rates[4] that were legally required under applicable law, marketed and promised to Plaintiffs and the Class and/or contained in Defendants' Control Group regulatory filings." *Id.* at ¶¶ 1, 33. *See also id.* at ¶ 4 ("Defendants have systematically and uniformly failed to provide [their lowest] Good Driver premium rates to Plaintiffs and the Class, instead overcharging Plaintiffs and the Class and thereby engaging in and

---

[4] Plaintiffs' pleading suggests that Section 1861.16(b) requires the provision of the lowest "rate." However, as discussed below, the statute itself requires that the insurer shall offer "a good driver discount *policy* to a good driver from an insurer within that common ownership, management, or control group, *which offers the lowest rates for that coverage*." (emphasis added).

continuing to engage in unlawful, unjust, fraudulent and/or unfair business practices."); ¶ 27 ("[A]s evidenced by the issuance of policies, Plaintiffs paid their insurance premiums for automobile insurance as billed by Defendants, which improperly included overcharges and did not include the lowest available Good Driver rate among companies in their Control Group that they were entitled to receive.").

Furthermore, Plaintiffs allege that Defendants did not inform policyholders who had been overcharged of their right to be reimbursed for their premium overpayments, and did not offer to or make the required reimbursements when overcharges were discovered. *Id.* at ¶ 29. Instead, "as a Control Group, Defendants maintain and/or maintained substantially uniform and systematic policies, procedures and practices designed to conceal this wrongful conduct from Plaintiffs and the Class." *Id.* Furthermore, "[b]ecause of Defendants' active concealment and ongoing fraudulent actions, the Plaintiffs and the Class were not reasonably able to discover Defendants' wrongful conduct and/or the premium overcharges …" *Id.* at ¶ 34; ¶ 70

### D.    Claims

Plaintiffs bring eight causes of action: (1) breach of contract; (2) bad faith and breach of the covenant of good faith and fair dealing; (3) quantum meruit; (4) declaratory relief; (5) fraud and misrepresentation; and (6)-(8) violations of California's Unfair Competition Law ("UCL"), codified at California Business and Professions Code § 17200 *et seq.*, for unlawful, unfair, and fraudulent business practices.

## II.    LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A court may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

United States District Court
Northern District of California

4

U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

### III.    MOTION TO DISMISS

Defendants raise a host of arguments against Plaintiffs' claims.  ***First***, Defendants contend that Plaintiffs have failed to allege that they have been injured by Defendants' conduct, so that they do not have standing under Article III of the Constitution to bring this lawsuit.  ***Second***, Defendants contend that Plaintiffs' claims are "regulatory in nature," such that they should be handled by the California Department of Insurance ("DOI") rather than litigated in federal court.  ***Third***, Defendants argue that each of Plaintiffs' claims is insufficiently pleaded.  ***Fourth***, certain Defendants argue that they fall within the exemptions to Section 1861.16(b).  The court considers each argument in turn.

#### A.    Article III Standing

Defendants argue that Plaintiffs lack standing to bring this lawsuit because they have not plausibly alleged an 'injury in fact' to themselves as required to establish Article III standing.

The question of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III [of the U.S. Constitution]."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Allen v. Wright*, 468 U.S. 737, 750-51 (1984) *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).  To establish Article III standing, a plaintiff must establish injury-in-fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury.  *Lujan*, 504 U.S. 560-61; *Lopez v. Candaele,* 630 F.3d 775, 785 (9th Cir. 2010).  To establish an

United States District Court
Northern District of California

injury in fact, the plaintiff must show that he or she has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011).

When ruling on a motion to dismiss for lack of standing, the Court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Nonetheless, the plaintiff has the burden of establishing Article III standing. *See Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir. 1996). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court must] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan,* 504 U.S. at 561 (internal quotation marks and citation omitted). However, "[t]his is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Maya,* 658 F.3d at 1068 (citations omitted). Thus, where a plaintiff concludes that he has been injured but does not allege how "he personally suffered" the injury, the injury-in-fact requirement is not met. *Chapman v. Pier 1 Imports Inc.*, 631 F.3d 939, 954-55 & n. 9 (9th Cir. 2011) (holding that a plaintiff who did not allege how the barriers that existed at a store impacted his disability could not establish injury-in-fact simply by claiming that the store deprived him of "full and fair enjoyment" in violation of the ADA).

Defendants cite four cases purportedly addressing the pleading requirements for injury-in-fact under Article III. In two cases, courts found that the injury-in-fact requirement was not met where plaintiffs had alleged only conjectural or hypothetical injuries that they had not or would not actually suffer. *See Lujan v. Defenders of Wildlife*, 504 U.S. at 558-62 (environmental groups challenging federal regulations that limited reach of the Endangered Species Act failed to demonstrate injury-in-fact; claim that regulations "increase the rate of extinction of endangered and threatened species" failed to show that group members would be "directly affected" by the

regulations); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1004 (9th Cir. 2011) (allegation that municipal ordinance prohibiting landlords from coercing tenant to vacate premises "was intended to, and does, impact [plaintiffs'] operations as landlords" and "subject[s] [plaintiffs] to the legal and constitutional infirmities of the municipal ordinance" was insufficient to establish injury-in-fact, where there was no allegation supporting an inference that landlords intended to engage in conduct prohibited by ordinance).  The third case undermines Defendants' argument, as the court concluded that the plaintiffs had sufficiently pleaded an injury-in-fact. *See Gladstone Realtors v. Vill. of Bellwood,* 441 U.S. 91 (1979) (allegations that Fair Housing Act violations by real estate brokerage firms were depriving plaintiff residents of village of "social and professional benefits of living in an integrated society" was sufficient to meet injury-in-fact requirement).  The fourth case is inapposite because the court focused on the causation requirement, not the injury-in-fact requirement. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 248 (3d Cir. 2012) (dismissing for lack of standing where plaintiffs "failed to show the requisite causal relationship between the alleged misconduct and its alleged injury").

Defendants' standing argument focuses on Plaintiffs' failure to allege a sufficient factual basis supporting the allegation that Plaintiffs paid higher rates for car insurance than they should have.  Defendant notes that Rule 11 "creates and imposes upon counsel an affirmative duty of investigation both as to law and fact before filing." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987).  But none of the cases cited by Defendants analyzed whether the plaintiff had alleged or proven a sufficient factual basis for the purported injury-in-fact; instead, standing analysis focused on the *nature* of the injury, i.e., whether the plaintiff had alleged that he actually suffered the injury, and whether that injury was sufficiently concrete to meet the standing requirement.  Here, Plaintiffs claim that, as a result of Defendants' actions, they paid more for their car insurance than they should have.  These are actual and concrete economic injuries, not speculative or conjectural ones. *Accord Maya*, 658 F.3d at 1069 ("Plaintiffs claim that, as a result of defendants' actions, they paid more for their homes than the homes were worth at the time of sale.  Relatedly, they claim that they would not have purchased their homes had defendants made the disclosures allegedly required by law. We agree with plaintiffs that these are actual and

7

United States District Court
Northern District of California

1   concrete economic injuries" sufficient to meet the injury-in-fact requirement of Article III).  The

2   court therefore finds that Plaintiffs have sufficiently alleged injury-in-fact and **denies** Defendants'

3   motion to dismiss for lack of Article III standing.

4        To the extent that Defendants argue that Plaintiffs failed to allege a sufficient factual basis

5   for their purported overpayment of car insurance rates, these are arguments that Plaintiffs have

6   insufficiently pleaded the merits of their claims, and are therefore better suited to their motion to

7   dismiss pursuant Rule 12(b)(6) for failure to state a claim, which is analyzed further below.

8   "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in

9   determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the

10  merits of plaintiff's case.  But the threshold question of whether plaintiff has standing (and the

11  court has jurisdiction) is distinct from the merits of his claim." *Maya*, 658 F.3d at 1068 (district

12  court erred by applying Rule 12(b)(6) pleading standard to standing analysis).  "A plaintiff may

13  satisfy the injury-in-fact requirements to have standing under Article III, and ... may be able to

14  'bring a civil action without suffering dismissal for want to standing to sue,' without being able to

15  assert a cause of action successfully." *In re Facebook Privacy Litig.*, 791 F.Supp.2d 705, 712 n. 5

16  (N.D.Cal.2011) (quoting *Doe v. Chao*, 540 U.S. 614, 624-25 (2004)).

17       **B.      Jurisdiction of the California Department of Insurance**

18       Defendants contend that the DOI has exclusive jurisdiction over Plaintiffs' claims because

19  they challenge rates that have been approved by the DOI.[5]  The court first describes the process by

20  which the DOI approves insurance rates and entertains challenges to approved rates; then

21  describes the rule embodied in Section 1860.1 which gives the DOI exclusive jurisdiction over

22  challenges to approved rates; and finally considers Defendants' argument that the DOI should

23  _____

24  [5]   While Defendants' argument invokes the "filed rate doctrine," a judicially-created doctrine that
     prohibits lawsuits challenging rates approved by a regulatory agency, California's statutory

25  scheme explicitly embodies an analogous prohibition in Section 1860.1 of the California Insurance
     Code.  All of the relevant cases cited by the parties recognize that the statutes govern this issue.

26  The filed rate doctrine is relevant, if at all, because it supports courts' interpretations of the
     statutes.  *See MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1448 (2010) ("[T]he filed rate

27  doctrine is analogous to the scheme explicitly embodied in the Insurance Code and, to the extent it
     is relevant at all, is consistent with our interpretation of the statutory provisions at issue in this

28  case.") (citation omitted).

have exclusive jurisdiction over Plaintiffs' claims.

### 1.    DOI Approval of Insurance Rates

Prior to the passage of Proposition 103 in 1998, "California was a so-called 'open rate' state, that is, rates were set by insurers without prior or subsequent approval by the Insurance Commissioner.  The Commissioner was empowered to prohibit an insurance rate only if a reasonable degree of competition did not exist in the area and the rate was found to be excessive, inadequate or unfairly discriminatory."  *Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th 750, 752 (2000) (citations and formatting omitted).  "The passage of Proposition 103 made numerous fundamental changes in the regulation of automobile and other types of insurance." *Id.* (quotation omitted).  Notably, now a California casualty insurance company "cannot charge a rate unless the rate is part of a rate plan which has been approved in advance by the [DOI]."  *MacKay*, 188 Cal. App. 4th at 1431.  *See also* Cal. Ins. Code § 1861.01(c) ("[I]nsurance rates subject to this chapter must be approved by the commissioner prior to their use.").

The procedure for obtaining the approval of the DOI for a proposed insurance rate is as follows: "(1) an insurer who desires to change a rate files a rate plan application with the commissioner (Cal. Ins. Code § 1861.05 (b)); (2) the commissioner gives notice to the public of the application (Cal. Ins. Code § 1861.05 (c)); (3) a consumer may request a public hearing, or the commissioner may decide on his or her own motion to hold one [*id.*]; and (4) the rate is deemed approved unless the commissioner disapproves it [*id.*]."  *MacKay*, 188 Cal. App. 4th at 1440. "Judicial review of the commissioner's decision, including the decision not to hold a hearing, is available."  *Id.* (citing Cal. Ins. Code § 1861.09).

"After a rate has been approved by the commissioner, it is still possible for an insured to challenge it."  *Id.*  "The Insurance Code provides specific administrative remedies which may be pursued in order to challenge a rate as illegal, even after the rate has been approved," namely, an aggrieved person can file a written complaint with the DOI requesting the Insurance Commissioner "review the manner in which the rate, plan, system, or rule has been applied with respect to the insurance afforded to that person.  In addition, the aggrieved person may file a written request for a public hearing before the commissioner, specifying the grounds relied upon."

Cal. Ins. Code § 1858(a).  "If, after a hearing, the commissioner finds a violation, the commissioner shall order that the insurer discontinue the violating practice, and may also order necessary and proper corrective action."  *MacKay*, 188 Cal. App. 4th at 1441 (citing Cal. Ins. Code, § 1858.3 (a)).  "Any finding, determination, rule, ruling or order made by the commissioner under this chapter shall be subject to review by the courts …."  Cal. Ins. Code § 1858.6.

### 2.     Challenges to Approved Rates Are Within Exclusive Jurisdiction of DOI

Section 1860.1 of the California Insurance Code states that "[n]o act done … pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution of civil proceedings under any law of this State heretofore or hereafter enacted which does not specifically refer to insurance."  However, a different section of the Insurance Code provides that "[t]he business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to ... unfair business practices laws."  Cal. Ins. Code § 1860.03(a).

"The weight of authority in this district and the California Court of Appeals harmonizes Sections 1860.1 and 1860.03(a) by narrowly construing the Section 1860.1 immunity …. As harmonized, challenges to the reasonableness of an approved rate fall within the exclusive ambit of the chapter and are exempt from the requirements of other laws."  *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1082 (N.D. Cal. 2012).  *Accord MacKay*, 188 Cal.App.4th at 1448 ("Insurance Code section 1860.1 precludes a challenge to an approved rate brought under laws outside the Insurance Code."); *Walker*, 77 Cal. App. 4th at 755, 760 (Section 1860.1 has "been interpreted to provide exclusive original jurisdiction over issues related to rate-making to the commissioner"); *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968 (2004) (acknowledging that actions challenging ratemaking authority of DOI fall within Insurance Commissioner's exclusive jurisdiction because of Section 1860.1, but concluding that that provision did not apply because plaintiff's claim did not involve ratemaking); *Wahl v. Am. Sec. Ins. Co.*, No. C 08-0555 RS, 2010 WL 4509814, at *2 (N.D. Cal. Nov. 1, 2010) (same).  Thus, where a plaintiff's claims challenge the reasonableness of an approved rate, courts have found those claims to be precluded

United States District Court
Northern District of California

by Section 1860.1. *See Walker*, 77 Cal. App. 4th at 760 (dismissing putative class action where plaintiffs sought damages or disgorgement of allegedly excessive premiums that were authorized by the DOI, because "explicit statutory authority precludes any further civil challenges to those [the DOI's ratemaking decisions] to recoup premiums charged pursuant to approved rates").

However, while Section 1860.1 precludes litigation against acts done pursuant to the DOI's ratemaking authority, "[i]t does not extend to insurer conduct not taken pursuant to that authority." *MacKay*, 188 Cal. App. 4th at 1449. Thus, where the plaintiff's claim does not involve a challenge to a rate approved by the DOI or DOI's ratemaking authority, the claim does not fall within the exclusive jurisdiction of the DOI and the plaintiff may bring the claim in court in the first instance. *See id.* ("[I]f the underlying conduct challenged was not the charging of an approved rate, but the application of an unapproved underwriting guideline, Insurance Code section 1860.1 would not be applicable."); *Donabedian*, 116 Cal. App. 4th at 995 (permitting UCL claim challenging insurer's practice of using lack of prior car insurance as factor in determining eligibility for Good Driver rate); *Ellsworth*, 908 F. Supp. 2d at 1082-1083 (where plaintiff borrower challenged mortgage lender's practice of force placing flood insurance at cost to the borrower and receiving kickbacks from the insurer, breach of contract, unjust enrichment, and UCL claims were not precluded by Section 1860.1 because they challenged the lender and insurer's conduct, not the premiums charged); *Wahl*, 2010 WL 4509814 at *3 (where insured challenged insurer's practice of force placing insurance coverage even when it would be duplicative of other coverage, UCL claim was not precluded by Section 1860.1 because it was "directed at [the insurer's] allegedly unfair conduct and not at the Commissioner's rate").

Defendants contend that each of Plaintiffs' claims "are inextricably intertwined with Defendants' approved rate filings, seeking an adjudication challenging the DOI Commissioner's decisions, and requiring extensive interpretation and enforcement of the DOI's rulings and approvals." MTD at 11. At the hearing, Defendants noted that the Second Circuit has recently issued a case touching on these issues. *See Rothstein v. Balboa Ins. Co.*, 794 F.3d 256 (2d Cir. 2015). *Rothstein* is distinguishable. There, the plaintiffs were borrowers who failed to buy hazard insurance on their mortgaged properties. The mortgage lender defendants force-placed hazard

11

insurance policies on the borrowers' behalf and required the borrowers to pay for them.  The borrowers alleged that the lenders purchased expensive policies but secretly received kickbacks or rebates from the insurer. The borrowers sued the lenders and the insurer on the theory that the billed amounts were inflated because they did not reflect the kickbacks, which in effect functioned as a discount on the rate.  *Id.* at 260.  The Second Circuit noted that the "theory behind the claims is that Plaintiffs were overbilled when they were charged the full [policy] rates (which were approved by regulators) instead of lower rates" that discounted the amount of the kickback.  *Id.* at 262.  "That theory can only succeed if the [kickback arrangement] should have been treated as part and parcel of the [policy] transaction and *reflected in the* [policy] *rates.*"  *Id.* (emphasis in original).  The court found that the filed-rate doctrine barred its consideration of such a theory: "[W]hether insurer-provided services should have been reflected in the calculation of [cost of the force-placed insurance] is not for us to say; under the nonjusticiability principle, the question is reserved exclusively to the regulators."  *Id.* at 263. Here, Plaintiffs do not advance a theory based on the premise that the rates approved by the DOI were incorrect.  Instead, they argue that Defendants failed to offer the statutorily-required policy (from among policies approved by the DOI).  In any event, *Rothstein* is not binding on this court, and other courts from this district have considered scenarios like those of *Rothstein* and arrived at the opposite conclusion.  *See Ellsworth*, 908 F.Supp.2d at 1082-83 ("Ellsworth does not challenge the rates or the premiums he paid but instead challenges the alleged kickbacks.  ASIC's argument that he really is challenging the premiums is unpersuasive.  Just because the damages are based on increased costs incurred as a result of the alleged kickback scheme does not transform a challenge to conduct and practices into a challenge to the premiums.").

The court finds Defendants' position unpersuasive.  Plaintiffs do not challenge the reasonableness of any particular insurance rate, nor do they attack acts done pursuant to the DOI's rate-making authority.  Instead, Plaintiffs challenge Defendants' allegedly wrongful application of the approved rates, i.e., the conduct and practices that result in Plaintiffs being offered a policy with a higher DOI-approved rate when they should have been offered a policy with a lower DOI-approved rate.  Thus, neither Section 1860.1 nor the filed rate doctrine precludes Plaintiffs from

United States District Court
Northern District of California

litigating their claims in this court, and Defendants' motion to dismiss on this basis is **denied.**[6]

### C.    General Sufficiency of Allegations of Injury

All of Plaintiffs' claims stem from the same alleged act of wrongdoing: Defendants' failure to offer Plaintiffs the policy with the lowest Good Driver rate offered by any Defendant.  Plaintiffs read Section 1861.16(b) to impose this requirement on Defendants.  That statute states:

> An agent or representative representing one or more insurers having common ownership or operating in California under common management or control shall offer, and the insurer shall sell, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control group, which offers the lowest rates for that coverage.

Cal. Ins. Code § 1861.16(b).

There are two problems with Plaintiffs' allegations that Defendants did not meet the requirements of this statute.  ***First,*** under the plain language of the statute, a Good Driver seeking an automobile insurance policy must be *offered a policy* from an insurer within a common control group that offers the lowest rates for that coverage.  But Plaintiffs' allegations do not track to the statutory language, and instead make it appear that that it is an individual insurer's obligation to *match the rate* offered by another insurer in the common control group.  For example, Plaintiffs alleged that Defendants "failed to provide the lowest Good Driver rates that were legally required under applicable law" and "improperly included overcharges and did not include the lowest available Good Driver rate among companies in their Control Group that they were entitled to receive."  FAC at ¶¶ 33, 27.  This does not appear to be what the statute requires.  Plaintiffs' allegations also fail to address the "lowest rates *for that coverage*" language of the statute, i.e., whether the lower-rate insurance policies that Defendants should have offered (but allegedly did not offer) had the same or different coverage than the policies that Plaintiffs were actually offered.

---

[6] This portion of the court's order refers only to Defendants' argument that this *entire case* falls within the exclusive jurisdiction of the DOI.  The court noted at the hearing its concerns about whether *some* aspects of its case may fall within the jurisdiction of the DOI—e.g., the determination of whether the Super Group exemption under Cal. Ins. Code § 1861.16(c)(1) applies to any Defendant, or whether a Defendant's approved rates apply only to certain enumerated "affinity groups."  However, neither party raised this argument in their briefs, and the court declines to consider in this order issues not raised by the parties.

United States District Court
Northern District of California

*Second*, Defendants contend that Plaintiffs' allegations that they were actually charged a higher rate for car insurance than they should have been charged are conclusory and insufficient to meet the pleading standards required by Rule 12(b)(6).  The court agrees.  The allegations in the FAC are bare and conclusory.  *See* FAC at ¶ 40 (Plaintiffs were "overcharged for their premiums … [because] they were charged more than the lowest Good Driver rates available from the companies within Defendants' control group"; ¶ 27 (Plaintiff's insurance premiums "improperly included overcharges and did not include the lowest available Good Driver rate among companies in their Control Group that they were entitled to receive").  What was the Good Driver rate that Plaintiffs were actually charged?  Which of the Defendants had a policy with a lower Good Driver rate that was not offered to the Plaintiffs?  What was that lower rate?  These basic facts are missing from the FAC.  Plaintiffs have therefore failed to plead the factual content that would "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Instead, they have pleaded "bare assertions … amount[ing] to nothing more than a formulaic recitation" of injury. *Id.* at 681 (citation omitted).  Such assertions "do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss*, 572 F.3d at 969.

The gist of Plaintiffs' response is that their conclusory allegation—that policies with lower Good Driver rates existed—is sufficient at the pleading stage, and that the information that will permit them to substantiate the allegation will emerge during discovery.  *See* Opp. to MTD [Docket No. 48] 6 ("Plaintiffs have no means to ascertain [whether a lower rate of insurance was available] at the pleadings stage."); 2 ("Discovery will prove the accuracy of that assertion [that a lower Good Driver rate does or does not exist]"); and 13 ("Plaintiffs could reasonably suspect that an insurer failed to offer the lowest rate, but could not know underlying facts without discovery.").  But this is neither factually accurate nor a correct statement of the law.  First, Plaintiffs concede that Defendants' rate filings are public documents; indeed, their insurance expert relied on those filings in reaching his conclusions in the affidavit attached to Plaintiffs' objection to Defendants'

Request for Judicial Notice.[7]  *See generally* Nash Aff.  Plaintiffs acknowledge that with "the specialized expertise of an actuary," it would be possible to determine "whether they qualified for [a certain] rate or whether it would have been acceptable."  *Id.* at 13.  Second, while a plaintiff is not expected to have full knowledge of the facts before filing a lawsuit, he or she nonetheless has "an affirmative duty of investigation both as to law and fact before filing."  *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987).  The Rule 12(b)(6) pleading standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Yet Plaintiffs' bare suspicion that Defendants withheld a policy with a lower Good Driver rate offers only the sheer possibility of Defendants' wrongdoing.

Rule 12(b)(6) requires more than what Plaintiffs have pleaded.  Plaintiffs' failure to sufficiently plead their basic allegation of wrongdoing—that policies with lower Good Driver rates were available from insurers within Defendants' alleged common control group, and that Defendants did not offer Plaintiffs those policies—infects each of their claims.  The court considers each claim below.

###    D.       Sufficiency of Allegations of Each Claim

####          1.       UCL Claims

#####                a.       Legal Standards

Section 17200 prohibits unfair competition, which is defined as, *inter alia,* "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. Prof. Code § 17200.  Because Section 17200 "is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent . . . ."  *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).  In order to state a claim under the unlawful prong, a plaintiff must allege facts that show that a defendant's business practice—or conduct which can be characterized as a business practice—violates the law, meaning any civil or criminal, federal, state or municipal, statutory, regulatory, or court-made law.  *California v.*

United States District Court
Northern District of California

---

[7]  Rate filings can be viewed and downloaded from the Department of Insurance website.  *See* https://interactive.web.insurance.ca.gov/warff/index.jsp

*McKale,* 25 Cal.3d 626, 632 (1979).  Conduct is "fraudulent" if it is likely to deceive any member of the public.  *Weinstat v. Dentsply Int'l, Inc.,* 180 Cal. App. 4th 1213 n. 8 (2010).  Whether a business practice is "unfair" requires an analysis of whether (i) there exists substantial consumer injury, (ii) the injury is not outweighed by countervailing benefits to consumers or competition, and (iii) the injury was not reasonably avoidable by the consumer.  *Camacho v. Auto. Club of So. Cal.,* 142 Cal. App. 4th 1294, 1403 (2006).

### b.    Analysis

Plaintiffs allege that Defendants engaged in a variety of unlawful, unfair, *and* fraudulent business practices.  The unlawful practices are Defendants' alleged violations of Cal. Ins. Code § 1861.02 and 1861.025.  FAC at ¶¶ 78-79.  Defendants' allegedly unfair practices are "the wrongful charging of excessive insurance premiums and the making of false representations about the premiums charged."  *Id.* at ¶ 84.  Plaintiffs also allege that Defendants acted fraudulently "by failing to disclose material facts concerning their automobile insurance rates, including that their rates violated Cal. Ins. Code and by represented that they provided to statutory Good Drivers the lowest rates within their control group."  *Id.* at 88.

For the reasons stated in Section III.C, the court finds that Plaintiffs have insufficiently pleaded that Defendants committed the allegedly wrongful acts that form the underlying basis for Plaintiff's unlawful and unfair UCL claims, and therefore **grants** Defendants' motion to dismiss those claims.  The motion is also **granted** as to Plaintiff's UCL claim premised on Defendants' allegedly fraudulent behavior, because the allegations of fraud are insufficient for the reasons stated in Section III.D.5.

### 2.    Breach of Contract

In the breach of contract claim, Plaintiffs allege that "Defendants entered into standard-form personal lines automobile insurance contracts with Plaintiffs and the Class members they seek to represent."  FAC at ¶ 38.[8]  Plaintiffs allege that they "reasonably expected that Defendants

---

[8]  Plaintiffs "do not have complete copies of their policy contracts," and have requested them from Defendants, who have refused to provide complete copies.  FAC at ¶ 39.  Partial copies of the policy contracts are attached to the FAC as Exhibits A and B.

United States District Court
Northern District of California

would comply with California law and regulations by offering the lowest Good Driver rates available in Defendants' Control Group for each Class member policyholder eligible for the discount." *Id.* However, "Defendants materially breached these contracts by failing to offer the lowest rates that were available from the companies in Defendants' Control Group for the Good Driver discount, resulting in the overcharges to the Plaintiffs and the members of the Class for their automobile insurance." *Id.* at ¶ 42.

The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (citing *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008)).

Plaintiffs' breach of contract theory rests on the allegation that Defendants failed "to offer the lowest rates that were available from the companies in Defendants' Control Group for the Good Driver discount." FAC at ¶ 42. For the reasons stated above, Plaintiffs failed to plausibly allege the existence of policies with lower Good Driver rates that Plaintiffs should have been offered.[9] For this reason, Plaintiffs' breach of contract claim is **dismissed**.

### 3.      Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs contend that Defendants breached the implied covenant of good faith and fair dealing in the following ways: "[a] failing to offer rates and calculate premiums in compliance with their contractual obligations and/or rate filings made by Defendants' California licensed

---

[9]   The court dismisses Plaintiffs' breach of contract claim because of this fundamental failure, and declines to reach Defendants' alternative arguments for dismissal. However, the court notes that Plaintiffs' theory for breach of contract is difficult to follow because Plaintiffs do not clearly explain how any contract term was breached. Plaintiffs note that the partial contracts attached to the FAC show that Plaintiffs were promised a "Good Driver Discount." *See* FAC, Exs. A-B. But that is all the partial contracts say. There is no description of the amount of the Good Driver Discount, nor any promise that the Good Driver Discount is the lowest of the rates offered by any insurer within a control group. In other words, there is no allegation that any Defendant failed to perform any of the explicit terms of any contract. Plaintiffs argue that "it is an *implied* term of any contract [] that the contracting parties will follow the law," Opp. to MTD at 20 (emphasis added). Even the phrasing of this argument suggests that the more appropriate vehicle for this theory is a claim for breach of an *implied* covenant, not a claim for breach of contract.

United States District Court
Northern District of California

companies within Defendants' Control Group; [b] overcharging the Class by not offering the lowest rate for the coverages within their Control Group, failing to disclose the overcharges and withholding payment without proper cause; and [c] failing to disclose and/or actively concealing material information concerning the rates charged to Plaintiffs and the Class." FAC at ¶ 47(a)-(c).

Every contract possesses an implied covenant of good faith and fair dealing in which "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 684 (1988). In other words, the "implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001). The obligations imposed by the implied covenant are not those set out in the terms of the contract, but are obligations governing the manner in which contractual obligations must be discharged. *See Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 574 (1973) (implied covenant imposes obligations "under which the insurer must act fairly and in good faith in discharging its contractual responsibilities"). The scope of the implied covenant depends on the purposes and express terms of the contract. *Carma Developers, Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 373 (1992). "[A]s a general matter, implied terms should never be read to vary express terms" of a contract. *Id.* at 374. *See also Tollefson v. Roman Catholic Bishop*, 219 Cal.App.3d 843, 853-854 (1990) (the covenant of good faith and fair dealing "cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract") (*disapproved on other grounds in Scott v. Pacific Gas & Electric Co.*, 11 Cal.4th 454, 474 n. 5 (1995)).

In the context of an insurance contract, the implied covenant is often invoked by insureds against insurers who allegedly acted unfairly or in bad faith in denying coverage or compensation, or mishandling a third party's claim against the insured (e.g., by refusing to settle within policy limits or unreasonably refusing to provide a defense). *See Waters v. United Servs. Auto. Assn.*, 41 Cal. App. 4th 1063, 1070 (1996) ("'First party bad faith lawsuits' involve an insured's claims against the insurer under coverages written for the insured's direct benefit under a first party policy. The gravamen of a first party lawsuit is a breach of the implied covenant of good faith and

fair dealing by refusing, without proper cause, to compensate the insured for a loss covered by the policy, or by unreasonably delaying payments due under the policy. 'Third party bad faith lawsuits' … generally involve an insured's suit against his liability insurer arising out of the insurer's mishandling of a third party claim against its insured, such as by unreasonably refusing to settle within policy limits or unreasonably refusing to provide a defense in a third party action.").

Defendants argue for dismissal for the implied covenant claim for several reasons, all of which miss the mark. First, Defendants contend that "no bad faith claim can be maintained absent an underlying breach of contract." MTD at 21. This is not an accurate statement of the law. "It is well established [that] a breach of the implied covenant of good faith is a breach of the contract, and that breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012) (citations omitted). In other words, a breach of the implied covenant is a breach of contract because the implied covenant imposes contractual obligations, but the plaintiff need not demonstrate that the defendant breached a specific contract term to bring a claim for breach of the implied covenant. The cases cited by Defendants do not support their argument, because both stand for the proposition that a first party bad faith claim requires an insured to show that he was owed benefits under the contract. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 35 (1995), *as modified on denial of reh'g* (Oct. 26, 1995); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990). That proposition is clearly not relevant to Plaintiffs' implied covenant claim, which is not based on a first party bad faith claim.

Defendants' second argument also relies on the mistaken assumption that Plaintiffs are asserting a first party bad faith claim. Defendants argue that "a 'bad faith' cause of action is limited to the failure to pay benefits due under a policy and whether the insurer withheld payment of an insured's claim unreasonably." MTD at 21. That is *one* type of bad faith claim, but not the only type, and it is not the bad faith claim asserted by Plaintiffs .

Third, Defendants argue that "Section 17200 cannot be used in conjunction with a bad faith claim." MTD at 21. The cases cited by Defendants are unrelated to this proposition, and are in fact related only to Section 17200 claims, not claims for breach of the implied covenant of good

19

faith and fair dealing.[10]

Fourth, Defendants contend that Plaintiffs' bad faith claim is duplicative of the breach of contract claim. It is true that when the allegations of a claim for breach of the implied covenant "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395 (1990). It is possible that Plaintiffs' implied covenant claim is duplicative of their breach of contract claim; as currently pleaded, the court cannot tell, and so declines to dismiss on that basis at this time. *See* fn. 10, above.

Although the court rejects Defendants' arguments against Plaintiffs' implied covenant claim, it still finds that dismissal of this claim is appropriate for the same reasons the breach of contract claim must be dismissed. Even assuming arguendo that Plaintiffs can articulate how Defendants' alleged failure to abide by the requirements of Section 1861.16(b) constitutes breach of an implied covenant, Plaintiffs have insufficiently pleaded Defendants' failure to abide by Section 1861.16(b) for the reasons already stated.[11] Accordingly, Plaintiffs' implied covenant

---

[10] Defendants cite *Safeco Ins. Co. v. Superior Court*, 216 Cal. App. 3d 1491 (1990) and *Wayne Merritt Motor Co. v. New Hampshire Ins. Co.*, No. 11-CV-01762-LHK, 2011 WL 5025142, at *7 (N.D. Cal. Oct. 21, 2011). Both cases follow *Moradi–Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287 (1988), in which the California Supreme Court found that the California Unfair Insurance Practices Act, which prohibits "unfair and deceptive acts or practices in the business of insurance," does not create a private cause of action and instead leaves enforcement primarily to the California Insurance Commissioner. In subsequent cases, California courts have prohibited UCL claims that attempted to "plead around *Moradi-Shalal*'s holding by merely relabeling their cause of action as one for unfair competition." *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal.App.4th 1061, 1070 (2004). In *Safeco*, the courts rejected a Section 17200 claim based on defendant's claims settlement practices as being barred by *Moradi-Shalal*. 216 Cal.App.3d at 1494. In *Wayne*, the court dismissed a Section 17200 claim based on the allegation that the defendant misrepresented the coverage provided under the policy by burying a limitation of liability clause in the endorsement as being barred by *Moradi-Shalal*. 2011 WL 5025142 at *8. Defendants have not developed this argument as a reason to dismiss Plaintiffs' UCL claims (as opposed to the implied covenant claim), and thus the court declines to consider whether *Moradi-Shalal* would bar those claims.

[11] The court finds the implied covenant claim insufficient because of Plaintiffs' failure to sufficiently allege wrongdoing by Defendants. The court declines to determine at this point whether the wrongdoing, if sufficiently alleged, would support an implied covenant claim.

claim is **dismissed.**

### 4.    Quantum Meruit

Under California law, quantum meruit is "an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269, 1272 (9th Cir.), *cert. denied*, *Carolco Television, Inc. v. National Broadcasting Co., Inc.*, 506 U.S. 918 (1992) (citations omitted). "To establish a claim for quantum meruit, the plaintiff must prove that: [1] the plaintiff rendered services to the defendant's benefit; and [2] the defendant would be unjustly enriched if the plaintiff was not compensated." *Precision Pay Phones v. Qwest Commc'ns Corp.*, 210 F. Supp. 2d 1106, 1112 (N.D. Cal. 2002) (citing *De Laurentiis,* 963 F.2d at 1272). The claim applies especially where the defendant acquires the benefit with knowledge of the circumstances establishing unjust enrichment. *First Nationwide Savings v. Perry,* 11 Cal. App. 4th 1657, 1663-64 (1992). A defendant's expectation to compensate for a received benefit is not necessary, but compensation must be "expected" by a plaintiff "only in the sense that the services rendered must not have been intended to be gratuitous." *De Laurentiis,* 963 F.2d at 1272–73.

Defendants raise several arguments for dismissal of Plaintiffs' quantum meruit claim: (1) quantum meruit is a quasi-contract remedy and not appropriate where there is a contract covering the subject matter of the dispute; (2) quantum meruit is not applicable because Plaintiffs did not render any services; and (3) Plaintiffs have not sufficiently alleged that Defendants were unjustly enriched because there is no plausible allegation that Plaintiffs overpaid for their car insurance. Plaintiffs appear to have abandoned their quantum meruit claim, as they offer no argument in opposition to Defendants' motion to dismiss. Accordingly, the quantum meruit claim is **dismissed without leave to amend.**

### 5.    Fraud[12]

Defendants contend that Plaintiffs' fraud and misrepresentation claim fails to meet the

---

[12]   The court notes that many of Defendants' arguments regarding the insufficiency of Plaintiffs' fraud claims are raised in the MTS.

United States District Court
Northern District of California

1  heightened pleading requirements for fraud claims.

2  　　　Additional pleading requirements apply to fraud claims.  The Federal Rules of Civil

3  Procedure require a party alleging fraud to "state with particularity the circumstances constituting

4  fraud or mistake."  Federal Rule of Civil Procedure Rule 9(b).  Rule 9(b) requires "particularized

5  allegations of the circumstances constituting fraud, including identifying the statements at issue

6  and setting forth what is false or misleading about the statement[s] and why the statements were

7  false or misleading at the time they were made."  *In re Rigel Pharm, Inc. Sec. Litig.*, 697 F.3d 869,

8  876 (9th Cir. 2012).  *See also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106-07 (9th Cir.

9  2003) (court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)

10  by alleging "the who, what, when, where, and how" of the fraud).  "The purpose of Rule 9(b) is to

11  give defendants adequate notice of the charges being brought so they can defend against them, and

12  to deter the filing of frivolous charges related to fraud."  *Orchard Supply Hardware LLC v. Home

13  Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1365 (N.D. Cal. 2013) (citing *In re Stac Electronics

14  Securities Litigation*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

15  　　　Defendants argue that the role of each Defendant in the fraud must be separately pleaded.

16  While "there is no absolute requirement that where several defendants are sued in connection with

17  an alleged fraudulent scheme, the complaint must identify *false statements* made by each and

18  every defendant."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (emphasis in

19  original).  "Participation by each conspirator in every detail in the execution of the conspiracy is

20  unnecessary to establish liability, for each conspirator may be performing different tasks to bring

21  about the desired result."  *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367

22  (9th Cir. 1980).  On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple

23  defendants together but "require[s] plaintiffs to differentiate their allegations when suing more

24  than one defendant ... and inform each defendant separately of the allegations surrounding his

25  alleged participation in the fraud."  *Swartz*, 476 F.3d at 764-65.  "In the context of a fraud suit

26  involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each]

27  defendant[ ] in the alleged fraudulent scheme.'"  *Id.* at 765 (quoting *Moore v. Kayport Package

28  Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989)).  Allegations that "everyone did everything" are

United States District Court
Northern District of California

insufficient.  *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

Plaintiffs' fraud claim alleges the following wrongdoing by Defendants: "[1] misrepresentation to Plaintiffs and the Class about Defendants' compliance with California law and Defendants' rate filings; [2] falsely representing that the amounts offered and billed for insurance coverage were accurate statements and calculations of the policy premiums owed by Plaintiffs and the Class; [3] failing to inform Plaintiffs and the Class of Defendants' failure to offer Plaintiffs and the Class the lowest premium available from any Defendant within Defendants' Control Group; [4] having knowledge of and the ability to determine the amount of the premium overcharges to Plaintiffs and the Class members, but concealing and refusing to act upon that knowledge, including failing to refund the amounts wrongfully withheld; [5] failing to affirmatively disclose to Plaintiffs and the Class members the material inaccuracies in quoting Good Driver premiums within Defendants' Control Group (including renewal premiums), as part of a continuing and ongoing course of conduct; and [6] failing to disclose and continuing to conceal the duration and amounts of the premium overcharges to Plaintiffs and the Class members."  FAC at ¶ 67.  Plaintiffs allege that "the misrepresentations and omissions have been made, and continue to be made by Defendants' sales and marketing agents and employees, including Defendants' direct sales representatives, and insurance producers."  *Id.* at ¶ 68.  Plaintiffs further allege that certain officers and managers of Defendants have knowledge of the alleged misrepresentations.[13]

While these allegations present an impressive amount of text, close inspection leads this court to conclude that they are insufficient to meet the Rule 9(b) requirements.  The allegations fail to answer basic questions about the alleged fraud, including who made the alleged misrepresentations or fraudulent omissions; and how, where, and when those misrepresentations were communicated.  The "what" of the misrepresentations is essentially a restatement of the requirements of Section 1861.16(b).  All that remains is a vague scheme committed by all

---

[13]  Those individuals are "Defendants' President Byron Storms; Kenny Yeh, Product Manager; Kristi Harris, Compliance Analyst; and Rene Treadaway, Compliance Manager."  FAC at ¶ 69.  Plaintiffs do not allege the relationship of each of these individuals to any specific Defendant.

United States District Court
Northern District of California

Defendants to misrepresent something about Defendants' Good Driver rates.  These allegations are simply legal conclusions cast in the form of factual allegations.

For the above reasons, the court **dismisses** Plaintiffs' fraud and misrepresentation claim.

### 6.     Declaratory Relief

Defendants' only argument for dismissing Plaintiffs' claim for declaratory relief is that it seeks a declaration regarding alleged past wrongs, not any prospective rights.  However, this argument misunderstands the nature of the claim.  As pleaded, the declaratory relief claim asserts that Defendants' conduct is "continuous and ongoing."  FAC at ¶ 59.  Plaintiffs seek a judgment "establishing that Defendants' continuing non-payment of premium overcharged amounts … violate the terms of their standard insuring agreements, Defendants' rate filings, express and/or implied material misrepresentations made to the Class by Defendants and/or the obligations owed by Defendant insurance carriers under applicable law."  *Id.* at ¶ 60.  Defendants' argument is therefore irrelevant to Plaintiffs' claim.

However, because Plaintiffs have failed to plausibly allege that Defendants committed the wrongful conduct that is the subject of this claim, Plaintiffs' claim for declaratory judgment must also be **dismissed.**[14]

### IV.     MOTION TO STRIKE

Because every claim in the FAC has been dismissed, the motion to strike is **denied without prejudice as moot.**

### V.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **granted in part and denied in part,** and the motion to strike is **denied as moot**.  The FAC is dismissed in its entirety.

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given

---

[14]     Because the court determines that the FAC shall be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6), it declines to reach the remainder of Defendants' arguments for dismissal, i.e., whether certain Defendants are exempt from Section 1861.16(b) because of the Super Group exemption, because their rates apply only to members of certain affinity groups, and/or because they no longer sell PPAs.  It also declines to take judicial notice of Defendants' exhibits and **denies as moot** Plaintiffs' motion for leave to file a surreply, because they are only relevant to these arguments.

when justice so requires." However, "[w]hen a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Here, because it is not clear that amendment would be futile, the court grants Plaintiffs leave to amend their complaint. The Second Amended Complaint, if any, must be filed by **October 6, 2015**.

**IT IS SO ORDERED.**

Dated: September 15, 2015

_____
Donna M. Ryu
United States Magistrate Judge