UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDD KING, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>NATIONAL GENERAL INSURANCE COMPANY, et al.,<br><br>   Defendants. | Case No. 15-cv-00313-DMR<br><br>**ORDER ON MOTION TO DISMISS CORRECTED SECOND AMENDED COMPLAINT AND MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 75, 76 |

  Qualified California drivers are entitled to purchase "Good Driver Discount" auto insurance policies. Plaintiffs Edd King, Diedre King, Elmo Sheen, and Sheila Lee allege that they are qualified "Good Drivers." Plaintiffs allege that Defendants National General Insurance Company ("NGIC"), National General Assurance Company ("NGAC"), Integon National Insurance Company ("Integon National"), Integon Preferred Insurance Company ("Integon Preferred"), MIC General Insurance Corporation ("MIC"), Personal Express Insurance Company ("Personal Express"), and Sequoia Insurance Company ("Sequoia") share common ownership, management or control, and therefore belong to the same "control group." Plaintiffs bring this putative class action alleging that Defendants failed to cross-offer to Plaintiffs and putative class members the lowest Good Driver rates available within Defendants' control group, as required by California law.

  Defendants previously moved to dismiss the complaint and to strike certain allegations. The court held that Plaintiffs had sufficiently alleged injury-in-fact for Article III standing, and that Plaintiffs' claim did not involve challenges to rates approved by the Department of Insurance ("DOI") or DOI's ratemaking authority, and therefore did not fall within DOI's exclusive jurisdiction. Now before the court are Defendants' second motion to dismiss ("Mot.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and second motion to strike ("MTS") pursuant to Federal Rule of Civil Procedure 12(f). [Docket Nos. 75, 76.]

The court held a hearing on the motions on February 11, 2016. At the hearing, Plaintiffs informed the court that there were factual errors in their Second Amended Complaint related to the Plaintiffs' policies, premiums, and calculations of premium overcharges. Plaintiffs subsequently filed a Corrected Second Amended Complaint. ("CSAC" [Docket No. 90]). The parties agree that the corrections do not require re-briefing of Defendants' motion to dismiss or motion to strike. [Docket No. 89.]

For the reasons stated below, the motion to dismiss is **granted,** and the motion to strike is **denied without prejudice.**

## I.   BACKGROUND

### A.   Good Driver Discount Rate

The information in this section is derived from the allegations in the CSAC unless otherwise noted. California requires insurers that provide private passenger automobile insurance ("PPA" policies) to offer a Good Driver discount to qualified drivers. CSAC at ¶ 1. *See also* Cal. Ins. Code § 1861.025 (defining persons qualified to purchase a "Good Driver Discount policy"); § 1861.02(b)(1) ("Every person who meets the criteria of Section 1861.025 shall be qualified to purchase a Good Driver Discount policy from the insurer of his or her choice."); § 1861.02(b)(2) ("The rate charged for a Good Driver Discount policy shall comply with subdivision (a) and shall be at least 20% below the rate the insured would otherwise have been charged for the same coverage."). Plaintiffs all held insurance policies issued by one or more of the Defendants. Plaintiffs allege that they, along with all members of the putative class, qualify as "Good Drivers" as defined by California statute. CSAC at ¶¶ 3, 4, 21.

### B. Common Control Group and the Duty to Cross-Offer

According to Plaintiffs, the Defendant insurers are commonly owned or operated under common management, and therefore belong to a control group called the "AmTrust Group." Cal. Ins. Code § 1861.16(b); CSAC at ¶¶ 1, 16, 75. More specifically, Plaintiffs allege that from at least January 1, 2008, "Defendants' applicable policy form filings, rate filings, rule filings and/or marketing representations with respect to the offering of the policies at issue and the Good Driver discounts were all drafted, developed, filed and/or approved for use by each Defendant insurer in

2

1  the same or similar manner and by the same managers and personnel." *Id.* at ¶ 17. Defendants
2  hold themselves out as a single entity when marketing their insurance products, including offering
3  a Good Driver Discount policy for California automobile policyholders. *Id.* at ¶ 18. There is
4  actual or apparent agency among the Defendants with respect to the conduct, marketing of
5  policies, marketing of Good Driver discounts and the resulting legal and contractual
6  responsibilities of each of the Defendant companies on behalf of the other named Defendant
7  companies. *Id.* Plaintiffs assert that Defendants NGIC, NGAC, Integon National, Integon
8  Preferred, and MIC have been members of AmTrust Group since prior to the commencement of
9  the January 1, 2008 class period. *Id.* at ¶ 75. Plaintiffs further contend that Defendants Personal
10 Express and Sequoia have been members of the AmTrust Group since April 2013. *Id.*

11 California law requires an agent or representative of any insurer within a control group to
12 offer a qualified Good Driver the policy with the lowest rates for that coverage offered by any of
13 the insurers within the control group. CSAC at ¶ 25. *See also* Cal. Ins. Code § 1861.16(b) ("An
14 agent or representative representing one or more insurers having common ownership or operating
15 in California under common management or control shall offer, and the insurer shall sell, a good
16 driver discount policy to a good driver from an insurer within that common ownership,
17 management, or control group, which offers the lowest rates for that coverage."). The parties refer
18 to this duty as the "cross-offer" requirement of section 1861.16(b).

19 The California Insurance Code provides certain exemptions from the cross-offer
20 requirement. Cal. Ins. Code § 1861.16(c)(1). However, Plaintiffs allege that Defendants do not
21 meet the criteria for any cross-offer exemption. CSAC at ¶ 27.

22 **C. Defendants' Allegedly Wrongful Behavior**

23 Plaintiffs allege that "[a]cting together in concert and holding themselves out to be a single
24 entity, [Defendants] have unlawfully failed to offer and sell Good Driver discounted private
25 passenger automobile policies to Plaintiffs and other qualified California Good Drivers in the
26 Class offering the lowest rates for that coverage," and "failed to offer and sell the policies from
27 their Control Group with the lowest Good Driver rates that were legally required under applicable
28 law, and/or contained in Defendants' Control Group regulatory filings." CSAC at ¶¶ 1, 4, 28, 40.

3

Furthermore, Plaintiffs allege that Defendants did not inform overcharged policyholders of their right to be reimbursed for their premium overpayments, and did not make the required reimbursements when overcharges were discovered. *Id.* at ¶ 36. Instead, "as a Control Group, Defendants maintain and/or maintained substantially uniform and systematic policies, procedures and practices designed to conceal this wrongful conduct from Plaintiffs and the Class." *Id.* According to Plaintiffs, "[b]ecause of Defendants' active concealment and ongoing fraudulent actions..., the Plaintiffs and the Class were not reasonably able to discover Defendants' wrongful conduct and/or the premium overcharges …." *Id.* at ¶ 42; *see also* ¶ 101.

### D. Claims for Relief

Plaintiffs bring seven claims for relief: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) declaratory and injunctive relief; (4) fraud and misrepresentation; and (5)-(7) violations of California's Unfair Competition Law ("UCL"), codified at California Business and Professions Code § 17200 *et seq.*, for unlawful, unfair, and fraudulent business practices.

## II.   LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A court may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Moss v. U.S. Secret Serv.*, 572

F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

When reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d 1119. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Defendants also style their motion as a motion to dismiss for lack of subject matter jurisdiction based on Rule 12(b)(1), which in some circumstances permits the court to consider evidence outside the pleadings and does not require the court to presume the truthfulness of the allegations. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### III.   MOTION TO DISMISS[1]

In their second motion to dismiss, Defendants once again raise a number of arguments against Plaintiffs' claims. First, Defendants contend that Plaintiffs' claims fail because there is no private right of action for violation of section 1861.16(b), that this provision is enforced exclusively by the Insurance Commissioner, and that a violation cannot be "bootstrapped" into other claims for relief. Second, Defendants raise new arguments about certain Plaintiffs. Third, Defendants contend that Plaintiffs still have not sufficiently pleaded Defendants' violation of

---

[1] Defendants' motion to strike and request for judicial notice will be addressed, where applicable.

1  section 1861.16(b), which is the allegation underlying all of Plaintiffs' claims.  Fourth, Defendants

2  argue that each of Plaintiffs' claims is insufficiently pleaded.  Fifth, Defendants argue that certain

3  Defendants are exempt from section 1861.16(b)'s cross-offer requirement.  The court now

4  considers Defendants' arguments.

### A. Plaintiffs' Ability to Enforce Section 1861.16(b)

Plaintiffs do not bring a direct claim to enforce section 1861.16(b).  However, Defendants' alleged violation of section 1861.16(b)'s cross-offer requirement lies at the heart of each of Plaintiffs' claims.  For example, Plaintiffs contend that by violating section 1861.16(b), Defendants are engaged in an unlawful business practice in violation of California Business and Professions Code § 17200 ("UCL").  Similarly, Plaintiffs claim that Defendants' breach of their statutory duty to cross-offer resulted in a breach of Defendants' insurance contracts with Plaintiffs.  Defendants attack all of Plaintiffs' claims, arguing that Plaintiffs cannot "bootstrap" section 1861.16(b) as the basis for their claims because enforcement of section 1861.16(b) is within the exclusive jurisdiction of the Insurance Commissioner.  Mot. at 5-6.  In so doing, Defendants essentially rehash their argument that Plaintiffs' entire complaint falls within the exclusive jurisdiction of the Insurance Commissioner under the rate, rate-making, and rate regulation authority.  The court has already rejected this argument.  *See King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 935 (N.D. Cal. 2015).[2]

In its previous order granting Defendants' motion to dismiss, the court analyzed the boundaries of the Insurance Commissioner's exclusive jurisdiction.  *King,* 129 F. Supp. 3d at 934-936.  In so doing, the court examined the relationship between California Insurance Code sections 1860.1 and 1860.03(a).  On the one hand, section 1860.1 forecloses a private right of action for certain kinds of violations: "[n]o act done ... pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution of civil proceedings under any law of this

---

[2] The court grants Defendants' request for judicial notice of the Court's Order on the First Motion to Dismiss and the Transcript of the September 10, 2015 Hearing on the First Motion to Dismiss [Request for Judicial Notice, "RJN", Docket No. 77, Exs. 13 and 14].  These documents are part of the court's record in this matter and a court may properly take judicial notice of its own records.  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

6

1    State heretofore or hereafter enacted which does not specifically refer to insurance." On the other

2    hand, section 1860.03(a) recognizes that insurers can be civilly liable in certain instances, for it

3    states that"[t]he business of insurance shall be subject to the laws of California applicable to any

4    other business, including, but not limited to ... unfair business practices laws."

5         After reviewing the jurisprudence, the court concluded that the two statutory provisions

6    have been harmonized by narrowly construing the section 1860.1 immunity. Thus, while section

7    1860.1 precludes litigation against acts done pursuant to the DOI's ratemaking authority, "[i]t does

8    not extend to insurer conduct not taken pursuant to that authority." *King,* 129 F. Supp. 3d at 935

9    (*citing MacKay v. Super. Ct.*, 188 Cal. App. 4th 1427, 1449 (2010)). For this reason, where a

10   plaintiff's claim does not involve a challenge to a rate approved by the DOI or DOI's ratemaking

11   authority, the claim does not fall within the exclusive jurisdiction of the DOI, and the plaintiff may

12   bring the claim in court in the first instance. *Id.* (collecting cases where civil claims were

13   permitted where plaintiffs challenged the insurer's conduct, and not the rates approved by the

14   DOI).

15        In this case, the court found that "Plaintiffs do not challenge the reasonableness of any

16   particular insurance rate, nor do they attack acts done pursuant to the DOI's rate-making authority.

17   Instead, Plaintiffs challenge Defendants' allegedly wrongful application of the approved rates, i.e.,

18   the conduct and practices that result in Plaintiffs being offered a policy with a higher DOI-

19   approved rate when they should have been offered a policy with a lower DOI-approved rate." *Id.*

20   at 936. Accordingly, the court held that neither section 1860.1 nor the filed rate doctrine

21   precluded Plaintiffs from litigating their claims in this court based on an exclusive jurisdiction

22   argument. *Id.*

23        In their current motion, Defendants attempt to resuscitate their exclusive jurisdiction

24   argument by citing to California Insurance Code sections 1860.2, 1858.07, 1858.1, and 1858(a).

25   These provisions again relate to the Insurance Commissioner's rate-making authority under

26   Chapter 9 of the Insurance Code.[3] While these provisions may be relevant to an action by the

---

[3] Specifically, the statutes provide that administration and enforcement of Chapter 9 of the Insurance Code is governed by the provisions of that Chapter [§ 1860.2], that the Insurance Commissioner shall determine what constitutes use of a rate, rating plan, or rating system in

7

Insurance Commissioner to enforce section 1861.16(b), they are not relevant here. Indeed, Defendants fail to explain how these provisions are relevant to Plaintiffs' ability to bring the claims for relief that they actually assert in their CSAC: breach of contract, breach of the covenant of good faith and fair dealing, fraud, and claims under the UCL. None of Defendants' cited provisions address whether Plaintiffs may bring otherwise independent claims (such as claims under the UCL) that are premised on violations of section 1861.16(b). *See* Cal. Bus. & Prof. Code § 17200; *Farmers Ins. Exchange v. Super. Ct.,* 2 Cal. 4th 377, 383 (1992) ("section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable" under the UCL").

Defendants conclusorily assert that Plaintiffs cannot bring other causes of action based on a violation of section 1861.16(b) because this constitutes an effort to "circumvent" the law and this would be a prohibited "end around." Mot. at 6; Reply at 2. Defendants do not discuss or analyze any of Plaintiffs' claims, nor do they point to any cases or legislative intent supporting a bar on private civil suits for statutory or common law claims that are based on a violation of section 1861.16(b). Indeed, the court's prior order collected cases where UCL, breach of contract, and unjust enrichment claims were not precluded as falling within the Insurance Commissioner's exclusive jurisdiction. *King*, 129 F. Supp. 3d at 935.

In short, Defendants have once again failed to explain how the lack of a private right of action to enforce section 1861.16(b) bears on Plaintiffs' ability to bring other claims that are predicated on Defendants' alleged violation of that statute. Therefore, Defendants' motion to dismiss Plaintiffs' entire CSAC on the basis that section 1861.16(b) does not create a private right of action is **denied.**

**B. Defendants' Arguments About the Named Plaintiffs**

Defendants mount three arguments aimed at the named Plaintiffs: 1) that all four named Plaintiffs lack standing to sue on behalf of insureds from other insurance companies within the

---

violation of Chapter 9 of the Insurance Code [§ 1858.07(a)], and determine the penalty for the violation [§ 1858.07(b)]. They also provide a procedure for the Insurance Commissioner to give notice to an insurer of issues of noncompliance with the chapter [§ 1858.1], and a mechanism for aggrieved persons to file complaints with the Insurance Commissioner [§ 1858(a)].

8

same alleged control group; 2) that Plaintiffs Sheen and Lee do not have standing because they did not purchase the policies which form the basis for their claims; and 3) that the claims of Plaintiffs Edd King and Deirdre King are defective.

### 1. Plaintiffs' "Standing" to Sue on Behalf of the Putative Class

The court already found that Plaintiffs' allegation that they paid more for their car insurance than they should have is sufficient to meet the Article III injury-in-fact requirement. *King*, 129 F. Supp. 3d at 933. Defendants now make new "standing" challenges to some of the named Plaintiffs. Plaintiffs Edd King and Deirdre King were insureds of Defendant National General, Sheen was an insured of Integon National, and Lee was an insured of Integon Preferred. CSAC at ¶¶ 29- 31. Defendants argue that Plaintiffs lack Article III standing to assert claims on behalf of the putative class members who bought insurance from companies within the control group other than those three Defendant insurers.

Defendants conflate standing and class certification. As the Ninth Circuit recently explained in *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015), "[*s*]*tanding* is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate. *Class certification*, on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class."(emphasis in original). The Ninth Circuit further explained:

> [A]ny issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing. Stated differently, representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.

*Id*. at 1262 (internal citations omitted). Here, the "dissimilarity in injuries" between the four named plaintiffs and the putative class members they seek to represent does not impair their standing to bring their *own* claims. Instead, these issues go to their suitability to represent the class, i.e., whether they are adequate representatives of the claims of the absent putative class members under Rule 23(a). *See id*. at 1262-63.

9

"Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Ralston v. Mortg. Inv'rs Grp., Inc.*, No. 5:08-CV-00536-JF PSG, 2011 WL 4081696, at *2-4 (N.D. Cal. Sept. 12, 2011) (citing 7AA Wright, et al., *Federal Practice and Procedure* (3d 2005) § 1785.1). Thus, "[w]hile a potential class representative must demonstrate individual standing vis-a-vis defendant, once standing has been established, whether he will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23." *Id.* at *3.

Defendants cite four cases in support of their position that Plaintiffs lack standing to bring suit on behalf of putative class members who purchased policies from different control group insurers. None of them are binding, nor do they provide persuasive applicable reasoning. Defendants first rely upon three securities fraud cases holding that the lead plaintiffs lacked standing to challenge offerings through which no lead plaintiff actually purchased a security. These cases are inapposite because they address whether the plaintiffs met the statutory standing requirements specific to class action claims brought under section 11 and 12(a)[4] of the Securities Act of 1933. *See In re Wells Fargo Mortg.–Backed Certificates Litig.,* 712 F. Supp. 2d 958, 963 (N.D. Cal. 2010) ("To have standing to bring suit under section 11, a plaintiff must have purchased a security actually issued in the offering for which the plaintiff claims there was a false or otherwise misleading registration statement. The burden of tracing shares to a particular public offering rests with plaintiffs."); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010) (finding that plaintiffs lacked Article III because they had not met the injury-in-fact requirement and statutory standing under the 1933 Act); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162-63 (2d Cir. 2012) ("The putative class members here did not all purchase debt backed by a single company through offering documents

---

[4] A section 11 claim can be asserted only by "any person acquiring such security." 15 U.S.C. § 77k(a). Similarly, a section 12(a)(2) claim can be asserted only by "the person purchasing such security." 15 U.S.C. § 77*l*(a).

tainted by a single misstatement about that company.").

Defendants' fourth case is also inapposite, as the court specifically noted that the plaintiff was not bringing a class action. *Moreno v. G & M Oil Co.*, 88 F. Supp. 2d 1116, 1117 (C.D. Cal. 2000) ("Plaintiff cannot assert claims against the 82 additional stations based on the rights of other disabled persons who may encounter the barriers. This is not a class action, and the ADA contains no 'private attorney general' language.").

Here, Plaintiffs allege that they, and all putative class members, suffered injuries traceable to concerted unlawful conduct by each of the Defendants in the same Control Group. CSAC ¶¶ 1, 18, 40-44, 75-105. Plaintiffs allege that they were injured by the failure of the Control Group to follow the requirements of section 1861.16(b); they also allege concerted representations and concealment. The fact that some class members purchased their insurance from certain Defendants within the same Control Group does not impact Plaintiffs' standing, but instead goes to questions of typicality and adequacy of representation under Rule 23.

Accordingly, Defendants' motion to dismiss on this basis is **denied.** Defendants' motion to strike on this basis is **denied without prejudice** to renewal of Defendants' arguments in the context of class certification.

### 2. Standing of Plaintiffs Sheen and Lee

Defendants challenge the standing of Sheen and Lee, arguing that their policies lapsed, and that they also never purchased the policies upon which they base their claims. As a practical matter, the court notes that this argument may have been mooted by Plaintiffs' filing of the CSAC, which corrected factual misstatements about the policies purchased by Plaintiffs and attached corrected exhibits of the policies, including different insurance policies for Sheen and for Lee. [Docket Nos. 74-2, 74-3, 89, 90, 90-2, 90-3.]

When ruling on a motion to dismiss for lack of standing, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Nonetheless, the plaintiff has the burden of establishing Article III standing. *See Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir. 1996). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct

may suffice, for on a motion to dismiss [the Court must] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citation omitted).

Both Sheen and Lee allege that, as a result of Defendants' actions, they paid more for their car insurance than they should have, and they were charged for and paid the premium that included the allegedly unlawful overcharge. CSAC ¶¶ 33, 34. The court already found that this allegation is sufficient to meet the Article III injury-in-fact requirement. *King*, 129 F. Supp. 3d at 933.[5] Defendants request that the court take judicial notice of Notices of Expiration for Policy Lapses for Sheen and Lee, and consider them in support of their argument that Lee and Sheen do not have standing. *See* RJN, Exs. 15 (Sheen); 16 (Lee). However, the information in these documents is not properly the subject of judicial notice because they are not generally known facts, nor can they be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). While "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), Plaintiffs' claims are not based on the Notices of Policy Lapse, and their complaint makes no reference to them. Therefore, the court cannot consider the lapse notices at this juncture.

Defendants' motion to dismiss Sheen and Lee because their policies lapsed is **denied.**

### 3. Timing of Plaintiffs Edd King and Diedre King's Claim

Defendants also assert that Edd King and Diedre King's claim suffers from a defect: the Kings allege that they paid too much for their insurance policy from NGIC effective in June 2012 because Personal Express and Sequoia had lower rate policies for that coverage at that time, but the AmTrust Group did not acquire Personal Express and Sequoia until April 2013. Mot. at 13; CSAC ¶ 32, 40. It appears that this issue has been mooted by the filing of the CSAC. While the Kings' policy attached to their SAC had an effective date of June 2, 2012 [Docket No. 74-1], the Kings' policy filed with the CSAC has an effective date of June 2, 2013 [Docket No. 90-1].

---

[5] Sheila Lee was not a Plaintiff in the First Amended Complaint. However, her allegations in the CSAC -- that as a result of Defendants' actions, she paid $89.80 more for her car insurance than she should have -- are sufficient to meet the injury-in-fact requirement. *See* CSAC ¶ 51.

### C. Sufficiency of Allegation That Defendants Violated Section 1861.16(b)

As previously noted, all of Plaintiffs' claims stem from the same alleged act of wrongdoing: failure to comply with the cross-offer requirement of section 1861.16(b). While Plaintiffs have cured some of the deficiencies noted in the court's prior order, Plaintiffs' allegations remain deficient because they do not track the statutory language of section 1861.16(b).

#### 1. Section 1861.16(b)'s Cross-Offer Requirement Falls on "Agents or Representatives," Not Insurers.

In pertinent part, section 1861.16(b) states that: "*an agent or representative* representing one or more insurers having common ownership or operating in California under common management or control *shall offer, and the insurer shall sell*, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control group, which offers the lowest rates for that coverage." Cal. Ins. Code § 1861.16(b) (emphasis added). Under a plain reading of the statute, the duty to cross-offer is placed on "an *agent or representative* representing one or more insurers having common ownership or operating under common management or control." By contrast, the statute requires the *insurer* to "sell" the discounted policy that the agent or representative is required to "offer." Here, Plaintiffs do not challenge any agents' or representatives' failure to cross-offer discounted policies. Instead, they bring suit only against the Defendant insurers themselves. Thus, Plaintiffs allege that the Defendant Control Group "offered and sold" Plaintiffs their policies, [CSAC, at ¶¶ 29-31], and that the "Defendant Control Group companies should have offered and sold" Plaintiffs policies from other Defendant insurers with lower policy premiums for the same or substantially similar coverage. [CSAC, at *¶¶*32-34]. This pleading places the cross-offer requirement on the wrong actors.

As currently pleaded, Plaintiffs' allegations avoid important distinctions among relevant potential actors. For example, "agents" and "representatives" act on behalf of insurers. Thus, an "insurance agent" is a person authorized to act on behalf of an insurer. Cal. Ins. Code § 31. Similarly, section 1861.16(b) defines a "representative" as a "person who offers or prepares premium quotations on behalf of either an insurer or any entity acting directly or indirectly on behalf of an insurer." By contrast, an "insurance broker" transacts insurance with, but not on

13

behalf of, an insurer. Cal. Ins. Code § 33. *See also* Cal. Ins. Code, § 1623(a) (insurance broker is "a person who, for compensation and on behalf of another person, transacts insurance other than life insurance with, but not on behalf of, an admitted insurer.") Unlike insurance agents and representatives, an insurance broker is not an agent of, and cannot bind the insurer. Conversely, the insurer is not liable for the broker's acts or omissions. *Rios v. Scottsdale Ins. Co.,* 119 Cal. App. 4th 1020, 1026 (2004); *Kurtz, Richards, Wilson & Co. v. Ins. Communicators Marketing Corp.*, 12 Cal. App. 4th 1249, 1257–1258 (1993).

Here, the CSAC does not reveal the manner in which Plaintiffs obtained their policies. If Plaintiffs secured their policies through brokers, it is difficult to see how this results in a violation of section 1861.16(b), since the duty to cross-offer is imposed on the agents or representatives of the insurers, not on an insured's own broker. In other words, Plaintiffs' pleading evades the critical question of how they obtained the subject auto insurance policies: through brokers? Through agents or representatives of the insurers? In either case, Plaintiffs' pleading of the underlying violation of section 1861.16(b) fails, as it inappropriately places the cross-offer requirement on the Defendant insurers.

Plaintiffs completely fail to address whether they purchased their policies through brokers. Instead, they argue that they need not allege that they interacted with agents or representatives in selecting their policies because the Defendant insurers determine the rate for the "offer," and ultimately "sell" the policy. Plaintiffs contend that even if Defendants delegated these duties to agents or representatives, Defendants remain responsible. Opp. at 10. Plaintiffs provide two citations in support of this position. First, Plaintiffs cite to a regulation regarding an insurer's ultimate responsibility for rate determination. California Code of Regulations, title 10, § 2360.4 states: "It shall be the responsibility of the insurer to determine the lowest Premium for which an insured qualifies in accordance with this chapter. If the insurer delegates this responsibility to an agent, the insurer shall remain responsible for the agent's determination. This responsibility shall not be delegated to the insured's broker." Plaintiffs argue, without support, that this regulation stands for the general proposition that insurers cannot shift responsibility to their agents or

14

representatives to avoid liability.[6] On its face, this regulation addresses the calculation of premiums. It does not address any other responsibility. Plaintiffs do not allege that Defendants failed to properly determine the correct premium rates for the policies that were offered or sold to Plaintiffs, but rather that Plaintiffs were not offered good driver discount policies from other Defendant insurers within the same control group.

Plaintiffs also cite *Shultz Steel Co. v. Hartford Accident & Indem. Co.*, 187 Cal. App. 3d 513 (1986), for the proposition that insurers are liable for acts of the agent within the scope of the agent's employment. Opp. at 10. *Shultz* is inapposite. In *Shultz*, the California Court of Appeal examined two lines of cases. The first line dealt with situations where the insurer's fiduciary duty was coextensive with the four corners of the insurance contract between the insurer and the insured. In those cases, the courts held that the insurer would be liable for the agents' ostensible authority in connection with an expressed agreement or representation. *Id.* at 521. The second line of cases, which *Shultz* followed, held that where the insurer's breach of fiduciary duty arises outside of an insurance contract, the insurer is not liable to the insured. *Id.* at 521-22. In *Schultz*, an insurance agent of the defendant insurer sold plaintiff a liability insurance policy and imprudently advised plaintiff regarding the amount of liability insurance it should carry. The court found that the insurer owed no duty to advise plaintiff as to the adequacy of its liability coverage limits, and found that the insurer was not vicariously liable for the carelessness of the agent under the doctrine of respondeat superior. *Id.* at 523.

Here, the failure to cross-offer occurred outside of, rather than under, the four corners of the insurance contract. None of Plaintiffs' cited authority supports the position that Plaintiffs need not allege that Defendants' agents or representatives failed to make the cross-offer required by section 1861.16(b) in order to plead a violation of that statute.

---

[6] At the hearing, Plaintiffs also cited California Insurance Code sections 769.81 and 769.85. These provisions deal with the definition of a "Managing General Agent" who negotiates and binds ceding reinsurance contracts on behalf of an insurer, or manages all or part of the insurance business of an insurer and act as an agent of that insurer. Cal. Ins. Code § 769.81(c). The acts of the Managing General Agent are considered to be the acts of the insurer. Cal. Ins. Code § 769.85. These provisions are inapplicable. Neither party appears to contend that the acts of a Managing General Agent are at issue in this case.

15

### 2. "Lowest Rate for *That* Coverage"

Plaintiffs also allege that they would have paid less for their policies had Defendants honored their cross-offer obligations, because Personal Express and Sequoia offered lower rates for "the same policy period and for the same or substantially similar coverages" as the policies that Plaintiffs bought from other insurers within Defendants' Control Group. CSAC ¶¶ 49-51.

Defendants argue that Plaintiffs' allegations regarding the availability of a lower rate for the "same or substantially same coverages" is insufficient. This is because section 1861.16(b) expressly states that an "agent or representative ... shall offer, and the insurer shall sell, a good driver discount policy to a good driver from an insurer within [the control group] which offers the lowest rates for *that* coverage." (emphasis added). According to Defendants, this language means that the cross-offer requirement arises only if there are lower-priced policies with coverage that is *identical* to the coverage in the policies purchased by Plaintiffs. Defendants identify differences in the coverages, including dissimilarities in rental reimbursement, coverage per person and per accident, and in pay-per-mile versus flat premium. Mot. at 10-11.

Plaintiffs argue that the term "for that coverage" refers to one of three types of automobile insurance coverage (liability, physical damage, or collision coverage), rather than the types of coverage terms (e.g., rental reimbursement) identified by Defendants. Plaintiffs contend that section 1861.16(b)'s use of the phrase "for that coverage" relates back to California Insurance Code section 660(a), a provision that defines "policy" as "an automobile liability, automobile physical damage, or automobile collision policy, or any combination thereof, delivered or issued for delivery in this state, insuring a single individual or individuals residing in the same household, as named insured...." The provision goes on to specifically define "automobile liability coverage," "automobile physical damage coverage," and "automobile collision coverage." Cal. Ins. Code § 660(b)-(d). Thus, Plaintiffs argue that the term "for that coverage" in section 1861.16(b) refers to the same general policy *type* of coverage for the three types of coverage listed (liability, physical damage, and collision) in section 660(a)-(d).

It is logical for Plaintiffs to refer to section 660(a), because section 1861.16(a), explicitly references section 660(a)'s definition of a "policy." Defendants do not address Plaintiffs'

interpretation, nor do they offer statutory or case law support for their reading that section 1861.16(b) only requires a cross-offer if there is a lower priced policy that amounts to an exact match to the original policy, down to the minutiae of coverage details.[7]

In sum, although the court rejects Defendants' interpretation of "for that coverage," Plaintiffs' CSAC nevertheless fails to adequately plead a violation of section 1861.16(b). This is because Plaintiffs inappropriately place the cross-offer obligation on Defendants, rather than on their agents or representatives. Since such a violation underlies each of Plaintiffs' claims, the entire case is subject to dismissal based on this pleading defect. For this reason, the court does not reach Defendants' remaining arguments.

## IV. MOTION TO STRIKE

Because every claim in the CSAC has been dismissed, the motion to strike is denied without prejudice as moot.

## V. CONCLUSION

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires." However, "[w]hen a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Here, because it is not clear that amendment would be futile, the court grants Plaintiffs **one final opportunity** to amend their complaint by no later than May 31, 2016.

**IT IS SO ORDERED.**

Dated: May 16, 2016

Donna M. Ryu
United States Magistrate Judge

---

[7] Because the court rejects Defendants' argument that differences in pricing for pay-per-mile v. flat rate policies implicates the policies' coverage, the court declines to take judicial notice of NGAC's Rate Filings. RJN, Ex. 4.