UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDD KING, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONAL GENERAL INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 15-cv-00313-DMR<br><br>**ORDER ON JOINT DISCOVERY LETTER REQUESTING POLICYHOLDER DATA**<br><br>Re: Dkt. No. 273 |

On February 9, 2023 Plaintiffs and National General Defendants[1] were ordered to meaningfully meet and confer regarding Plaintiffs' request for policyholder data for 2011 forward. [Docket No. 251 ("Minute Order").] The parties were instructed to file a joint discovery letter if any disputes remained. They submitted the instant discovery dispute on March 29, 2023.[2] [Docket No. 273 ("JDL").]

In the joint letter, Plaintiffs maintain that all California Good Driver policyholder data for 2011 forward is relevant and necessary for class certification, specifically to calculate damages on

---

[1] National General Defendants include National General Insurance Company ("NGIC"), National General Assurance Company ("NGAC"), Integon National Insurance Company ("INIC"), Integon Preferred Insurance Company ("IPIC"), MIC General Insurance Corporation ("MICG"), and Personal Express Insurance Company ("PEIC"). They do not include Sequoia Insurance Company.

[2] Plaintiffs also filed an administrative motion to consider whether another party's material should be sealed. [Docket No. 272.] The court has reviewed the motion as well as National General Defendants' statement in support of the motion. [Docket No. 278.] For good cause shown, the court grants Plaintiffs' request to seal Exhibit A to Exhibit 100 and Exhibit A to Exhibit 101 of Daniel Wolfram's deposition dated March 7, 2023. [Docket 272-3 at 247-278, 316.] National General Defendants do not oppose unsealing the remaining portions of Docket No. 273. Accordingly, the court denies Plaintiffs' motion to seal those portions of Docket No. 273. By **April 24, 2023**, Plaintiffs are directed to re-file a version of Docket No. 273 consistent with this order.

a classwide basis. JDL at 1. They contend that the data is essential to demonstrate that rates and corresponding damages can be calculated for the entire class. *Id.* Plaintiffs also request policyholder data stored on systems no longer in use ("legacy systems") from 2008 until the date National General Defendants' current policy management system ("NPS") was implemented. JDL at 2.

For their part, National General Defendants primarily contend that this data is not necessary prior to class certification.[3] Nevertheless, National General Defendants offer to provide all policyholder data for all post-June 6, 2011 good driver Private passenger automobile ("PPA") policies sold by agents using NPS for non-supergroup entities. JDL at 3. That production would include policyholder data from:

- NGIC for June 6, 2011 to the present;
- MICG for June 6, 2011 to the present;
- INIC for September 29, 2011 to the present; and
- IPIC for September 29, 2011 to the present.

JDL at 3. National General Defendants have represented that the data would include more than 96% of policyholders potentially at issue in the class period. *Id.* at 4.

Federal Rule of Civil Procedure 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). The party resisting discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying,

---

[3] National General Defendants' argument is misguided because the deadline for all fact discovery—including pre- and post- class certification—is May 3, 2023.

2

explaining, and supporting its objections." *Id.*

At minimum, policyholder data stored on NPS is relevant to Plaintiffs' damages and class membership. Accordingly, by **May 1, 2023** National General Defendants must produce policyholder data for all good driver PPA policies sold by agents using NPS for non-supergroup entities, some of which begins on June 6, 2011 and the rest of which begins on September 29, 2011.[4] In other words, by May 1, 2023, National General Defendants shall produce all policyholder data from January 1, 2011 to the present that is not stored on a legacy system.

As to policy data stored on legacy systems, Plaintiffs' request for pre-2011 data is inappropriate because Plaintiffs have not shown that the liability period in this case should stretch back to 2008. [*See* Docket No. 279 (Order denying Plaintiff's Motion to Apply the Discovery Rule).] However, the court finds that policyholder data stored on legacy systems from January 1, 2011 until the date each National General Defendant began using NPS is relevant to Plaintiffs' claims. Accordingly, National General Defendants shall produce this legacy data by **June 1, 2023, or on a date agreed upon by the parties**.

National General Defendants assert that they will incur several expenses to access and extract data from legacy systems. JDL at 5. They will have to hire a database administrator for approximately two months at an estimated cost of $23,333. *Id.*; Wolfram Decl. ¶ 13. They will also need to hire an outside vendor at an approximate cost of $57,000.[5] *Id.*

Under the discovery rules, "the presumption is that the responding party must bear the expense of complying with discovery requests[.]" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). However, a court may shift some or all of the cost of production to the

---

[4] Specifically, National General Defendants shall produce policyholder data from:

- NGIC for June 6, 2011 to the present;
- MICG for June 6, 2011 to the present;
- INIC for September 29, 2011 to the present; and
- IPIC for September 29, 2011 to the present.

[5] According to National General Defendants, these expenses will accrue in addition to the cost of pulling requested data from both NPS and legacy systems, which they estimate will amount to approximately $27,000 to $42,000 in salary for four to six months. JDL at 5; Wolfram Decl. ¶¶ 15-17.

3

requesting party to protect the responding party from "undue burden or expense." *Id.* (citing Fed. R. Civ. P. 26(c)). "[W]hether production of [electronic documents] is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format." *OpenTV v. Liberate Techs.*, 219 F.R.D. 474, 476 (N.D. Cal. 2003).

As National General Defendants' legacy systems are no longer in use and therefore not reasonably accessible, their request to shift the cost of producing data stored on legacy systems is granted in part.[6] As described above, National General Defendants assert that it will cost them approximately $80,333 to access and extract policy data from their legacy systems from January 1, 2011 that is not available on NPS and is only available on legacy system(s). The parties shall meaningfully meet and confer to discuss the legacy data retrieval process and agree on a process that is reasonable and cost-effective. If Plaintiffs elect to move forward with their request for the legacy data, Plaintiffs and National General Defendants shall evenly split the costs of retrieving and producing the legacy documents.

**IT IS SO ORDERED.**

Dated: April 18, 2023

_____
Donna M. Ryu
Chief Magistrate Judge

---

[6] To the extent National General Defendants ask the court to shift costs related to data stored on NPS, that request is denied.