United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDD KING, et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>NATIONAL GENERAL INSURANCE<br>COMPANY, et al.,<br><br>               Defendants. | Case No.  15-cv-00313-DMR<br><br>**ORDER GRANTING SEQUOIA'S<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br>Re: Dkt. No. 344 |

Plaintiffs[1] brought this putative class action alleging that Defendants[2] unlawfully overcharged Plaintiffs and the class members they seek to represent for auto insurance premiums in violation of California law.[3]  The court partially granted Defendants' motion to dismiss the fourth amended complaint.  [Docket No. 183 (Order on Third MTD).]  Defendant Sequoia now moves for summary judgment on Plaintiffs' remaining claims: (1) violations of California's Unfair Competition Law ("UCL"), codified at California Business and Professions Code § 17200 et seq., for unlawful and unfair business practices; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory and injunctive relief.  [Docket Nos. 344 ("Mot."), 360 ("Reply").]  Plaintiffs opposed.  [Docket No. 356 ("Opp'n").]  This matter is suitable for determination without oral argument.  Civ. L.R. 7-1(b).  For the following reasons, Sequoia's motion for summary

---

[1] Plaintiffs are Edd King, Dierdre King, Elmo Sheen, and Sheila Lee.

[2] Defendants are National General Insurance Company ("NGIC"), Integon National Insurance Company ("Integon National"), Integon Preferred Insurance Company ("Integon Preferred"), MIC General Insurance Corporation ("MIC"), Personal Express Insurance Company ("PEIC") (together, the "NG Defendants" or "National General Defendants"), and Sequoia Insurance Company ("Sequoia").

[3] Plaintiffs do not propose Elmo Sheen as a class representative.  [Docket No. 309 (Motion for Class Certification) at 3 n.5.]

judgment is granted.

## I.      BACKGROUND

California requires insurers that provide private passenger automobile insurance ("PPA" policies) to offer a Good Driver discount to qualified drivers.  *See* Cal. Ins. Code §§ 1861.025 (defining persons qualified to purchase a Good Driver Discount ("GDD") policy), 1861.02(b)(1) ("Every person who meets the criteria of Section 1861.025 shall be qualified to purchase a Good Driver Discount policy from the insurer of his or her choice.").  The rate charged for a GDD policy must be "at least 20 percent below the rate the insured would otherwise have been charged for the same coverage." *Id.* § 1861.02(b)(2).

California Insurance Code section 1861.16(b) states: "An agent or representative representing one or more insurers having common ownership or operating in California under common management or control shall offer, and the insurer shall sell, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control group, which offers the lowest rates for that coverage."  The California Department of Insurance ("DOI") refers to the requirement to cross-offer a policy with the lowest Good Driver rates as the "Lowest Rates Rule."  [*See* Docket No. 163-5 (DOI decision dated November 10, 2020) at 3.] Notwithstanding section 1861.16(b), an insurer is not subject to the Lowest Rates Rule if it meets the eight conditions required for a "Super Group Exemption," as set forth in section 1861.16(c)(1). *See* Cal. Ins. Code § 1861.16(c)(1).

In general, Plaintiffs allege that Defendants are (or, at relevant times, have been) in a control group within the meaning of the Lowest Rates Rule.  [Docket No. 163 (Fourth Amended Complaint ("4AC") ¶ 1.][4]  Each of the named Plaintiffs and class members held insurance policies issued by one or more of the companies in Defendants' control group.  *Id.* ¶ 5.  All Plaintiffs qualified as "Good Drivers" and were therefore entitled to a GDD policy from an insurer within Defendants' control group that offered the lowest rates for that coverage.  *Id.* ¶ 7.  In violation of the Lowest Rates Rule, Defendants' agents and representatives failed to offer Plaintiffs and class

---

[4] Allegations are insufficient to defeat summary judgment.  The court cites to Plaintiffs' allegations in this paragraph solely to describe their central claims as set forth in the 4AC.

United States District Court
Northern District of California

members the lowest available GDD policy premiums within their control group.  *Id.* ¶ 44.

Specifically, at the time Plaintiffs purchased their policies, PEIC and Sequoia both had GDD

policies with lower rates than what Plaintiffs were paying for substantially similar coverage, but

Plaintiffs were never offered those GDD policies.  *Id.* ¶ 44.  In addition, Defendants deliberately

concealed their wrongful conduct and did not inform policyholders who had been overcharged of

their right to be reimbursed for premium overpayments.  *Id.* ¶ 49.

The court granted Defendants' motions to dismiss the first and second amended complaints

on September 15, 2015 and May 16, 2016 respectively.  [Docket Nos. 70 (Order on First MTD);

92 (Order on Second MTD).]  After Plaintiffs filed a third amended complaint, the court ordered

the case stayed while the DOI made findings as to some of the issues raised by the parties.

[Docket No. 117 (Stay Order).]  At the conclusion of the DOI proceedings, Plaintiffs filed the

4AC on January 28, 2021.  [Docket No. 163.]  Defendants filed a motion to dismiss the 4AC,

which was granted in part and denied in part on June 11, 2021.  Order on Third MTD.  To date,

the following claims survive: (1) unfair and unlawful business practices under the UCL; (2) breach

of the implied covenant of good faith and fair dealing; and (3) declaratory and injunctive relief.

*See* 4AC counts II, III, V, and VI.  Sequoia filed this motion for summary judgment on all claims.[5]

## II.    LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden

of establishing the absence of a genuine issue of material fact lies with the moving party.

*Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986)).  The court must view the evidence in the light most favorable to the non-

moving party.  *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A genuine factual issue

exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could

---

[5] Plaintiffs abandon their claim for injunctive relief against Sequoia in their opposition brief, acknowledging that Sequoia is not currently writing PPA policies in California.  Opp'n at 14 n.6.  Accordingly, summary judgment is granted in Sequoia's favor on this claim.

United States District Court
Northern District of California

1    return a verdict for the nonmoving party.  *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200

2    F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248).  The

3    court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.

4    *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*,

5    477 U.S. at 255).

6          To defeat summary judgment once the moving party has met its burden, the nonmoving

7    party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as

8    otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of

9    material fact exists.  *Devereaux*, 263 F.3d at 1076.  More than a "scintilla of evidence" must exist

10   to support the non-moving party's claims.  *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477

11   U.S. at 252).  A showing that "there is some 'metaphysical doubt' as to the material facts as issue"

12   will not suffice.  *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting

13   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "Where the

14   record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

15   is no genuine issue for trial."  *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at

16   587).

17   **III.    REQUEST FOR JUDICIAL NOTICE**

18         Plaintiffs filed a request asking the court to take judicial notice of Exhibits A through D.

19   [Docket No. 358 ("RJN").]  Sequoia opposed, and Plaintiffs replied.  [Docket Nos. 361, 362.]

20         Exhibit A is National General Holdings Corporation's Form Def 14A filed on March 23,

21   2015, which Plaintiffs assert is available on the U.S. Securities and Exchange Commission's

22   website.  Exhibits B, C, and C-1 are excerpts of the California Department of Insurance Private

23   Passenger Auto Market Share Reports for 2014, 2015, and 2013, respectively.  Plaintiffs state

24   these reports are available on the National Association of Insurance Commissioners and the DOI's

25   websites.  Exhibit D is a Report of Examination of Sequoia as of December 31, 2017, which

26   Plaintiffs claim is available on the DOI's website.

27         Plaintiffs rely on these exhibits in support of their position that Sequoia was part of the

28   same control group as the other Defendants, *see* Opp'n at 1, 3 (citing Exs. A, D), and Sequoia

continued to write PPA policies until at least December 31, 2014.  *See* Opp'n at 2, 6 (citing Exs. B, C).  As explained below, whether Sequoia was part of the same control group as other Defendants and/or continued to write PPA policies until December 31, 2014 does not affect the outcome of this motion.  Exhibits A through D therefore are not material to this dispute, and the court does not rely on them in reaching its decision.  Accordingly, Plaintiffs' RJN and Sequoia's objections to the RJN are denied as moot.

## IV.     EVIDENTIARY OBJECTIONS

Sequoia makes several objections to Plaintiffs' evidence.  *See* Reply at 8-15.  Without deciding whether the evidence submitted by Plaintiffs is admissible, the court finds that none of the facts in the record submitted by Plaintiffs create a genuine issue of material fact.  Because the question of whether those facts are admissible is immaterial to the disposition of the summary judgment motion, the court declines to rule on Sequoia's objections to Plaintiffs' evidence.

## V.      DISCUSSION

Sequoia moves for summary judgment on all of Plaintiffs' remaining claims, arguing that 1) Plaintiffs have not proffered any evidence identifying a single agent or representative of Sequoia, 2) there is no evidence in the record of any conduct by Sequoia relating to the sale of PPA policies in California, and 3) there is no evidence to support Plaintiffs' theory of liability against Sequoia.  *See* Mot. at 6-7.  Plaintiffs respond that Defendants' failure to cross-offer policies with the lowest Good Driver rates was "systematic," and Sequoia is jointly liable with the NG Defendants in the control group for this collective failure.[6]  Opp'n at 1, 7.

---

[6] Plaintiffs devote only six pages of their opposition brief to legal argument.  *See* Opp'n at 10-16. To the extent Plaintiffs seek to incorporate by reference the "Statement of Facts" section of their brief into their argument section, the court finds it improper.  *Doubt v. NCR Corp.*, No. C 09-5917 SBA, 2014 WL 3897590, at *6 (N.D. Cal. Aug. 7, 2014), *aff'd*, 668 F. App'x 238 (9th Cir. 2016) (granting summary judgment where plaintiff failed to show the existence of elements essential to his claim on which he bore the burden of proof).  The reason this approach is improper is because it leaves it to the court to puzzle out what Plaintiffs' arguments might be.  Although it is not the court's task "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996), the court discusses the facts submitted by Plaintiffs to the extent they are material to the disposition of the issues raised in Sequoia's motion.

United States District Court
Northern District of California

**A.  UCL**

Under the UCL, unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  *See* Cal. Bus. & Prof. Code § 17200.  Plaintiffs' UCL claim challenges an unlawful or unfair business act or practice.  A business practice is "unlawful" under section 17200 if it violates an underlying state or federal statute or common law.  *See Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  An act is "unfair" if the act "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law."  *Id.* at 187.  The court discusses each UCL claim below.

### 1.      Unlawful Business Practice

UCL claims under the unlawful prong "borrow[ ] violations of other laws . . . and make[ ] those unlawful practices actionable under the UCL."  *Hahn v. Select Portfolio Servicing, Inc.*, 424 F. Supp. 3d 614, 634 (N.D. Cal. 2020), *aff'd,* No. 20-15166, 2023 WL 3051848 (9th Cir. Apr. 24, 2023) (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007)).

Plaintiffs' claim under the unlawful prong is predicated on an underlying violation of California Insurance Code § 1861.16(b) and failure to follow the Lowest Rates Rule.  Sequoia argues that it is entitled to summary judgment on the UCL claim because Plaintiffs have no evidence of any business conduct by Sequoia – or any agent or representative of Sequoia – let alone any "unfair" or "unlawful" conduct that caused any of the Plaintiffs to suffer an injury or damage.  Mot. at 12.  Sequoia contends that none of the Plaintiffs dealt with Sequoia or any of its agents or representatives, therefore nothing Sequoia or its agents or representatives did or did not do could have caused Plaintiffs an injury or damage.  *Id.*

Plaintiffs respond that Sequoia is "jointly liable with the National General Defendants for their joint failure to cross-offer within the AmTrust/NGH Control Group."[7]  Opp'n at 10.  The sole support for their "joint liability" theory is specious and disingenuous.  According to Plaintiffs, "the

---

[7] "AmTrust" refers to AmTrust Financial Services, Inc., a property and casualty insurance holding company that acquired Sequoia in April 2013.  Mot. at 1-2; [*see also* Docket No. 345 (James Boland Decl., Sept. 11, 2023), Ex. 1 (Stephan Ungar Decl., Sept. 8, 2023) ¶¶ 1-2.]  "NGH" refers to National General Holdings Corporation.

United States District Court
Northern District of California

1   Court has already held that 'Plaintiffs' theory that Defendants acted in concert as a control group

2   to prevent any of their agents/representatives from cross-offering within the control group

3   adequately explains how each Defendant is liable for Plaintiffs' injuries.'" Mot. at 11 (quoting

4   Order on Third MTD at 12).

5          Plaintiffs rip the quote out of context and thoroughly mischaracterize the court's prior

6   order.  In granting Defendants' motions to dismiss the first and second versions of the complaint,

7   the court noted that the plain language of the Lowest Rates Rule places the duty to cross-offer on

8   "an agent or representative representing one or more insurers" within a control group, and not on

9   insurers themselves.  Cal. Ins. Code § 1861.16(b); *see* Order on First MTD at 13; Order on Second

10  MTD at 13.  Because Plaintiffs alleged actions taken by Defendant insurers, and not actions taken

11  by their agents or representatives, the court determined that Plaintiffs' pleadings "place[d] the

12  cross-offer requirement on the wrong actors."  Order on Second MTD at 13 ("Here, Plaintiffs do

13  not challenge any agents' or representatives' failure to cross-offer discounted policies.  Instead,

14  they bring suit only against the Defendant insurers themselves.").

15         The court subsequently held that the 4AC adequately addressed the problem of not naming

16  any individual "agent or representative representing one or more insurers" as required by the

17  statute.  First, the court noted the 4AC alleged that each of the four named Plaintiffs were issued

18  policies that were offered by Defendants' "(non-broker) agents and representatives," thus imputing

19  the agent's failure to cross-offer to Defendant insurers through an agency relationship.  Order on

20  Third MTD at 10, 12.  The court went on to hold that more was required: "it would not be

21  sufficient to allege generally that Plaintiffs purchased their policies through Defendants' agents

22  and representatives because it would still not explain how each named Defendant is liable for the

23  actions of some unidentified agent/representative who is not alleged to represent that particular

24  Defendant."  *Id.* at 12.

25         On that point, the court found that Plaintiffs' claims in the 4AC were sufficiently pleaded

26  based on the following allegation: "as a Control Group, Defendants implemented a secret scheme

27  to circumvent the statutory mandates by concealing and intentionally not disclosing to their

28  agents, representatives and brokers the applicability of the requirements of Cal. Ins. Code Section

7

1861.16(b) to their Control Group[.]"  4AC ¶ 50.  The court held that "[u]nder this theory,

Defendants acted in concert to ensure that none of their agents/representatives were aware of their

duty to cross-offer, which resulted in the agents/representatives failing to meet their statutory

duties and caused Plaintiffs' injuries."  Order on Third MTD at 12.  It is in this specific context

that the court explained "Plaintiffs' theory that Defendants acted in concert as a control group to

prevent any of their agents/representatives from cross-offering within the control group adequately

explains how each Defendant is liable for Plaintiffs' injuries."  *Id.*  In other words, Plaintiffs'

partial quote disguises what the court was addressing – that Plaintiffs' allegations were sufficient

to get around their original problem of "plac[ing] the cross-offer requirement on the wrong

actors."  *Id.* at 12 (quoting Order on Second MTD at 13).

At summary judgment, Plaintiffs are noticeably silent on the theory alleged in the 4AC:

that Defendants acted in concert and implemented a secret scheme to circumvent their statutory

obligations by concealing and intentionally not disclosing the requirements of section 1861.16(b)

to their agents and representatives, who therefore did not make the cross-offers.  Instead, Plaintiffs

skip over that issue and baldly claim that Sequoia is "jointly liable" for Defendants' collective

failure to cross-offer discounted policies because Sequoia is part of Defendants' control group (or

that at least there are material disputes of fact on that point).  *See* Opp'n at 7-8.

Plaintiffs' reliance on a misleading quote does not alter reality.  Plaintiffs never argued –

and the court did not hold – that Defendants are jointly liable for each other's violations of section

1861.16(b) if they are part of the same control group.

In sum, Plaintiffs offer no legal support for their "joint liability" theory other than

misquoting this court.  This fundamental failure is sufficient to grant Sequoia's motion.[8]

Plaintiffs' factual record also fails to identify any unlawful acts by Sequoia.  First,

Plaintiffs offer deposition excerpts from eight fact witnesses to support their position that

[8] Sequoia contends that even if it were part of the same control group as Defendants, "companies, even related or affiliated companies, are not 'jointly' liable for one another's torts or statutory violations.  Like any other defendant in a lawsuit, Sequoia can only be held liable for its conduct."  Reply at 3.  The court does not decide here whether a joint liability theory applies.  It simply holds that Plaintiffs did not provide legal support for that theory in opposition to Sequoia's motion.

Defendants (including Sequoia) collectively failed to cross-offer policies within the control group. *See* Opp'n at 7-8 (describing evidence that 1) Defendants' employees and agents could not recall "even one instance" of a lower premium policy being cross-offered; 2) those directly responsible for overseeing NGIC's sales practices did not understand or abide by the cross offer rule; 3) no one employed by Defendants ever instructed a sales agent to cross-offer in accordance with section 1861.16(b); 4) cross-offering was never discussed at meetings; and 5) Defendants had no policies or procedures to ensure that the lowest premium within the control group was offered to qualified Good Drivers); [*see also* Docket No. 356-1 (John P. Hurst Decl., Sept. 25, 2023), Exs. 12-18 (deposition excerpts).]

Sequoia objects to these deposition excerpts, arguing that none of these witnesses ever worked for or has otherwise been associated with Sequoia, none has any foundation to speak about Sequoia or its business practices, and none of the cited testimony is relevant to Plaintiffs' claims against Sequoia.  Reply at 12.

Assuming without deciding that the deposition excerpts would be admissible at trial, the court agrees that none of them identify conduct by Sequoia.  *See* Hurst Decl., Ex. 1 (glossary setting forth witness backgrounds and indicating that none of the witnesses worked for or were ever associated with Sequoia);[9] [*see also* Docket No. 360-1 (James Boland Decl., Oct. 2, 2023), Exs. C (Kenny Yeh Dep., May 23, 2023) at 28:25-29:5 (testifying that Sequoia was "not part of the National General Holding Corporation . . . [and] unrelated to National General"); D (Robert Pentis Dep., Jan. 27, 2023) at 142:22-144:1 (testifying that he has no knowledge of what Sequoia

---

[9] Plaintiffs' glossary describes each witness' role as follows: Kenny Yeh was a product manager for NGIC, Integon National, Integon Preferred, and MIC from 2011 to 2012; Larry Pentis was NGIC's president and chief executive officer from 2010 to 2012; Rainy Tayal was vice president at National General and testified as PEIC's corporate representative; Brenda Castellano was National General's executive vice president of sales for brokers and independent agents, and was responsible for NGIC, Integon National, Integon Preferred, and MIC in California; Michael Juszczakiewicz is NGIC's director of inside sales and vice president of inside sales; Doug Hanes is NGIC's senior vice president of product management and has been the head of product for NGIC, Integon National, Integon Preferred, and MIC in California from 2015 to the present; and Mike Alexander worked for National General for eight years (until May 2015), and performed sales services for NGIC, Integon National, Integon Preferred, and MIC.  Hurst Decl. ¶ 2, Ex. 1 (Glossary).

does and that his testimony excludes Sequoia and AmTrust); E (Rainy Tayal Dep., March 9, 2023) at 149:1-8 (testifying that she has never done any work for Sequoia and has no knowledge of Sequoia); F (Brenda Castellano Dep., Apr. 27, 2023) at 36:13-18 (testifying that she had no responsibility for Sequoia and was not responsible for any companies in California outside of MIC, NGIC, Integon National, and Integon Preferred), 38:14-17 (confirming she had no involvement with Sequoia at any time since she started at National General); G (Michael Juszczakiewicz Dep., March 24, 2023) at 128:14-129:6 (qualifying his deposition responses to exclude Sequoia because he has never heard of Sequoia); H (Doug Hanes Dep., Apr. 18, 2023) at 9:4-7 (testifying that the only entities he was responsible for in California were Integon National, Integon Preferred, MIC, and NGIC); I (Mike Alexander Dep., Dec. 12, 2022) at 153:4-21 (testifying that his answers do not refer to Sequoia because he is not familiar with Sequoia).][10]

Next, Plaintiffs assert that Sequoia's Amended Objections and Responses to Plaintiffs' Interrogatories served on January 28, 2022 "confirm that Sequoia did not cross-offer to the Plaintiffs . . ., it has no information about any cross-offers made, and cannot identify any instances where it cross-offered."  Opp'n at 8 (citing Hurst Decl., Ex. 19 (Interrogatory Response Nos. 4, 8, 10, 23, 25)).

This misrepresents the record.  Interrogatory Nos. 4, 8, 10, 23, and 25 ask whether Sequoia made cross-company offerings, whether the rate offered Good Drivers was the lowest rate available, the "methodology, rules and procedures" Sequoia used to determine which Defendant should provide a quote to Good Drivers, the underwriting procedures or rules Sequoia used to determine, apply, and verify Good Driver discounts, and the dates of Sequoia's cross-company offerings.  *See* Ex. 19 at 6, 8, 9, 16.  In response, Sequoia consistently asserts that it was not part of a control group and therefore not subject to cross-company offerings.  *See id.*  Plaintiffs stretch these responses to mean more than they actually say; they do not amount to evidence of unlawful

---

[10] Even if the deposition excerpts support a collective failure by the NG Defendants to cross-offer, as discussed above, Plaintiffs have not established that Sequoia can be held jointly liable for the NG Defendants' acts simply by being in the same control group.

acts by Sequoia.[11]

Finally, Plaintiffs point to three intercompany agreements in support of their assertion that Sequoia and PEIC, "acted in concert, using the same agent solicitation and acceptance of applications for policies, the same intercompany management, agent and services agreements, expense sharing and tax allocation arrangements, reinsurance, and even employee management, including common employees and HR services." Opp'n at 12 (citing Hurst Decl., Exs. 109, 110, 111). These documents include: (i) an April 19, 2013 Insurance Services, Management and Agency Agreement among AmTrust North America, Sequoia, and PEIC (Ex. 109); (ii) an April 19, 2013 AmTrust Intercompany Reinsurance Agreement among Sequoia, PEIC, and AmTrust International Insurance, Ltd. (Ex. 110); and (iii) an April 19, 2013 Intercompany Management Agreement among AmTrust Financial Services, Inc., Sequoia, and PEIC (Ex. 111).

Plaintiffs further claim that they have identified some of Sequoia's agents, and that those agents were members of the AmTrust/NGH Control Group. Opp'n at 11 (citing Hurst Decl., Ex. 10). Exhibit 10 is a seller disclosure letter referenced in a January 18, 2013 Stock Purchase Agreement between AmTrust, Strongwood Insurance Holdings Corporation, and Strongwood Insurance Holdings Company LLC.

Again, assuming without deciding that the intercompany agreements and seller disclosure letter would be admissible at trial, these documents do not point to any unlawful conduct by Sequoia or its agents and representatives. As Plaintiffs acknowledge, at best the documents establish "common agency, and . . . the use of the same agents and representatives for . . . management and key operational functions" – not that Sequoia and its agents/representatives failed to cross-offer policies with the lowest Good Driver rates within the control group. *See* Opp'n at 12.

Had Plaintiffs demonstrated as a matter of law that Sequoia is jointly liable for the acts of other Defendant insurers simply by belonging to a control group, then the agreements and seller disclosure letter would be material to whether Sequoia and the NG Defendants are in the same

---

[11] If Plaintiffs thought they were entitled to more fulsome responses, they should have moved to compel them.

United States District Court
Northern District of California

1     control group.  As discussed above, Plaintiffs have not supported much less established that legal

2     theory.

3          In sum, the absence of evidence of unlawful acts by Sequoia, coupled with Plaintiffs'

4     failure to support a legal theory of joint liability, requires entry of summary judgment on the UCL

5     "unlawful business practice" claim.

6                    **2.     Unfair Business Practice**

7          Plaintiffs' UCL claim under the unfair prong also relies on section 1861.16(b).  "A

8     business practice is unfair within the meaning of the UCL if it violates established public policy or

9     if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which

10    outweighs its benefits."  *Swafford v. Int'l Bus. Machines Corp.*, 408 F. Supp. 3d 1131, 1151 (N.D.

11    Cal. 2019) (quoting *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473, (2006)).  Courts

12    analyze "the practice's impact on its alleged victim and balance that impact against the reasons,

13    justifications, and motives of the alleged wrongdoer."  *Id.*

14         Sequoia's argument for summary judgment on Plaintiffs' UCL claim under the unfair

15    prong is identical to its argument under the unlawful prong.  Specifically, Sequoia contends that

16    Plaintiffs have no evidence of any business conduct by Sequoia – or any agent or representative of

17    Sequoia – let alone any "unfair" or "unlawful" conduct that caused any of the four Plaintiffs to

18    suffer an injury or damage.  Mot. at 12.

19         In response, Plaintiffs argue in a conclusory way that "Sequoia's practice of uniformly

20    failing to cross-offer and thereby joining in Defendants' charging excessive California Good

21    Driver insurance premiums, violates public policy and creates harm to Plaintiffs that vastly

22    outweighs any utility of Defendants' conduct[.]"  Opp'n at 14.  As already discussed at length,

23    Plaintiffs do not cite any evidence in support of their claim that Sequoia "uniformly fail[ed] to

24    cross-offer" lower rates to qualified Good Drivers in violation of section 1861.16(b).  *See id.*

25         Because Plaintiffs have offered no evidence to create a material factual dispute, Sequoia is

26    entitled to summary judgment on the unfair prong of the UCL claim.

27

28

United States District Court
Northern District of California

12

1

**B.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

2     Under California law, "[e]very contract imposes on each party a duty of good faith and fair

3 dealing in each performance and its enforcement."  *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 473

4 (N.D. Cal. 2014) (quoting *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012)).  The

5 scope of conduct prohibited by the implied covenant depends on the purposes and express terms of

6 the contract.  *Carma Developers, Inc. v. Marathon Development California, Inc.,* 2 Cal.4th 342,

7 373 (1992).

8     Sequoia argues it is entitled to summary judgment on this claim because the undisputed

9 evidence shows Sequoia is not and never has been a party to any of Plaintiffs' insurance contracts.

10 Mot. at 9.  In the single paragraph responding to Sequoia's arguments, Plaintiffs assert it is

11 nevertheless "well established" that a plaintiff may proceed with a claim for breach of the implied

12 covenant of good faith and fair dealing against non-signatories to a contract "on the basis of joint

13 liability theories."  Opp'n at 14 (citations omitted).  This appears to be a variation on Plaintiffs'

14 unsupported "control group joint liability" theory.  Here, Plaintiffs cite three cases, none of which

15 advance their argument.  All three cases simply recognize that non-signatories may be liable as

16 parties to a contract under specific doctrines.  *See Florists' Mut. Ins. Co. v. Floricultura Pac., Inc.*,

17 No. 19-CV-05793-WHO, 2020 WL 6440039, at *3-*4 (N.D. Cal. Apr. 3, 2020) (rejecting

18 allegations of joint liability under joint venture and agency theories); *Wallis v. Centennial Ins. Co.*,

19 No. CIV. 08-02558 WBS, 2013 WL 3803971, at *3-*5 (E.D. Cal. July 19, 2013) (reviewing

20 defendant's joint liability under agency and alter ego theories); *Linhart v. New York Life Ins. Co.*,

21 No. 521CV01640JWHKKX, 2022 WL 3907177, at *3 (C.D. Cal. Aug. 22, 2022) (holding that

22 plaintiff failed to propose any recognized joint liability theory, "such as joint venture, agency

23 theory, or alter ego" to impose contractual liability upon non-signatory).[12]

24     Plaintiffs do not assert the existence of a joint venture, agency, or alter ego relationship

25

---

26 [12] Assuming for argument's sake that Sequoia was a member of a recognized control group during
the relevant time period, none of these cases stand for the proposition that membership in a control
27 group, without more, imposes joint liability.  To the contrary, the court in *Florists' Mut. Ins. Co.*
clarified: "That companies are affiliated is not, by itself, a basis for imposing joint liability."  2020
28 WL 6440039, at *3.  *See also id.*, at *6 ("That [the insurer] is affiliated with a group of insurers is
insufficient to impose joint liability").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    between Sequoia and the NG Defendants.  Nor do Plaintiffs explain how the reasoning in their

2    cited cases extend liability to Sequoia.  For example, Plaintiffs do not argue that evidence of

3    membership in a control group is comparable to evidence of a joint venture, agency, or alter ego

4    relationship.

5         Accordingly, the court finds that there is no genuine issue of material fact for trial on

6    Plaintiffs' claim for breach of the implied duty of good faith and fair dealing, and grants summary

7    judgment in favor of Sequoia.

8         **C.      Declaratory Relief**

9         Plaintiffs seek a judgment "establishing that Defendants' continuing overcharging of and

10   failure to re-pay premium overcharged amounts … violate the terms of their standard insuring

11   agreements and/or applicable law, and that Defendants' filings, express or implied material

12   misrepresentations and/or omissions made to the Class by Defendants breach their obligations

13   owed by Defendant insurance carriers under applicable law."  4AC ¶ 115.  Plaintiffs further

14   request a declaration establishing damages and remedies that are due to them.  *Id.*

15        Plaintiffs' claim for declaratory relief is wholly derivative of their claims under the UCL

16   and for breach of the implied duty of good faith and fair dealing, which themselves are predicated

17   on an underlying violation of California Insurance Code § 1861.16(b).  Because Plaintiffs have not

18   established a violation of section 1861.16(b), Sequoia is also entitled to summary judgment on this

19   claim.

20   **VI.      CONCLUSION**

21        For the foregoing reasons, the court grants summary judgment to Sequoia.  The clerk is

22   directed to render judgment in favor of Sequoia and dismiss Sequoia as a defendant in the case.

23

24        **IT IS SO ORDERED.**

25   Dated: December 22, 2023

26   _____

27                Donna M. Ryu
                  Chief Magistrate Judge

28