SANFORD L. MICHELMAN, ESQ. (SBN 179702)
*smichelman@mrllp.com*
DAVID F. HAUGE, ESQ. (SBN 128294)
*dhauge@mrllp.com*
MARC R. JACOBS, ESQ. (SBN 185924)
*mjacobs@mrllp.com*
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Boulevard, 19th Floor
Los Angeles, CA 90024
Tel: (310) 299-5500
Fax: (310) 299-5600

MONA Z. HANNA, ESQ. (SBN 131439)
*mhanna@mrllp.com*
VINCENT S. LOH, ESQ. (SBN 238410)
*vloh@mrllp.com*
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Avenue, 10th Floor
Irvine, CA 92614
Tel: (714) 557-7990
Fax: (714) 557-7991

Attorneys for Defendants NATIONAL GENERAL INSURANCE COMPANY, INTEGON NATIONAL INSURANCE COMPANY, INTEGON PREFERRED INSURANCE COMPANY, and MIC GENERAL INSURANCE CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDD KING, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL GENERAL INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 4:15-CV-00313-DMR<br>Hon. Donna M. Ryu<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Declaration of Marc R. Jacobs]*<br><br>**DATE: JULY 10, 2025**<br>**TIME: 1:00 P.M.**<br>**COURTROOM: 4**<br><br>Complaint Filed: January 22, 2015 |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES .......................................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.      INTRODUCTION ............................................................................................................ 1

II.     BACKGROUND ............................................................................................................... 2

III.    SUMMARY JUDGMENT STANDARD ........................................................................ 3

IV.     DISCUSSION .................................................................................................................... 3

       A.     Plaintiffs Are Not Entitled to Partial Summary Judgment Because They Do Not Allege Nor Have They Established That Their Legal Remedy Is Inadequate.......................................... 3

          1.     Plaintiffs Seeking Equitable Relief Must Establish an Inadequate Legal Remedy ... 3

          2.     Plaintiffs Have Not Established the Inadequacy of Their Legal Remedy ................. 5

       B.     Genuine Issues of Material Fact Preclude Summary Judgment on Liability......................... 7

          1.     There Are Factual Disputes Regarding Plaintiffs' Standing.................................... 7

              a.     Whether a Lower Rate Policy Was Available for the Kings ........................ 7

              b.     Whether the Kings Would Have Purchased a Lower Rate Policy................. 9

              c.     Whether *Other* Class Members Suffered Injury in Fact ............................. 10

          2.     There Are Factual Disputes as to Defendants' Compliance with the Lowest Rate Rule ...................................................................................................................... 11

              a.     There Are Factual Disputes Regarding the Availability of a Lower Rate... 11

                  (1)     Brown's Failure to Accurately Calculate Premiums Creates Factual Disputes as to the Availability of a Lower Rate ......................................... 11

                  (2)     There Are Factual Disputes as to Brown's Assumptions ............... 13

                        i.     Brown's Model Improperly Assumes the Policy Purchased Was the Only Policy Offered........................................................... 13

                        ii.     Brown's Assumptions re: Eligibility Are Unreasonable ..... 13

                        iii.     Brown's Model Unreasonably Assumes Differences In Policy Options and Features Are Immaterial................................. 14

                        iv.     Brown's Model Improperly Assumes Any Missing Data Relating To A Rating Factor Is Not Material To His Analysis ....... 15

              b.     There Are Factual Disputes Whether a Lower Rate Policy Was Offered ... 16

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

(1)     There Are Factual Disputes as to Whether Defendants Had Policies in Place to Ensure Compliance with the Lowest Rate Rule.......................... 16

(2)     There Are Factual Disputes as to Whether Defendants Jointly Trained All Sales Agents and Developed Practices That Prohibited Offering Lowest Rate Policies For All Class Members ............................................. 17

(3)     There Are Factual Disputes as to Whether Defendants' Agents Were Required to Quote Only One Company's Policy......................................... 19

(4)     There Are Factual Disputes as to Whether Defendants' Processes Made it Impossible to Offer Lowest Rate Policies ...................................... 19

(5)     There Are Factual Disputes Whether the NPS System Prohibited Defendants' Agents from Performing Comparative Rate Analyses ............ 20

C.     Genuine Issues of Material Fact Preclude Summary Judgment Against All Defendants Based On Plaintiffs' Unsupported Theories of Joint Liability ............................................ 20

1.     Triable Issues of Disputed Fact Prohibit Summary Judgment on Plaintiffs' Agency and Concerted Action Theories of Joint Liability....................................................... 20

2.     Triable Issues of Disputed Fact Prohibit Summary Judgment on Plaintiffs' Alter Ego Theory of Liability ........................................................................................... 21

a.     Triable Issues of Disputed Fact Prohibit a Finding of Unity of Interest...... 21

b.     Triable Issues of Disputed Fact Prohibit a Finding of Fraud or Injustice.... 22

3.     Triable Issues of Disputed Fact Prohibit Summary Judgment on Plaintiffs' Aiding and Abetting Theory of Liability ................................................................................ 23

4.     Triable Issues of Disputed Fact Prohibit Summary Judgment on Plaintiffs' Conspiracy Theory of Liability................................................................................... 24

V.     CONCLUSION.................................................................................................................. 25

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Risk Managers, LLC v. Equinox Mgmt. Grp., Inc.*,
2021 WL 4243400 (N.D. Cal. Sept. 17, 2021) ........................................................................10

*Antonio v. Alpha Beat Co.*,
2018 WL 6017028 (C.D. Cal. Oct. 19, 2018)...........................................................................10

*In re Apple Processor Litig.*,
No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) .....................................................5

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal.4th 503 (1994) ...............................................................................................................25

*Barnes v. Sea Hawaii Rafting, LLC*,
889 F.3d 517 (9th Cir. 2018) .....................................................................................................3

*Chiulli v. Am. Honda Motor Co.*,
690 F.Supp.3d 1038 (N.D. Cal. 2023) .......................................................................................5

*Clevenger v. Welch Foods Inc.*,
2022 WL 18228288 (C.D. Cal. 2022)........................................................................................7

*Cook v. Matrix Absence Mgmt., Inc.*,
737 F.Supp.3d 885 (N.D. Cal. 2024) .........................................................................................5

*Doctors' Co. v. Superior Ct.*,
49 Cal.3d 39 (1989) .................................................................................................................25

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (1996) ..................................................................................................23

*Gill v. Chipotle Mexican Grill, Inc.*,
2025 WL 1443767 (C.D. Cal. 2025)..........................................................................................7

*Guidroz-Brault v. Missouri Pac. R. Co.*,
254 F.3d 825 (9th Cir. 2001) ...................................................................................................13

*Guzman v. Polaris Industries, Inc.*,
49 F.4th 1308 (9th Cir. 2022) ...........................................................................................4, 5, 6

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. 2024) ..........................................................................................7

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ...................................................................................................3

*Jeong v. Nexo Fin. LLC*,
    2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ...........................................................................22

*Ketayi v. Health Enrollment Grp.*,
    2021 WL 2864481 (S.D. Cal. 2021) ..........................................................................................7

*Key v. Qualcomm Inc.*,
    129 F.4th 1129 (9th Cir. 2025) ........................................................................................3, 5, 6

*McCracken v. KSF Acquisition Corp.*,
    2023 WL 5667869 (C.D. Cal. 2023)...........................................................................................7

*McMillen v. Americo Fin. Life & Annuity Ins. Co.*,
    2014 WL 1270535 (E.D. Cal. Mar. 26, 2014) .........................................................................10

*McSherry v. City of Long Beach*,
    584 F.3d 1129 (9th Cir. 2009) ...................................................................................................3

*Murphy v. Olly Public Benefit Corp.*,
    651 F.Supp.3d 1111 (N.D. Cal. 2023). Dkt. 493 ......................................................................6

*Naverrete v. Meyer*
    237 Cal.App 4th 1276, 1291-92 (2015) ..............................................................................24, 25

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ..................................................................................................8, 9

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) .....................................................................................................3

*Phillips v. Brooklyn Bedding LLC*,
    2024 WL 2830663 (N.D. Cal. 2024) ..........................................................................................7

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .................................................................................................21

*Rodriguez v. FCA US LLC*,
    2023 WL 3150075 (C.D. Cal. 2023)...........................................................................................6

*S.E.C. v. M & A W., Inc.*,
    538 F.3d 1043 (9th Cir. 2008) .................................................................................................10

*Sagebrush LLC v. Cigna Health & Life Ins. Co.*,
    2025 WL 1180696 (C.D. Cal. Apr. 23, 2025) ............................................................................6

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Santa Cruz Empacadora, S. de R.L. de C.V. v. R.B. Packing of California, Inc.*,
    2005 WL 8173035 (S.D. Cal. Sept. 13, 2005) ......................................................................21

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...........................................................................................3, 4, 5, 6

*Soremekum v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ...........................................................................................3

*Southern California Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ...........................................................................................3

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 ....................................................................................................................7, 8

*Stephens v. Union Pac. R.R. Co.*,
    935 F.3d 852 (9th Cir. 2019) ...........................................................................................13

*Successor Agency to Former Emeryville Redevelopment Agency & City of Emeryville v. Swagelok Co.*,
    2024 WL 3952587 (N.D. Cal. Aug. 27, 2024) ...............................................................22

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).........................................................................................................7

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023).........................................................................................................23

*Valiente v. Simpson Imports, Ltd.*,
    717 F.Supp.3d 888 (N.D. Cal. 2024) ..............................................................................6

*Villa v. Maricopa Cnty.*,
    865 F.3d 1224 (9th Cir. 2017) .........................................................................................11

*Watkins v. MGA Ent., Inc.*,
    550 F.Supp.3d 815 (N.D. Cal. 2021) ..............................................................................6

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    235 F.3d 1184 (9th Cir.2000) ..........................................................................................13

*Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*,
    2020 WL 6290377 (N.D. Cal. Oct. 27, 2020).................................................................22

**Statutes**

California Consumer Legal Remedies Act ............................................................................4, 5

California False Advertising Law .........................................................................................4

California Insurance Code § 1861.16 ...............................................................2, 9, 18, 24, 25

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

California Unfair Competition Law ..................................................................................................2

Cartwright Act .................................................................................................................................5

**Court Rules**

Federal Rule of Civil Procedure

12..............................................................................................................................................4

23..............................................................................................................................................7

56..............................................................................................................................................3

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs are not entitled to partial summary judgment on liability because they have not established a basis for this Court to exercise its equitable jurisdiction and have not satisfied their heavy burden to show the absence of a genuine issue of material fact on standing or liability. To the contrary, this case is replete with triable issues of fact that necessitate denial of this motion.

Most critically, Plaintiffs have an adequate (and identical) legal remedy in their claim for breach of implied covenant. Plaintiffs seek the same amount in damages that they seek in restitution. Plaintiffs have neither alleged nor shown that damages would be inadequate, so there is no basis for this Court to exercise its equitable jurisdiction by ruling on the merits of Plaintiffs' UCL claims, nor can it under controlling 9th Circuit case law. Not only should the Court decline to rule on the merits of Plaintiffs' UCL claims, it should dismiss the claims entirely as more fully set forth in Defendants' currently pending Motion for Judgment on the Pleadings. However, this is not the only fundamental flaw in Plaintiffs' motion.

Plaintiffs also fail to establish the absence of a genuine issue of material fact as to standing for the Kings as class representatives or for all absent class members. Indeed, there are genuine issues of material fact regarding injury in fact; regarding whether Personal Express Insurance Company ("PEIC"), the only company the Kings contend had a lower available rate for them, was a member of the control group at the time of the Kings' renewal in June 2013; whether the Kings would have purchased that lower rate policy if offered; and similar questions regarding *all* other class members.

On the merits, Plaintiffs' motion similarly fails to meet the high burden for summary judgment. Plaintiffs must prove National General Insurance Company ("NGIC"), Integon National Insurance Company ("INIC"), Integon Preferred Insurance Company ("IPIC"), and MIC General Insurance Corporation ("MICG") (collectively "Defendants") violated the lowest rate rule as to all class members to establish class-wide liability. Yet, Plaintiffs' motion emphasizes alleged deficiencies in the training of internal employee sales agents ("employee agents"), completely ignoring the different processes of external, independent sales agents ("independent agents") (who are not Defendants' employees) and Internet sales. Plaintiffs further fail to acknowledge that, to prevail on summary judgment, they must do far more than simply show that Defendants' processes were deficient; rather, Plaintiffs must also show there is no factual

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

dispute that a lower rate policy was (1) available, (2) not offered, and (3) would have been accepted. Plaintiffs fail at all three points. They rely solely on their unreliable actuarial expert Scott Brown to show a lower rate policy was available, but there are numerous factual disputes regarding the reasonableness of Brown's assumptions, the accuracy of his estimates, and the reliability of his opinion, including the fact (which *Plaintiffs* dispute) that Brown miscalculates modeled premiums 96% of the time. Those factual disputes, including how customers purchased their policies (from employee vs. independent agents vs. the Internet), whether a lower rate was available, and, if so, whether it was offered (especially given Defendants' industry standard discount notices), and other factual disputes, all preclude summary judgment.

## II.    BACKGROUND

The surviving claims in Plaintiffs' fourth amended complaint are for breach of implied covenant of good faith and fair dealing and unfair competition under the UCL based on unlawful and unfair business practices. *See* Dkt. 183 at 28; *see* Dkt. 163. Plaintiffs allege Defendants failed to offer them the lowest rate Good Driver automobile insurance policy available within Defendants' control group in violation of California Insurance Code § 1861.16. Dkt. 163 at 32-33, 47–48. Plaintiffs seek to recover allegedly overpaid premiums either as damages for breach of implied covenant or restitution under the UCL. *Id.*

Plaintiffs moved for class certification on July 7, 2023. Dkt. 309. The Court denied the motion without prejudice and held Plaintiffs lacked standing to pursue injunctive relief (Dkt. 422 at 37), which is why Plaintiffs do not seek summary judgment as to injunctive relief. Plaintiffs filed a renewed class certification motion on December 12, 2024, seeking certification of their implied covenant and UCL claims. Dkt. 438. On May 5, 2025, the Court granted class certification as to the UCL claims and denied certification as to the implied covenant claim. Dkt. 480 at 47. The Court certified a class defined as (Dkt. 480 at 47):

> Policyholders of NG Defendants (NGIC, INIC, IPIC, and MICG) who purchased California GDD private passenger automobile policies, including renewals, and were not offered the lowest available GD rate within the control group during the Class Period. The control group is defined as NGIC, INIC, IPIC, and MICG from January 22, 2011 to present; and includes PEIC during the period of April 19, 2013 to July 18, 2014.

Defendants' motion for reconsideration of the order granting class certification is currently pending. Dkt. 486. Defendants also filed a motion for judgment on the pleadings or alternatively summary judgment. Dkt. 492. Plaintiffs' present motion is limited to partial summary judgment on liability for their UCL

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

unlawful and unfair claims seeking restitution (counts 5 & 6), and not on their claim for injunctive relief (count 3), which Plaintiffs have no standing to maintain.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a). The moving party moving has the initial burden to show no genuine issue of material fact exists. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). This "is ordinarily a 'heavy burden' for the plaintiff." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 538 (9th Cir. 2018). "Rule 56 'authorizes summary judgment only where ... it is quite clear what the truth is.'" *Id*. at 538. A plaintiff moving for summary judgment on its own claim must demonstrate that no reasonable trier of fact could find for defendant. *Soremekum v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party"); *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (a plaintiff moving for summary judgment "must establish 'beyond controversy every essential element of its' [claim]"). If the moving party meets its burden, the burden shifts to the nonmoving party. *Oracle*, 627 F.3d at 387. A genuine dispute of material fact exists if a reasonable trier of fact could return a verdict in favor of the nonmoving party on the evidence presented. *InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 657 (9th Cir. 2020). The court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).

### IV.    DISCUSSION

**A.    Plaintiffs Are Not Entitled to Partial Summary Judgment Because They Do Not Allege Nor Have They Established That Their Legal Remedy Is Inadequate**

**1.    Plaintiffs Seeking Equitable Relief Must Establish an Inadequate Legal Remedy**

A plaintiff <u>must</u> establish the lack of an adequate legal remedy before they can obtain equitable relief in federal court. *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020) ("[Plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL"); *accord*, *Key v. Qualcomm Inc*., 129 F.4th 1129, 1142 (9th Cir. 2025). A federal court cannot decide the merits of an equitable claim if the plaintiff has an adequate legal remedy for the same harm.

3

*Guzman v. Polaris Industries, Inc*., 49 F.4th 1308, 1314 (9th Cir. 2022) (equitable jurisdiction is "required for a federal court to hear the merits of an equitable claim").

The plaintiff in *Sonner* brought a consumer class action alleging claims for damages, restitution, and an injunction under the California Consumer Legal Remedies Act ("CLRA") and restitution and injunction under the UCL. *Sonner*, 971 F.3d at 838. She filed an amended complaint omitting her CLRA claim for damages shortly before trial and proceeded with only claims for equitable relief under the UCL and CLRA. *Id*. The district court granted the defendant's motion to dismiss the restitution claims under Fed. R. Civ. P. 12(b)(6) because the plaintiff failed to establish that she lacked an adequate legal remedy. *Sonner*, at 838. The Ninth Circuit concluded that the dismissal was proper. *Id*. at 844.

*Sonner* stated, "we hold that traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Sonner*, 971 F.3d at 844. Under those principles, a plaintiff "must establish that she lacks an adequate legal remedy at law before securing equitable restitution for past harms under the UCL and CLRA." *Id*. *Sonner* stated, "the operative complaint does not allege that Sonner lacks an adequate legal remedy," and the plaintiff conceded that she sought the same amount in restitution as she requested in damages for the same harm. *Id*. *Sonner* concluded that the plaintiff failed to show that she lacked an adequate legal remedy, so dismissal was proper. *Id*. at 844–45.

The plaintiff in *Guzman* filed a class action complaint alleging a claim for damages under the CLRA, a UCL claim for equitable relief, and a claim for violation of the California False Advertising Law ("FAL"). *Guzman*, 49 F.4th at 1310. The district court dismissed the CLRA and FAL claims as time-barred and granted summary judgment in favor of the defendants on the UCL claim based on *Sonner*. *Id*. at 1311. *Guzman* stated, "to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Id*. at 1313 (citing *Sonner*, 971 F.3d at 843–44.) *Guzman* concluded that the district court had no equitable jurisdiction to hear the UCL claim because the plaintiff had an adequate legal remedy under the CLRA, even though the CLRA claim was time-barred. *Id*. at 1313. The district court should have denied the summary judgment motion and dismissed the UCL claim without prejudice based on lack of equitable jurisdiction. *Id*.

*Guzman* rejected the argument that the rule from *Sonner* applies only when the plaintiff voluntarily

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

dismisses all damages claims on the eve of trial, stating, "*Sonner*'s holding applies to equitable UCL claims when there is a viable CLRA damages claim, regardless of whether the plaintiff has tried to avoid the bar to equitable jurisdiction through gamesmanship." *Guzman*, 49 F.4th at 1313; *see In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) ("Plaintiffs attempt to cabin *Sonner* to its facts, but subsequent case law has made clear that '*Sonner*'s holding applies to equitable UCL claims when there is a viable CLRA damages claim, regardless of' the facts").

*Key* involved claims under the Cartwright Act and UCL. *Key*, 129 F.4th at 1137. The district court granted summary judgment in favor of the defendants on the Cartwright Act claim. *Id*. at 1138. The district court also concluded that the plaintiffs had an adequate remedy at law under the Cartwright Act and therefore granted summary judgment for defendants on plaintiffs' claim for restitution under the UCL. *Id*. at 1138.

*Key* held plaintiffs must establish that they lack an adequate legal remedy before obtaining equitable restitution under the UCL. *Key*, 129 F.4th at 1142. [W]here an adequate legal remedy exists, federal courts are precluded from awarding equitable relief." *Id*. "As in *Sonner*, Plaintiffs' complaint 'does not allege that [they] lack[ ] an adequate legal remedy.'" *Id*. The plaintiffs' Cartwright Act claim was an adequate legal remedy even though the claim failed to survive summary judgment. *Id*. *Key* concluded that the district court lacked equitable jurisdiction because plaintiffs failed to show their legal remedy was inadequate. *Id*. Because the court lacked equitable jurisdiction, the court should have dismissed the UCL claim. *Id*.

### 2.     Plaintiffs Have Not Established the Inadequacy of Their Legal Remedy

Plaintiffs have an adequate legal remedy in their implied covenant claim for damages and have not shown this remedy is inadequate. They seek the same amount of alleged premium overcharges as either restitution under the UCL or damages for breach of implied covenant (Dkt. 438–39 at ¶ 51, Exs. A & F) and do not allege in their 4AC that their legal remedy is inadequate, ***as required***. *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. 2023) (plaintiff seeking equitable relief ***must*** allege lack of an adequate legal remedy); *Chiulli v. Am. Honda Motor Co.*, 690 F.Supp.3d 1038, 1062 (N.D. Cal. 2023) (*Sonner* requires plaintiffs seeking equitable relief to "plausibly allege they lack an adequate remedy at law").

*Sonner* held plaintiff failed to show she lacked an adequate legal remedy because she (1) did not allege lack of an adequate legal remedy in her complaint and (2) sought the same amount in restitution that she sought in damages for the same harm. *Sonner*, 971 F.3d at 844; *see Cook v. Matrix Absence Mgmt., Inc.*,

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

737 F.Supp.3d 885, 892 (N.D. Cal. 2024) (finding lack of equitable jurisdiction where plaintiff sought the same measure of recovery for both equitable and legal claims); *Sagebrush LLC v. Cigna Health & Life Ins. Co.*, 2025 WL 1180696, at *3 (C.D. Cal. Apr. 23, 2025) (same). Both circumstances are true here as well, such that Plaintiffs cannot establish that their legal remedy is inadequate.

Plaintiffs argue in their Motion that their legal remedy is inadequate because their equitable remedy is "'more certain, prompt, and efficient,'" citing *Valiente v. Simpson Imports, Ltd.*, 717 F.Supp.3d 888 (N.D. Cal. 2024), and *Murphy v. Olly Public Benefit Corp.*, 651 F.Supp.3d 1111 (N.D. Cal. 2023). Dkt. 493 at 31. *Valiente* and *Murphy* are not on point. Both cases involved motions to dismiss brought early in the case and applied a permissive pleading standard that is inapplicable at this late stage in the proceeding.

*Valiente* and *Murphy* followed the rule endorsed by some courts that *Sonner* imposes minimal requirements *at the pleading stage*. *Valiente*, 717 F.Supp.3d at 907 (*Sonner* and its progeny "'require far less at the pleading stage'"); *Murphy*, 651 F.Supp.3d at 1129 ("*Sonner* … has minimal application at the pleading stage"); *but see Rodriguez v. FCA US LLC*, 2023 WL 3150075, at *4 (C.D. Cal. 2023); *Watkins v. MGA Ent., Inc.*, 550 F.Supp.3d 815, 837 (N.D. Cal. 2021). *Valiente* held that allegations that damages may be less than restitution and that restitution may be "'more certain, prompt, and efficient'" were sufficient to survive a motion to dismiss. *Valiente*, at 907. *Murphy* held that allegations that legal remedies were not as certain as equitable remedies were sufficient at the pleadings stage. *Murphy*, at 1129. Neither *Valiente* and *Murphy* held the same permissive pleading standard would apply later in the case on summary judgment.

To the contrary, *Guzman* and *Key* show that *Sonner* applies in full force at the time of summary judgment. *Guzman* and *Key* both involved summary judgments. *Guzman* reiterated the rule from *Sonner* that "to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman*, 49 F.4th at 1313. Far from the permissive pleading standing applied by the district courts in *Valiente* and *Murphy*, the Ninth Circuit in *Guzman* held that the plaintiffs had an adequate legal remedy even though the legal remedy was time-barred. *Key* similarly held that the plaintiffs had an adequate legal remedy even though their legal claim for damages failed to survive summary judgment. *Key*, 129 F.4th at 1142.

*Key* and *Sonner* foreclose Plaintiffs' arguments concerning the "ease" of one claim over another. Courts have held that, whether at the pleading stage or later, a legal remedy is not inadequate merely because

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

an equitable remedy would be easier to prove or greater in amount. *Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 1443767, at \*5 (C.D. Cal. 2025) (allegations that restitution easier to obtain than damages and greater in amount failed to sufficiently allege that the legal remedy was inadequate); *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at \*2 (N.D. Cal. 2024) ("*Guzman*'s 'emphasis on the relief that could possibly be afforded under a claim, as opposed to possible hurdles the plaintiff might face in achieving that relief, indicates that mere differences in proof between the claims does not make' a legal remedy inadequate"); *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at \*5 (C.D. Cal. 2022) (the fact that one remedy may be simpler or easier to obtain does not demonstrate that Plaintiffs lack an adequate remedy).

Moreover, differences in the measure of recovery do <u>not</u> render a legal remedy inadequate. "[A]n adequate legal remedy need not be an identical legal remedy. It would be anomalous for *Sommer*'s [*sic*] rule to be avoidable merely because of the reality that claims for restitution and damages often will result in different recoveries." *Ketayi v. Health Enrollment Grp.*, 2021 WL 2864481, at \*10 (S.D. Cal. 2021); *Hubbard v. Google LLC*, 2024 WL 3302066, at \*6 (N.D. Cal. 2024); *McCracken v. KSF Acquisition Corp.*, 2023 WL 5667869, at \*8 (C.D. Cal. 2023).

Plaintiffs contend they alleged their legal remedy is inadequate in ¶¶ 68(5) and 112 of their 4AC. Dkt. 496 at 6. However, ¶ 68(5) solely concerns whether a class action is proper under Rule 23(b)(2) & (3) and says nothing about the inadequacy of a legal remedy. Dkt. 163 at 23. Plaintiffs allege an inadequate legal remedy in ¶ 112 but only with respect to their declaratory relief claim, not their claims for restitution. Dkt. 163 at 33. The incorporation of prior paragraphs does not change what those paragraphs say. *Simply put, Plaintiffs do not allege and have not established an inadequate legal remedy*.

**B.      Genuine Issues of Material Fact Preclude Summary Judgment on Liability**

      **1.      There Are Factual Disputes Regarding Plaintiffs' Standing**

            **a.      Whether a Lower Rate Policy Was Available for the Kings**

For Article III standing, each class member must show (1) an injury in fact that is concrete, particularized, and actual or imminent, (2) caused by the defendant, and (3) likely redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 431 (2021). Plaintiffs do not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341. "Article III standing requires

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

a concrete injury even in the context of a statutory violation." *Id.* Plaintiffs suffered injury in fact only if there was a lower rate policy available at the time of their renewal.

The Kings' alleged injury rests on the premise that they should have been offered a PEIC policy upon renewal in June 2013. Dkt. 493 at 17:9–13. But that theory depends on PEIC being part of the NG control group at the time of the Kings' policy renewal. As the Court previously stated, "[t]o establish standing with respect to their June 2013 policy, the Kings must show that PEIC had common ownership, management, or control with Defendants as of that date." Dkt. 422 at 15:26–27. There is a factual dispute whether PEIC was part of the control group in June 2013, which precludes summary judgment. National General did not own PEIC at the time. Rather, an entirely separate publicly traded company did.

Defendants have presented evidence that PEIC was not part of the control group before April 1, 2014, the date INIC acquired PEIC from Sequoia Insurance Company. Dkt. 154-1 at 5, 348-17 at 4. PEIC was a wholly owned subsidiary of Sequoia before then, and the California Department of Insurance ("CDI") found that Sequoia was <u>not</u> part of the NG control group. Dkt. 154 at 3, n.2; Dkt. 348-17 at 3; Ex. D, Patel Decl. at ¶¶ 84-92; Ex. J, Yeh Decl. at ¶¶ 4-16; and *see generally* Ex. K, Nelson Decl.[1] Acknowledging a factual dispute and concluding that it "must accept Plaintiffs' version of the disputed facts as true" for class certification, this Court found there was "sufficient factual basis from which a reasonable juror could [] accept Plaintiffs' assertion that PEIC and Defendants were in the same control group as of June 2013," while noting it was a "close question." Dkt. 422 at 20:21–27. But that is not the same as finding Plaintiffs are entitled to summary judgment, as this is clearly a question of fact for the trier of fact to decide. Nevertheless, Plaintiffs misleadingly argue at Dkt. 493 at 17 that this Court has ruled that PEIC was a member of the same Defendant control group at the time of the Kings' policy renewal, citing Dkt. 480, Order on Renewed Motion, 28:4–6 and 47:6–10. Plaintiffs badly mischaracterize the Court's ruling.

The Court did <u>not</u> make a factual finding that PEIC was a member of the control group during the stated period of time but only accepted Plaintiffs' version of the facts for purposes of ruling on class certification, as stated in the initial class certification Order. Dkt. 422 at 20:21–27. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) ("a district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be

---

[1] Evidence citations without an ECF number refer to exhibits attached to the Jacobs Decl. submitted herewith.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue"). Moreover, any factual finding made in connection with class certification would not be binding on the merits. *Id*. at 667, n.10 ("The district court's findings at the certification stage 'do not bind the fact-finder on the merits'"). The factual dispute regarding whether PEIC was part of the control group in June 2013 and hence whether Plaintiffs suffered an injury in fact, *precludes summary judgment*.

Further, there is a triable issue of fact whether PEIC qualified for the super group exemption under § 1861.16(c)(1) as of April 19, 2013, when AmTrust acquired Sequoia (in reality, Defendants maintain they did not acquire PEIC until April 2014). While CDI approval did not occur until July 2014, PEIC has been operating in conformity with the super group exemption's requirements since *at least* April 19, 2013. Ex. J, Yeh Decl., ¶¶ 4–26. This presents a classic chicken-and-egg problem: a newly acquired insurer might be deemed part of a control group immediately upon acquisition—triggering the Lowest Rate Rule—yet cannot apply for the super group exemption until *after* acquisition. Yet, § 1861.16(c) does not give an insurer the opportunity to apply for a super group exemption prospectively in anticipation of acquisition. To that end, retroactive application of the exemption resolves this regulatory tension and avoids penalizing insurers for the very separateness that qualifies them for the exemption. As applied here, if the exemption is applied as of April 19, 2013, then PEIC policies did not have to be offered by Defendants, and Plaintiffs cannot establish a violation of the Lowest Rate Rule. This triable issue precludes summary judgment.

### b. Whether the Kings Would Have Purchased a Lower Rate Policy

Another disputed factual issue concerning whether the Kings suffered injury in fact is whether the Kings would have purchased a lower rate policy if available. Plaintiffs rely on self-serving declarations claiming they would have purchased a lower priced PEIC policy had it been offered. Dkt. 493 at 17:13–14. But that claim is not only disputed, it is contradicted by the Kings' own behavior and the record evidence.

The evidence shows that the Kings purchased their NGIC policy based on the positive experience that Mrs. King's parents had with NGIC. *See* Ex. A, D. King Depo at 29:3-16. Mrs. King testified that she could not recall whether NGIC offered her a lower rate than her previous insurer, nor could she confirm that she would not have chosen NGIC if its premiums had been higher. *Id.* at 30:2-14. She further acknowledged that she regularly receives solicitations offering lower-priced insurance but does not pursue them, confirming that price alone does not determine her insurance decisions. *Id.* at 35:19-36:17.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This evidence contradicts Plaintiffs' assertion that the Kings would have purchased a PEIC policy had it been offered and creates a genuine issue of material fact. Courts have long held that such credibility determinations, particularly when a declarant's assertions are inconsistent with their conduct, are reserved for the factfinder. *See S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1055 (9th Cir. 2008); *Advanced Risk Managers, LLC v. Equinox Mgmt. Grp., Inc.,* 2021 WL 4243400, at \*14 (N.D. Cal. Sept. 17, 2021); *McMillen v. Americo Fin. Life & Annuity Ins. Co.,* 2014 WL 1270535, at \*6 (E.D. Cal. Mar. 26, 2014); *Antonio v. Alpha Beat Co.*, 2018 WL 6017028 at \*9 (C.D. Cal. Oct. 19, 2018).

### c.   Whether *Other* Class Members Suffered Injury in Fact

The same factual disputes relating to the Kings also impact other class members. Whether PEIC was part of the control group in 2013 is a threshold question that affects the standing of all class members who Plaintiffs claim should have been offered a PEIC policy. This factual dispute alone precludes summary judgment on a class-wide basis, but it is not the only factual dispute. Critically, class members suffered an injury in fact as a result of the alleged failure to offer the lowest rate policy available *only if* they would have purchased that policy. Whether they would have done so if offered is a disputed factual question that requires a fact-intensive inquiry considering the qualitative differences in coverage, consumer preferences, and other subjective purchasing considerations. Plaintiffs have submitted no evidence capable of resolving this question on a class-wide basis, let alone as a matter of law on summary judgment.

The Court has already rejected Plaintiffs' attempt to establish class-wide causation as to their breach of implied covenant claim, concluding "Plaintiffs have not raised any legal theory to overcome Defendants' argument [on consumer choice], nor have they raised any evidence of a method of common proof to determine proximate causation on a class-wide basis." Dkt. 480 at 43:12–14. Plaintiffs' failure to provide such proof on summary judgment is equally fatal to their UCL claim, nor could they provide such evidence sufficient to prevail on summary judgment. Plaintiffs' own expert, Jeffrey Nash, conceded at deposition that "it's different for every individual" when it comes to why consumers select one policy over another. Ex. B, Nash Depo. at 35:3–5. There is no evidence Plaintiffs can point to regarding causation and injury in fact that allows them to establish the complete absence of any triable issues of fact for liability for the class.

Plaintiffs further contend that irrespective of themselves, the class includes current and future policyholders who are or may be entitled to injunctive relief. Dkt. 496 at 6–7. But at least one current class

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

representative must have standing with respect to each form of relief sought. *Villa v. Maricopa Cnty*., 865 F.3d 1224, 1229 (9th Cir. 2017). Because the Kings have no standing with respect to injunctive relief, they cannot maintain a class action for injunctive relief irrespective of current and speculative future policyholders. In any event, Plaintiffs do not move for partial summary judgment as to injunctive relief.

### 2.    There Are Factual Disputes as to Defendants' Compliance with the Lowest Rate Rule

#### a.    There Are Factual Disputes Regarding the Availability of a Lower Rate

Brown's model does not establish as a matter of law, without genuine dispute, whether a lower-rate policy was available for each class member. As set forth below, Brown's model is admittedly inaccurate, and its reliability is a question for the trier of fact such that summary judgment must be denied.

##### (1)    Brown's Failure to Accurately Calculate Premiums Creates Factual Disputes as to the Availability of a Lower Rate

Plaintiffs rely entirely on Brown's model to determine if a lower-rate policy was available within the control group. Brown's model purports to identify policyholders who were not charged the lowest available rate by calculating "*estimates*" of premiums paid and comparing them with modeled "*estimates*" that would have been paid had the policyholders been offered the lowest available rate. Ex. C, Braithwaite Decl. at ¶ 59. However, there are factual disputes regarding the accuracy and reliability of Brown's model.

Brown's model compares "estimated premium paid" to "estimated premium for the lowest-priced policy," but his "before" calculations, where actual premiums paid are known, have a 96% error rate. *Id*. at ¶¶ 79-87. Since his "after" calculations use the same flawed model, the entire analysis is unreliable. *Id*. at ¶¶ 74, 93. There are factual disputes as to whether Brown has accurately identified *any* differential between the premium paid and the lowest available rate. Brown offers multiple "analyses" derived from the same model, all of which suffer the same flaws and present the same genuine issues of material fact. *Id*. at ¶ 74.

Brown's reliability errors have a material impact on his conclusions that a lower rate was available. For instance, for 2% (6,534) of the policies he sampled, Brown's *estimated* premium paid is more than *double* the actual premium paid. *Id*. at ¶ 89. In 24 instances, Brown's estimated premium paid exceeds the actual premium paid by more than $10,000. *Id*. at ¶ 84 and Table 8. Replacing Brown's estimated premiums paid with ***actual*** premiums paid results in 15% (45,081) of the policies he sampled falling out of the class because there was no longer any lower available rate based on what the policyholders ***actually*** paid. *Id*. at ¶

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

90. For example, Brown estimated a premium of $6,075 for an IPIC policy where the actual premium paid was only $1,698. *Id*. at ¶ 91. He concluded lower premiums were available from INIC for that policy, but his estimated INIC premiums were greater than the IPIC premium actually paid. *Id*. at ¶ 91 and Table 9.

Rakesh Patel, who is currently Vice President, Specialty Product Management, performed a re-rate of certain policies identified in Brown's model. Mr. Patel, for example, looked at the two policies reflected in the below chart. Ex. D, Patel Decl. at ¶ 44. Per Brown's models, Brown determined the lowest priced carrier for both insureds was INIC Summit. *Id*. at ¶¶ 45, 48. In actuality, based on Mr. Patel's independent re-rates using the rating engines at National General (which have National General's approved rate filings programmed into them and is how actual premiums are calculated), and after reviewing the premium and billing documents for the policies, the carriers from whom the insureds actually purchased their policies (i.e., MICG and NGIC) were both *lower* than what they would have paid for policies with INIC Summit, the carrier Brown claims had a lower rate. *Id* at ¶¶ 47, 49 and Exs. 4-5. This is yet another example of how Brown's model's inability to calculate the actual rates leads to triable issues of fact as to what the lowest rate carrier actually was, precluding summary judgment. The below chart shows how Brown's erroneous rating engine calculated *hypothetical* paid premiums that were several multiples higher than the premiums those insureds actually paid with MICG and NGIC; and calculated a hypothetical lower premium with INIC that was actually higher than what the insureds actually paid, meaning the insureds got the lowest rate, and are not in the class. Yet, Brown's flawed model claims these insureds overpaid by an average of $10,143 when the exact opposite is true. They paid less with their original carrier. *See* below and *id.* at ¶¶ 43-50.

| Policy ID | Insured's Actual Premium | Brown's Modeled Premium | Brown's Modeled Lowest Carrier | Brown's Modeled Premium for Brown's Lowest Carrier | Actual Premium for Brown's Modeled Lowest Carrier | Result |
|---|---|---|---|---|---|---|
| 20016910625 (MICG) | $1,829 | $12,239 | INIC | $2,830 | $5,144 | No injury/violation – insured's actual premium lower than with INIC |
| 20097570931 (NGIC) | $2,188 | $15,413 | INIC | $4,536 | $3,873 | |

The Court previously noted that the conflicting expert opinions regarding the reliability of Brown's model present "fertile grounds for cross examination." Dkt. 480 at 13:21–22. Genuine issues of material

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

fact regarding Brown's calculations of premiums paid and conclusions on the availability of a lower rate preclude summary judgment. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir.2000) (conflicting expert testimony creates triable issue precluding summary judgment).

### (2)     There Are Factual Disputes as to Brown's Assumptions

Brown's model is premised on numerous factual assumptions that are *unreasonable* and *disputed*.

### i.     Brown's Model Improperly Assumes the Policy Purchased Was the Only Policy Offered

Brown assumes the policy purchased was the only policy offered to the insured. Ex. E, Brown Depo. at 87:24-88:24. Yet Brown does not identify any basis for concluding the same. An expert's assumptions are not evidence. *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 832 (9th Cir. 2001). An expert opinion based on assumptions unsupported by evidence cannot satisfy the initial burden of a party moving for summary judgment. *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019). Absent supporting evidence, Brown's unfounded assumption does not support his conclusion that the lowest rate policy was not offered. And Brown is just wrong, as his assumptions ignore the Internet sales, discount notices all insureds received and the sales processes of independent agents, all discussed within.

### ii.     Brown's Assumptions re: Eligibility Are Unreasonable

Brown applies his model to all of Defendants' listed groups "whether considered affinity or not." Ex. F, Brown Decl. at ¶ 16. Brown assumes all policyholders qualify for the groups, an approach that is flawed and unsound from an actuarial perspective. Ex. C, Braithwaite Decl. at ¶ 104. This is because affinity groups, as admitted by Plaintiffs' own experts, cannot be offered to insureds who do not qualify for the affinity group. *Id.* at ¶ 103; Ex. B, Nash Depo. at 67:3-6; Ex. G, Laucher Depo. at 42:24-43:3. For example, NGIC has affinity group rates for members of professional organizations such as the Association of Certified Public Accountants ("AICPA") and MICG has affinity group rates for employees of General Motors ("GM"). Braithwaite Decl. at ¶ 104. Yet, if a particular insured was not a member of one of these groups, Brown's model still compares the rate they were offered in another program (which did not require membership in a GM, Raytheon, or Hughes employee group). Brown has offered no explanation as to why he would make such an assumption and ***admitted the "comparison shouldn't be made if the employee doesn't meet the eligibility requirement…."*** Ex. E, Brown Depo. at 75:21-24. The trier of fact should be permitted to weigh the reasonableness of his disputed assumptions. *See* Dkt. 480 at 21:18-22:6. And as his

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

assumptions go to eligibility and whether a lower rate was available, summary judgment should be denied.

Additionally, Brown's model assumes that every insured would purchase a club membership where club membership is an eligibility requirement. For example, Brown's declaration acknowledges that some affinity groups require membership fees such as Club DentPro which had a $36 membership fee. Ex. F, Brown Decl. at ¶ 16 and Ex. A. Brown's model assumes in every instance that the insured would purchase a membership in Club DentPro when comparing policies to INIC Summit (which requires membership in Club DentPro). Ex. E, Brown Depo. at 58:1-61:4. Similarly, Brown's model assumes that an insured would never decline a membership in NGIC's affinity group, Good Sam, when offered for every comparison made to a Good Sam policy. *Id* at 62:8-24. Brown identifies no basis for this assumption and whether or not everyone would in fact agree to join and pay membership fees is a disputed issue of material fact. *See* Ex. D, Patel Decl. at ¶ 75. These unfounded assumptions fail to satisfy Plaintiffs' initial burden, and the trier of fact should be permitted to weigh the legitimacy of the assumptions. Also, because these issues go to causation and injury in fact, Plaintiffs' request for summary judgment on liability must be denied.

### iii. Brown's Model Unreasonably Assumes Differences In Policy Options and Features Are Immaterial

There are significant differences in policyholders' choice of coverage amounts available from each defendant. Ex. D, Patel Decl. at ¶¶ 30-38; Ex. C, Braithewaite Decl. at ¶¶ 52-57. Brown admits there were situations "where the exact limit/deductible is not available under another company []." Ex. F, Brown Decl. at ¶ 20. When "a policy has a limit not offered by another company," Brown claims, without support, that "it is reasonable to assume a policyholder would accept an additional amount of coverage at a lower rate" and inversely, for collision and comprehensive deductibles, "the assumption is policyholders would accept a smaller deductible at a lower rate." *Id* at ¶ 42. However, Brown admits his model has no way of assessing the importance of a particular limit or deductible to a particular insured and admits there is no way to assess the weight an individual purchaser places on those factors based on the data made available to him. Ex. E, Brown Depo. at 52:18-54:4. The model has no way of knowing whether a particular insured would accept a $500 deductible if the product they originally purchased had a $250 deductible that was not offered by the allegedly comparable product. *See id.* at 54:13-55:3. Furthermore, Brown does not, and cannot, determine the importance to an individual customer of policy differences where the coverage limit is facially the same.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Specifically, in some carriers' plans, deductibles are doubled or tripled if losses occur within so many days of policy issuance. In other plans, permissive users have different coverage limits than named insureds, or provide no OEM-parts coverage, or no coverage for rental vehicles, or no coverage for permissive drivers, or different towing / rental coverages, or no coverage for commercial use. Yet, Brown treats these plans as identical. Ex. C, Braithwaite Decl. at ¶ 139. His approach is "problematic as it is inherently unfair to presume how individuals would behave in specific situations" and making these assumptions without a factual basis introduces bias. *Id*. at ¶ 96; *see* Ex. D, Patel Decl., ¶¶ 30-38 (differences in coverage affect consumer choice).

Brown's model simply assumes that where products do not have the same limits, deductibles, and/or features, an insured would simply accept the differences for a lower premium. However, the basis of that assumption is a disputed question of fact. Plaintiffs' own expert Nash ***agreed*** when he testified that "it's different for every individual" when it comes to why consumers select one policy over another. Ex. B, Nash Depo. at 35:3–5. The trier of fact should be permitted to weigh the reasonableness of Brown's assumptions. Because these assumptions go to causation and injury in fact, both of which are required for liability and for Article III standing, summary judgment must be denied.

### iv.    Brown's Model Improperly Assumes Any Missing Data Relating To A Rating Factor Is Not Material To His Analysis

Brown's treatment of missing data needed to calculate a premium he alleges could have been offered by one or more NG carriers other than the one that issued the policy, is inappropriate and demonstrates a failure to use appropriate actuarial judgment. Ex. C, Braithwaite Decl. at ¶¶ 70, 96 (discussing Ex. F, Brown Decl. at ¶¶ 41-44). Brown states: "In scenarios where no applicable data was collected by the company assumptions, we selected the factor that gives benefit to the defense" and "To the extent data is not available, the most conservative factor is assumed such that damages err, if at all, towards being understated." *Id*. at ¶ 144. For example, Brown notes that "[f]or something like a good student discount, the data may have been collected from a company that did not offer the discount" and thus his model "assume[d] no discount is applied (which will avoid any possible overstatement of restitution)." *Id*. at ¶ 96 (discussing Brown Decl. at ¶ 41); *Id.* at ¶ 108 (noting some Defendants offer a senior discount while another does not).

Brown's characterization of what he considers immaterial as having "no impact" is incorrect. Ex. C, Braithwaite Decl. at ¶ 70. "Even if these incorrect assumptions are immaterial to the aggregate damage

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

calculation (although Brown provides no evidence or analysis to support this contention), that does not demonstrate that the incorrect assumptions are immaterial to individual members of the purported Class." *Id*. Further, Brown fails to provide any rationale or evidence of why these "minor" rating factors have no "impact on the 'accuracy and reliability of the results[.]'" *Id*. Given that Defendants dispute the accuracy and reliability of his approach, a trier of fact should be left to decide whether these assumptions were improper and how they affect liability. As such, summary judgment must be denied.

### b. There Are Factual Disputes Whether a Lower Rate Policy Was Offered

Disputed issues of fact render summary judgment equally unavailable based on Plaintiffs' contention that the policies, procedures, and scripts disseminated to Defendants' employee agents failed to ensure compliance with and actually prohibited compliance with the Lowest Rate Rule.

### (1) There Are Factual Disputes as to Whether Defendants Had Policies in Place to Ensure Compliance with the Lowest Rate Rule

Plaintiffs falsely contend "Defendants had no policy or procedure in place to ensure that the lowest premium within their Control Group of companies would be offered to California GDs." *Id*. at 14:27-28.

First, Defendants had a policy of including discount notices in the paperwork issued to new customers and on renewal. Ex. D, Patel Decl. at ¶ 78. These discount notices advised customers that they might qualify for additional discounts based on various factors related to the eligibility requirements and the various affinity group policies sold by Defendants. *Id*. For example, NGIC began using in 2011 the following language in the document packets sent to new customers and renewal customers:

> If you are a member of a motor club, an RV club, a professional association, an employee group or other similar type group and would like your policy reviewed to assure you are receiving the best possible rate, please contact your agent at the phone number listed on your declarations page.

*Id*. Similar language began appearing in documents utilized by NGIC, IPIC, and MICG in 2011 and continue to be used through the present. *Id*. at ¶ 79. INIC began using similar language in its application and declaration page documents in 2014 and has included it continuously since then. *Id*. *These discount notices are **an industry standard method** of complying with the Lowest Rate Rule*. *Id*. at ¶ 80. The Kings themselves received a renewal notice dated April 29, 2013 advising them to contact their agent to ensure that they receive the lowest available rate. Ex. D, Patel Decl., Ex. 7.

Second, Defendants established the www.directauto.com website in 2020 to sell their broad market

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

policies. *Id.* at ¶ 81. The website is designed to guide customers through a set of inquiries to determine whether potential broad market customers applying for IPIC policies meet the eligibility requirements for the affinity group products sold by NGIC, MICG, and INIC. *Id*. If an online customer qualifies for any of these programs, the customer is provided with instructions on how to obtain a quote for affinity group policies that the customer may be eligible to purchase. *Id*. The website also provides customers the information needed to join Club Dent Pro and Nation Safe Driver club if they would like to qualify for the group member product. *Id.* at ¶ 82. From 2020 through 2024, more than 20,000 new policies were sold via the website (which has been visited more than 500,000 times by prospective insureds). *Id*. at ¶ 83. That is approximately four times the number of new policies sold by employee agents during the same time period. *Id*. Plaintiffs completely ignore the Internet sales process.

Third, none of the evidence offered by Plaintiffs to support their contention relates to policies or procedures promulgated by Defendants' independent agents (i.e., independent insurance agencies). A significant number of the policies purchased by the class were sold by independent agents. *Id*. at ¶ 27. Over 100,000 new policies sold by Defendants during the class period were sold by independent agents. *Id*. Compared to the number of new policies sold by employee agents during the class period (approximately 50,000), independent agents sold approximately twice as many. *Id*. All of which is just a small fraction of the over 1.25 million new policies sold by independent brokers during the class period. *Id*. at ¶ 28. While each independent agent agreed to abide by all applicable insurance code statutes and regulations in performing their agency obligations, it was the responsibility of those agents to implement necessary policies and procedures sufficient to meet their contractual obligations. Ex. H, Conroy Decl. at ¶¶ 5-8. Independent agents are independent contractors, not employees of Defendants. They sell insurance from multiple companies, not only Defendants, and Defendants cannot exercise the same type of control over independent agents as they can their own employee agents. *Id*. at ¶ 9. Plaintiffs simply ignore independent agents in their analysis of the relevant policies and procedures.

> **(2)    There Are Factual Disputes as to Whether Defendants Jointly Trained All Sales Agents and Developed Practices That Prohibited Offering Lowest Rate Policies For All Class Members**

Plaintiffs assert that Defendants "jointly trained all National General agents and representatives," and "prohibited their agents from cross offering." Dkt. 493 at 15:5-6, 10. The first assertion is undisputably

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

false. The second assertion is also false and, at a minimum, creates a factual dispute.

With respect to the claim that Defendants jointly trained all of their agents and representatives, Plaintiffs again simply ignore policies sold by independent agents. None of Plaintiffs' cited evidence establishes that Defendants trained their independent agents. Instead, the undisputed evidence establishes that Defendants did *not* train their independent agents. Ex. H, Conroy Decl. at ¶¶ 5, 7, 8. Independent agents are independent contractors who operate independently from Defendants and are responsible for training their own personnel. *Id*.

With respect to the claim that Defendants prohibited employee agents from cross offering, this statement is false. Plaintiffs contend Defendants jointly developed a list of "unacceptable behaviors" that would result in an agent's termination if policies were cross-offered in compliance with 1861.16. This argument is, at best, lacking in evidence and, at worst, grossly misleading. Plaintiffs' "evidence" is found in the deposition of Amber Cononico and her deposition exhibit 154 ("Ex. 154"). Dkt. 493-35. Ex. 154 is a document entitled "2021 Unacceptable Behaviors" and lists as the first unacceptable behavior: "Placing any business in a different Plan Code than what the client actually called in with." *Id*. The document further states, "If you commit any of the unacceptable behaviors listed above … you will be subject to immediate termination of employment." *Id*. Critically, nowhere do Plaintiffs establish that this so-called unacceptable behavior operates as a ***relevant*** directive to ***all*** of Defendants' agents that ***they*** are ***prohibited*** from offering the lowest rate under § 1861.16. **First**, Plaintiffs do not claim (and offer no support in the record) that this 2021 training directive applied to all policies sold during the class period. It certainly did not apply to independent agents. *See* Ex. H, Conroy Decl.; Ex. I, Cononico Decl.; and Section IV.B.2.b(2), (3) and (5) below. **Second**, the Plan Code does not limit compliance with § 1861.16. As Cononico testified, the referenced "plan code" is merely a marketing assignment designed to track "marketing attribution." Ex. L, Cononico Depo. at 123:23-124:3. This does not prohibit compliance with § 1861.16. At best, all Plaintiffs can establish is that employee agents were directed not to ***unilaterally*** change the Plan Code, while failing to disclose that Cononico also testified the Plan Code can be changed with supervisor approval. *Id.* at 124:4-22; Ex. I, Cononico Decl. at ¶¶ 14-17. There is an issue of fact as to whether the Unacceptable Behaviors Document had *any* impact on compliance with the Lowest Rate Rule. **Third**, Plaintiffs fail to establish this training directive was given to ***all*** of Defendants' agents, nor can they, as Ex. 154 was used in training

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

employee agents **only**, as Cononico testified, not independent agents. Only a small fraction of new policies sold during the class period were sold by employee agents. Ex. D, Patel Decl., ¶ 28. That shrinks even more once one factors in that, during the class period, over 65% of policies sold were renewal policies that were not sold by employee agents who *might* have received the Unacceptable Behaviors Document. *Id* at ¶ 29.

### (3)    There Are Factual Disputes as to Whether Defendants' Agents Were Required to Quote Only One Company's Policy

Plaintiffs assert that Defendants "jointly control communications that their direct agents and representatives have with potential insured through call centers" and use scripts that "do not allow for cross offering." Dkt. 493 at 15:15-17. These claims raise disputed issues of fact as Plaintiffs essentially concede that call center scripts and Steps did not apply to all of the policies sold to the class. Defendants' scripts and "Steps" were only used by employee agents. As discussed above, only a small fraction of the new policies sold to class members were sold by employee agents. Independent agents never received these scripts or the Steps. Ex. H, Conroy Decl. at ¶ 7. Plaintiffs offer zero evidence supporting a claim that any policy was provided to independent agents prohibiting offers of the Lowest Rate. Indeed, Plaintiffs offer zero evidence establishing that Defendants in any way controlled the manner in which independent agents offered quotes to prospective customers, nor could they. Independent agents are never captive to Defendants, which means that all of them offer products outside those offered by Defendants. *Id.* at ¶ 9. Independent agents determine which policies they sell on behalf of Defendants and which product (including products sold by third parties completely unaffiliated with Defendants) they quote to prospective customers. *Id*. at ¶ 7.

### (4)    There Are Factual Disputes as to Whether Defendants' Processes Made it Impossible to Offer Lowest Rate Policies

Plaintiffs assert that the "process" Defendants' "jointly controlled agents and representatives are required to follow makes it impossible" to offer the Lowest Rate due to "the lack of information they are instructed to gather." Dkt. 493 at 15:23-25. As discussed above, not all sales agents were "jointly controlled." Instead, a significant number of policies were sold by independent agents, and Plaintiffs offer no evidence that Defendants dictated any type of "process" that independent agents were required to follow that made it impossible to offer the Lowest Rate due to a lack of information. Instead, independent agents are independent contractors who dictate their own policies and practices. Ex. H, Conroy Decl., ¶¶ 5-8.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**(5)    There Are Factual Disputes Whether the NPS System Prohibited Defendants' Agents from Performing Comparative Rate Analyses**

Finally, Plaintiffs argue that, "Defendants' jointly controlled agents and representatives all generate quotes using the same NPS system" and that the NPS system was "not equipped to do a comparative rate analysis" necessary to offer the Lowest Rate. Dkt. 493 at 16:6–10. But Plaintiffs cite no evidence that independent agents were "jointly controlled" and no evidence of how independent agents generate quotes or conduct their business. Contrary to Plaintiffs' implicit assertion that all agents used the NPS system, it was common practice for independent agents to use third-party software applications to compare policies and generate quotes. Ex. H, Conroy Decl. at ¶ 9. These software applications are third-party tools that compare product offerings from multiple insurance companies available in the marketplace used by independent agents and brokers. *Id*. These comparisons include comparing features, coverages, and premium. *Id*. Over 80% of the policies sold by independent agents originate from these software applications. *Id*. at ¶ 12. Meaning, the independent agent was actively performing product comparisons between the products that independent agent had available to sell before generating a quote.

In sum, fact disputes permeate and undermine Plaintiffs' claim that Defendants enacted procedures and practices applicable to *all* policies sold to class members that prevented compliance with the Lowest Rate Rule. Plaintiffs ignore Internet sales processes. Plaintiffs ignore the independent agents' processes. Plaintiffs try to use a narrow thread of training and procedures applicable to a limited number of employee agents that represented a small fraction of Defendants' total business, to mislead this Court into believing that employee agent processes applied to Defendants' business as a whole. It will fall to the trier of fact to ascertain the reality hidden within Plaintiffs' fiction.

**C.    Genuine Issues of Material Fact Preclude Summary Judgment Against All Defendants Based On Plaintiffs' Unsupported Theories of Joint Liability**

Plaintiffs' arguments regarding joint liability are both legally unsound and, at a minimum, cannot be resolved on summary judgment because they raise disputed issues of material fact.

**1.    Triable Issues of Disputed Fact Prohibit Summary Judgment on Plaintiffs' Agency and Concerted Action Theories of Joint Liability**

Plaintiffs argue the alleged failure of any one Defendant to offer the lowest rate is imputed to all Defendants based on the agency relationship between them and their agents and because of their "concerted action." Dkt. 493 at 20-24. This raises triable issues of fact as to what "concerted action" was taken and

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

what agency relationship existed, which turns on how a particular class member purchased their policy and from whom. As discussed above, a majority of policies were sold to class members by independent agents. Ex. D, Patel Decl. at ¶ 27. Moreover, not every independent agent was an agent for every Defendant. Ex. H, Conroy Decl. at ¶ 5. Independent agents were free to review Defendants' product offerings and select which companies they wanted to sell for. Typically, these independent agents only elected to sell policies for INIC and IPIC. *Id*. And contrary to Plaintiffs' suggestion that all agents that sold policies to class members were agents for NGIC, MICG, IPIC, and INIC, independent agents rarely contracted with all four. *Id*. Plaintiffs offer no evidence that independent agents held themselves out as agents for all Defendants, so there is no basis for joint liability based on a theory of actual or ostensible agency. Additionally, none of Plaintiffs' evidence addresses renewal policies or policies sold via Internet. Ex. D, Patel Decl. at ¶ 81–83.

**2.    Triable Issues of Disputed Fact Prohibit Summary Judgment on Plaintiffs' Alter Ego Theory of Liability**

Plaintiffs have not and cannot demonstrate that Defendants are alter egos of one another. To satisfy the alter ego test, a plaintiff must establish "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). Most critically, Plaintiffs ignore the legal reality that alter ego is an issue of fact. "The determination of whether requirements exist for disregarding the corporate entity are primarily for the trial court, and not questions of law ...." *Santa Cruz Empacadora, S. de R.L. de C.V. v. R.B. Packing of California, Inc.*, 2005 WL 8173035, at *2 (S.D. Cal. Sept. 13, 2005) (internal quotation and citations omitted). Disputed issues of fact with respect to each of these factors prohibits a finding of alter ego.

**a.    Triable Issues of Disputed Fact Prohibit a Finding of Unity of Interest**

Satisfying the "unity of interest" prong requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id*. When examining a claim of Single Enterprise, "[c]ourts consider nine factors when assessing the first prong of the alter ego test:

> (1) the commingling of funds and other assets of the entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *12 (N.D. Cal. Jan. 19, 2022). "While a court need not find that every factor is present, the Ninth Circuit has specifically found that '[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control.'" *Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*, 2020 WL 6290377, at *5 (N.D. Cal. Oct. 27, 2020) (*quoting Ranza,* at 1073). "A parent's involvement in 'macro-management issues' do not satisfy this element, such as reviewing and approving major decisions, placing several of its directors on the subsidiary's board, and involving itself in the subsidiary's pricing decisions. Instead, the plaintiff must show that the parent directs the subsidiary's 'day-to-day operations' and that the 'entities failed to observe their separate corporate formalities.'" *Id.*

Plaintiffs rely heavily on Defendants' common ownership, leadership, and some shared employees to argue alter ego liability. But Plaintiffs fail to show that policies were sold by common employees in shared offices. In fact, the majority of the new policies sold during the class period were sold by agents and brokers not employed by NGMC. Ex. D, Patel Decl., ¶ 28. Even *if* these factors suggest a unity of interest, they are insufficient on their own. *See Jeong*, 2022 WL 174236, at *13-14 (finding that common ownership, directors, and office use alone are insufficient to support single-enterprise liability). California law focuses on factors like commingling of funds, one entity holding itself liable for another's debts, use as a mere shell, inadequate capitalization, and failure to follow corporate formalities. Yet, Plaintiffs present no evidence on ***any*** of these factors, precluding a finding of unity of interest. *See id*. at *12-15. And the evidence establishes exactly the opposite with respect to these factors or at least raises an issue of fact. Ex. D, Patel Decl., ¶ 93.

**b.    Triable Issues of Disputed Fact Prohibit a Finding of Fraud or Injustice**

Even *if* Plaintiffs could establish unity of interest, which they cannot, their alter ego claim fails due to the complete absence of evidence that failure to recognize Defendants as alter egos of one another would work a fraud or injustice. Satisfying the second element of alter ego liability "generally require[s] some evidence of bad faith conduct on the part of defendants." *Successor Agency to Former Emeryville Redevelopment Agency & City of Emeryville v. Swagelok Co.*, 2024 WL 3952587, at *67 (N.D. Cal. Aug. 27, 2024). "Wrongful or inequitable conduct includes when the corporate form is used to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Id*. at *68.

Plaintiffs' fraud claims were dismissed long ago, and while they argue Defendants circumvented a statute, they fail to explain how the *corporate structure* was used to evade the Lowest Rate Rule. To the

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

contrary, Defendants operate within a standard holding company structure, with a publicly traded parent and extensive regulatory oversight ensuring financial solvency and compliance with California's insurance regulations. Moreover, Defendants' corporate structure does not deprive any class member of a remedy. Each Defendant is likely liable for any violation of the Lowest Rate Rule under a theory of *respondeat superior* and Plaintiffs do not contend any Defendant is incapable of satisfying a judgment against it. Plaintiffs offer no evidence that any Defendant was formed to defraud customers of their sister companies.

### 3. Triable Issues of Disputed Fact Prohibit Summary Judgment on Plaintiffs' Aiding and Abetting Theory of Liability

Disputed issue of fact prohibit summary judgment on aiding and abetting liability with respect to Plaintiffs' burden of establishing each Defendant provided "substantial assistance" to the others in violating the Lowest Rate Rule. Plaintiffs dogmatically slap on the label "concerted action" to explain how every Defendant is equally responsible for each other Defendant's agents' alleged failure to offer the lowest rate. But these magic words alone do not establish aiding and abetting liability and Plaintiffs have identified no evidence demonstrating substantial assistance with respect to a sister company's alleged failure to offer the lowest rate. Plaintiffs primarily argue this assistance was provided by failing to develop policies, tools, and training materials necessary to facilitate compliance with the Lowest Rate Rule. This theory ignores issues of fact relating to Defendants' use of industry standard disclosure notices for new policies and renewals (Ex. D, Patel Decl. at ¶¶ 78-80), the process used by customers purchasing from the website (*Id*. at ¶¶ 81-83), and the fact that independent agents have their own completely separate sales processes (Ex. H, Conroy Decl. at ¶¶ 5-8). Even if this was true, which it is not, this is not enough, as aiding and abetting liability cannot be based on a *failure* to act unless it is established that the alleged aider and abettor had a *duty* to act.

> Liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting.

*Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996). The Supreme Court recently explained, "our legal system generally does not impose liability for mere omissions, inactions, or nonfeasance; although inaction can be culpable in the face of some independent duty to act, the law does not impose a generalized duty to rescue." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489, 501 (2023) (because "plaintiffs' complaint

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

rests so heavily on defendants' failure to act, their claims might have more purchase if they could identify some independent duty in tort" that would have required defendants to take action).

While each Defendant *might* be liable for its agents' failure to comply with Section 1861.16 under principles of *respondeat superior*, there is no similar rule of vicarious liability that would apply to sister companies. The only theory along these lines that Plaintiffs advanced, *e.g.*, that all members of the control group are responsible for failures to comply with the Lowest Rate Rule, was rejected by the Court.

Plaintiffs' only attempt at establishing each defendant took *affirmative* action to substantially assist its sister companies' alleged failure to comply with the Lowest Rate Rule, is their argument that *all* Defendants worked in concert to develop a policy that prohibited *any* of Defendants' agents from cross offering policies. Plaintiffs' only "evidence" of this claim is the 2021 Unacceptable Behaviors Document discussed above. Dkt. 493-35. At best, this raises issues of fact as to whether the Unacceptable Behaviors Document was being used throughout the class period (since it was ostensibly issued in 2021) and whether the document actually prohibited employee agents from offering the Lowest Rate (since Cononico testified that employee agents could change Plan Codes with supervisor approval). *See id.*; Ex. L, Cononico Depo. at 124:4-22; Ex. I, Cononico Decl. at ¶¶ 14-17. Moreover, at a minimum, this raises issues of fact with respect to policies sold by independent agents, since the finder of fact will need to assess how a training document that independent agents never saw constitutes "substantial assistance or encouragement" to ensure that no Defendant was able to comply with its duty under the Lowest Rate Rule. Ex. H, Conroy Decl., ¶ 7.

**4.    Triable Issues of Disputed Fact Prohibit Summary Judgment on Plaintiffs' Conspiracy Theory of Liability**

Disputed issue of fact prohibit summary judgment on conspiracy liability with respect to Plaintiffs' burden of establishing that any particular Defendant owed a contractual duty to insureds who contracted with its sister companies. Plaintiffs contend all Defendants engaged in a "scheme to prevent (and actually prohibit) their agents from discharging their duty to cross-offer." Dkt. 493 at 28:22-24. The fundamental flaw in Plaintiffs' conspiracy theory is that it presupposes each Defendant has an individual duty to offer its sister companies' customers the lowest rate. The evidence establishes they do not. Consequently, they cannot have liability bootstrapped onto them by way of conspiracy allegations. This limitation on conspiracy liability is made abundantly clear by the very authorities Plaintiffs rely upon. The Court in *Naverrete v.*

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Meyer* explains, "'"[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act."'" 237 Cal.App 4th 1276, 1291–92 (2015). More importantly, the court explained there is a clear limit on this doctrine: "Liability 'presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.'" *Id*. at 1292 (*quoting Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (1994)).

*Applied Equip.*, a California Supreme Court opinion cited by Plaintiffs, explains this limitation in detail. "Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. ***It allows tort recovery only against a party who already owes the duty*** and is not immune from liability based on applicable substantive tort law principles." *Id.*, at 514 ("Because a party to a contract owes no tort duty to refrain from interference with its performance, he or she cannot be bootstrapped into tort liability by the pejorative plea of conspiracy"); *see Doctors' Co. v. Superior Ct.*, 49 Cal.3d 39, 44 (1989) (a "cause of action for civil conspiracy may not arise … if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing").

The Court already determined that Defendants had no direct statutory duty under § 1861.16(b) to offer class members the lowest rate within the control group because the duty is imposed on *agents*, not insurers. Similarly, there is no evidence in the record that any individual Defendant owes any contractual duty to insureds who purchased policies from a *different* Defendant. Instead, the evidence establishes that individual policies and renewals clearly identify which Defendant is underwriting the policy. *See, e.g.*, Ex. D, Patel Decl., Exs. 6-7. And it was the practice of each Defendant issuing insurance contracts to identify the contracting parties. *Id*. at ¶ 93. While an insurer is liable for the conduct of its agent acting within the scope of agency, that liability is based on the agency relationship and not on any breach of duty by the insurer. As a consequence of failing to establish that each Defendant owes a contractual duty to every class member, Plaintiffs' conspiracy theory of joint liability fails.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment should be denied.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Respectfully submitted,

Dated: June 20, 2025

**MICHELMAN & ROBINSON, LLP**

*/s/ Marc R. Jacobs*

Sanford L. Michelman, Esq.
Mona Z. Hanna, Esq.
David F. Hauge, Esq.
Marc R. Jacobs, Esq.
Vincent S. Loh, Esq.
Attorneys for Defendants *National General Insurance Company, Integon National Insurance Company, Integon Preferred Insurance Company, and MIC General Insurance Corporation*

26

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**