Michael F. Ram, SBN 104805
mram@forthepeople.com
Marie N. Appel, SBN 187483
mappel@forthepeople.com
Colin G. Losey, SBN 352223
colin.losey@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 846-3862

Jeffrey B. Cereghino, SBN 99480
jbc@cereghinolaw.com
CEREGHINO LAW GROUP LLP
739 Bryant Street
San Francisco, CA 94107
Telephone: (415) 433-4949

W. Craig Bashein, Admitted *Pro Hac Vice*
John P. Hurst, Of Counsel,
Admitted *Pro Hac Vice*
BASHEIN & BASHEIN CO., L.P.A.
Terminal Tower
35th Floor, 50 Public Square
Cleveland, Ohio 44113
Telephone: (216) 771-3239

*Attorneys for Plaintiffs and Class*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDD KING, DIEDRE KING, ELMO SHEEN, and SHEILA LEE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL GENERAL INSURANCE COMPANY, INTEGON NATIONAL INSURANCE COMPANY, INTEGON PREFERRED INSURANCE COMPANY, MIC GENERAL INSURANCE CORPORATION,<br><br>Defendants. | No.  4:15-cv-00313-DMR<br><br>**REPLY OF THE PLAINTIFF CLASS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: July 10, 2025<br>Time: 1:00 p.m.<br>Dept.: Courtroom 4 – 3rd Floor<br>   Oakland Courthouse<br>Honorable Chief Magistrate Judge Donna M. Ryu<br><br>Action Filed: January 22, 2015 |

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 1

A.  THE PLAINTIFF CLASS LACKS AN ADEQUATE REMEDY AT LAW, AS SUFFICIENTLY ALLEGED IN THEIR FOURTH AMENDED COMPLAINT. ................................................................. 1

B.  PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED ON LIABILITY ONLY, BECAUSE NO GENUINE ISSUES OF MATERIAL FACT EXISTS AS TO LIABILITY. ................................................ 4

1.   In Opposition section B(1), NG raises four possible disputes. The first is non-genuine, and the latter three do not matter. .............................................................. 4

2.   The NG Defendants failed to comply with the Lowest Rate Rule. .................................. 5

a.    There are no factual disputes regarding the availability of a lower rate. ........................ 6

(1) Brown's rate, based on the NG Defendants' approved rate filings, demonstrates that a lower rate was available for Plaintiffs and the Class. ............................................ 6

(2) The evidence demonstrates that Defendants' procedures did not include cross-offering. ................................................................................................................. 7

(3) Brown's assumptions relating to insured eligibility are reasonable in light of the evidence. ................................................................................................................. 7

(4) The Court already rejected Defendants' attempts to insert a reliance requirement into the UCL claims. ................................................................................................ 7

(5) Brown's treatment of missing data is actuarially sound. .......................................... 8

b.    There are no genuine factual disputes that a lower rate policy was not offered. ............ 8

(1) The NG Defendants had inadequate and/or non-existent compliance procedures. .... 8

(2) The absence of cross-offer compliance training and lowest available rate system capability is an undisputed fact. ................................................................................ 10

(3) Defendants' misleading discussion of "third-party systems" is a red herring. ......... 10

C.  ACTING IN CONCERT AS A SINGLE ENTERPRISE, THE NG DEFENDANTS ARE JOINTLY LIABLE FOR THEIR AGENTS' VIOLATIONS OF THEIR STATUTORY DUTY TO CROSS-OFFER TO THE PLAINTIFF CLASS. ......................................................................................................... 11

D.  DEFENDANTS' DECLARATIONS CONTAIN OBJECTIONABLE TESTIMONY. ............................ 13

III.  CONCLUSION ............................................................................................................. 15

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                    NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

**Cases**

*Am. Life. Ins. Co. v. Stewart*,
   300 U.S. 203 (1937)............................................................................................................3

*Brown v. Natures Path Foods, Inc.*,
   2022 WL 717816, n.5 (N.D. Cal. Mar. 10, 2022) .............................................................3

*Cf. Medina v. United Airlines, Inc.*,
   2022 WL 17095948 (C.D. Cal. June 13, 2022) .................................................................5

*Chebul v. Tuft & Needle, LLC*,
   2024 WL 5257021 (C.D. Cal. Oct. 9, 2024).....................................................................3

*Coleman v. United Servs. Auto. Ass'n*,
   No. 21-cv-217, 2023 WL 9110926 (S.D. Cal Dec. 22, 2023) ..........................................8

*Crowder v. The Shade Store, LLC*,
   2025 WL 754067 (N.D. Cal. Mar. 10, 2025) ....................................................................3

*Elgindy v. AGA Serv. Co.*,
   2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ..................................................................3

*French v. Banana Republic, LLC*,
   2024 WL 4682312 (N.D. Cal. Nov. 4, 2024) ....................................................................1

*Gutierrez v. Wells Fargo & Co.*,
   No. 7-cv-5923, 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010) ........................................8

*Guzman v. Polaris Industries, Inc.*,
   49 F.4th 1308 (9th Cir. 2022) ...........................................................................................2

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*,
   No. MDL 3084 CRB, 2024 WL 2261926 (N.D. Cal. May 16, 2024) ...........................13

*Jiminez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ..........................................................................................5

*Las Palmas Assoc. v. Las Palmas Ctr. Assoc.*,
   235 Cal. App. 3d 1220 (1991) .........................................................................................12

*Lin v. JPMorgan Chase Bank, N.A.*,
   2024 WL 5182199 (C.D. Cal. Aug. 15, 2024) ..................................................................3

*M.O. Dion & Sons, Inc. v. VP Racing Fuels, Inc.*,
   2022 WL 18281526 (C.D. Cal. Nov. 2, 2022) ..................................................................4

*McLaughlin v. L. Bloom Sons Co., Inc.*,
   206 Cal. App. 2d 848 (1962) ...........................................................................................13

*Miller v. Travel Guard Grp., Inc.*,
   2023 WL 7106479 (N.D. Cal. Sept. 15, 2023) .................................................................7

*Murphy v. Olly Pub. Benefit Corp.*,
   651 F. Supp. 3d 1111 (N.D. Cal. 2023) ...................................................................................... 3

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................................................................................. 13

*Nese v. Scenario Cokram USA, Inc.*,
   2021 WL 4497893 (C.D. Cal. July 20, 2021) ............................................................................ 3

*Toho-Towa Co., Ltd. v. Morgan Creek Prod., Inc.*,
   217 Cal. App. 4th 1096 (2013) ............................................................................................... 12

*Toho-Towa Co., Ltd. v. Morgan Creek Prod., Inc.*,
   217 Cal. App. 4th 1096 (2013) ............................................................................................... 12

*TVBI Co., Ltd. v. Hong Thoa Thi Pham*,
   2019 WL 1779975 (N.D. Cal. Apr. 23, 2019) ........................................................................... 5

*Valiente v. Simpson Imports, Ltd.*,
   717 F. Supp. 3d 888 (N.D. Cal. 2024) ...................................................................................... 3

*Wallis v. Centennial Ins. Co.*,
   2013 WL 3803971 (E.D. Cal. July 19, 2013) ........................................................................... 12

*Wallis v. Centennial Ins. Co.*,
   No. CIV 08-02558 WBS, 2013 WL 380397 (E.D. Cal. July 19, 2013) .................................... 12

*Watson v. Sutherland*,
   72 U.S. 74 (1866) .......................................................................................................................... 3

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................................................*passim*
Cal. Bus. & Prof. Code § 17203 ........................................................................................................ 4
Cal. Civ Code § 1750 et seq. ............................................................................................................. 2
Cal. Ins. Code § 1861.02 ................................................................................................................... 4
Cal. Ins. Code § 1861.025 ................................................................................................................. 4
Cal. Ins. Code § 1861.16 ....................................................................................................... 4, 10, 13
Cal. Ins. Code § 1861.16(b) ............................................................................................. 10, 11, 12, 13
Cal. Ins. Code § 1861.16(c) ............................................................................................................... 5
Cal. Ins. Code § 1861.16(c)(1) .......................................................................................................... 5
Cal. Ins. Code § 1861.16(c)(1)(A) ................................................................................................. 5, 13
Cal. Ins. Code § 1861.16(c)(1)(H) .................................................................................................... 10

**Other Authorities**

Restatement (Second) of Torts ....................................................................................................... 13

**Rules**

Fed. R. Civ. P. 10(c) ........................................................................................................................... 1

REPLY OF PLAINTIFF CLASS IN SUPPORT OF
MOTION   FOR PARTIAL SUMMARY JUDGMENT

NO.  4:15-CV-00313-DMR

## I.    INTRODUCTION

The NG Defendants' opposition fails to show a disputed issue of material fact.  The Court should grant the motion of the Plaintiff Class for partial summary judgment on liability.

## II.    ARGUMENT

### A.    The Plaintiff Class Lacks an Adequate Remedy at Law, as sufficiently alleged in their Fourth Amended Complaint.

Paragraph 68 of Plaintiffs' Fourth Amended Complaint ("4AC") alleges that the Class does not have an adequate remedy at law: "[w]ithout a class action, the Plaintiffs and the members of the Class will continue to suffer damages and Defendants' violations of law will proceed without remedy." 4AC, ¶ 68(5); *see also id.* at ¶¶ 112, 164, 171.[1] Separately, the Class sufficiently demonstrates here and in their opposition to the NG Defendants' Motion for Judgment on the Pleadings (Dkt. 496) why it lacks an adequate remedy at law. *French v. Banana Republic, LLC*, 2024 WL 4682312 (N.D. Cal. Nov. 4, 2024) (holding that a plaintiff does not need to allege that they lack an adequate remedy at law in their complaint so long as they articulate a plausible explanation in this regard in their response to a motion to dismiss).

The NG Defendants ("NG") have known of the Plaintiff Class's UCL claims **for more than a decade**. In none of their five motions to dismiss did they assert that Plaintiffs' UCL claims should be dismissed because Plaintiffs had an adequate remedy at law. *See* Dkts. 16, 40, 75, 95, 165. Nor did they do so when opposing Class Certification.  *See* Dkt. 444.  Instead, they argued that *no legal remedy* was available for breach of implied covenant: "A plaintiff cannot prove fraudulent intent by pointing to conduct that falls outside of the contract," and "[t]here is no basis to allege the violation of the cross-offer statute as an implied term because the alleged violation would have to be before the contract was formed, not after," and that "[t]his is fatal to the claim." Defs.' MTD 4AC, Dkt. 165, 22:5-20.

---

[1] Defendants concede that "Plaintiffs contend they alleged their legal remedy is inadequate in ¶¶ 68(5) . . . of their 4AC," but claim this should be disregarded because "it says nothing about the adequacy of a legal remedy" and should thus be ignored. Dkt. 497, Opp. to MSJ, 7:16-20. Defendants' argument should be disregarded as incorporation by reference is permissible in pleadings. *See, e.g.,* Fed. R. Civ. P. 10(c).  Note also that the NG Defendants similarly incorporate their prior responses throughout their Answer. Dkt. 184, Defs.' Answer, ¶¶ 104, 111, 164, 171.

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                   NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

Directly contradicting their previous argument, NG now claims that the Class has an adequate legal remedy for breach of implied covenant. Defs.' Opp., Dkt. 497, at 5:19-20. This argument fails because the Class has sufficiently alleged and articulated that it has no adequate remedy at law. Indeed, the Court declined to certify the claim of breach of implied covenant. Thus, the Class cannot recover *any* damages for the breach of implied covenant claim. Even were this claim certified, it does not provide an *adequate* remedy at law because it is less certain than the UCL claims.

NG relies on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) and *Guzman v. Polaris Industries, Inc.*, 49 F.4th 1308 (9th Cir. 2022) for their assertion that the Class has an adequate remedy at law. Neither is on point. In *Sonner*, a class was certified for damages under the CLRA and for restitution under the UCL. *Id.* at 837-38. After surviving summary judgment on both claims, plaintiff dismissed the class's CLRA claim on the eve of trial to avoid a jury trial. *Id.* at 838. The plaintiffs could not establish lack of an adequate remedy at law under those circumstances. *Id.* The court denied leave to reassert the intentionally dropped CLRA claim because doing so would be unfair and prejudicial to the defendant and would constitute an "abuse of the court system." *Id.*

In *Guzman*, the Ninth Circuit considered whether plaintiff had an adequate remedy of law in his time-barred, CLRA claim that would preclude his equitable UCL claim in federal court. 49 F.4th at 1311-12. The court held that plaintiff had an adequate remedy at law via his CLRA claim for damages, "even though he could no longer pursue it" and that as a result, the district court was required to dismiss his UCL claim for lack of equitable jurisdiction. *Id.* at 1312-13. The stated, "[plaintiff] cannot have neglected his opportunity to pursue his CLRA damages claim, which was an adequate remedy at law, and then be rewarded for that neglect with the opportunity to pursue his equitable UCL claim in federal court." *Id.* at 1312.

Unlike *Sonner* and *Guzman,* ours is not a case where gamesmanship or lack of diligence resulted in the loss of a legal remedy. The Class diligently litigated all of their claims for a decade. This Court ultimately certified only the equitable UCL claims, recognizing that the elements of these claims were easier to establish on a class basis than an implied covenant claim. Defendants

2

REPLY OF PLAINTIFF CLASS IN SUPPORT OF MOTION   FOR PARTIAL SUMMARY JUDGMENT

NO.  4:15-CV-00313-DMR

now claim that the implied covenant claim provides an adequate legal remedy despite having argued to this Court that no legal remedy or relief is available under this claim. Defendants cite no authority that a legal claim that a court has declined to certify remains an adequate legal remedy for a class which has been certified solely for equitable claims.

NG also suggests that a legal remedy must be adequate when a similar amount is sought under the UCL. But to be "adequate," a legal remedy must be "as practical and efficient to the ends of justice, and its prompt administration as the remedy in equity." *Nese v. Scenario Cokram USA, Inc.*, 2021 WL 4497893, at *3 (C.D. Cal. July 20, 2021) (quoting *Watson v. Sutherland*, 72 U.S. 74, 78 (1866)); *see also Am. Life. Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937) ("A remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient.").

In recent cases, plaintiffs have repeatedly prevailed in "adequate remedy at law" challenges where, as here, they lack a legal remedy that is as "equally prompt and certain" as their equitable claims, including when the elements of their legal claims require proof beyond that which must be shown to establish liability under the UCL. *See Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023); *Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024); *Crowder v. The Shade Store, LLC*, 2025 WL 754067, at * 2 (N.D. Cal. Mar. 10, 2025); *Brown v. Natures Path Foods, Inc.*, 2022 WL 717816, at *6 n.5 (N.D. Cal. Mar. 10, 2022); *Elgindy v. AGA Serv. Co.*, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021); *Lin v. JPMorgan Chase Bank, N.A.*, 2024 WL 5182199, at *9 (C.D. Cal. Aug. 15, 2024); *Chebul v. Tuft & Needle, LLC*, 2024 WL 5257021, at *4 (C.D. Cal. Oct. 9, 2024); *Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021); *Martin v. Ford Motor Co.*, 2022 WL 2062470, at *5 (C.D. Cal. Feb. 17, 2022); *Ostrovskaya v. St. John Knits, Inc.*, 2022 WL 2102895 (C.D. Cal. Mar. 31, 2022). Indeed, *Sonner* "did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories." *Elgindy*, 2021 WL 1176535, at *15; *Lin,* 2024 WL 5182199, at *9; *Brown,* 2022 WL 717816, at *6 n.5.

NG's argument that *Murphy* and *Valiente* are not on point since they involved the pleading stage ignores that the same principles have been applied at later stages of the proceedings,

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                    NO. 4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

including at summary judgment. *See M.O. Dion & Sons, Inc. v. VP Racing Fuels, Inc.*, 2022 WL 18281526 (C.D. Cal. Nov. 2, 2022). In *M.O. Dion & Sons*, the defendants moved for summary judgment on UCL claims asserting that an adequate legal remedy existed under plaintiffs' fraud claim because the remedies were the same. *Id*. at *8. The court denied summary judgment because, as here, the legal claim of fraud required proof of conduct beyond that which must be shown to establish liability under the UCL. *Id.* "Plaintiffs have shown that they lack a remedy at law that is 'equally prompt and certain' as their equitable claims." *Id*.

In addition to the implied covenant not being available for the Class, and requiring proof of conduct – reliance – which is beyond that required for the UCL claims, Plaintiffs' 4AC provides additional reasons why monetary damages would be inadequate for complete relief.  Plaintiffs allege that: "[t]o this day, Defendants ***continue to engage*** in unlawful business practices by violating 1861.02 and 1861.025 and section 1861.16." 4AC, ¶ 168 (emphasis added); *see also id.* at ¶¶ 8, 21, 68(b)(11), 80, 114, 116. Section 17203 of the Business and Professions Code authorizes the injunction of any unfair competition.  Cal. Bus. & Prof. Code § 17203.  Although this Court dismissed Plaintiffs' injunctive Claim prior to certification, UCL injunctive relief now remains viable because the certified Class includes current policyholders.

As this Court recognized, the implied covenant claim is rooted in a different legal theory (contract law) than the UCL claims and requires more difficult proof.  Class Cert. Order, Dkt. 480, 40:11–42:1.  In the unlikely event this Court were to find that the Class has not sufficiently pled the lack of an adequate legal remedy and has alternatively failed to sufficiently articulate here, or in their opposition to the Motion for Judgment on the Pleadings (Dkt. 496), why they lack an adequate remedy at law, Plaintiffs respectfully request leave to amend to conform the pleadings to the proof.

**B.      Partial summary judgment should be granted on liability only, because no genuine issues of material fact exist as to liability.**

**1.      In Opposition section B(1), NG raises four possible disputes. The first is non-genuine, and the latter three do not matter.**

NG's first dispute, "whether a lower rate policy was available for the Kings," is not genuine. *See* Opp'n SJ, at 14.  NG does not contest the lower available rate that the Kings were

eligible for under the PEIC policy. *See* Dkt. 493-33, Brown Decl., Ex. A (showing lower available PEIC rate); Dkt. 493-28, Nash Decl., at ¶ 12. They only claim that PEIC was not a member of the same Control Group at the time of their renewal quote. As discussed below, since the end date of PEIC's membership in Defendants' control group is a matter of law determined by the CDI on the date it actually approved PEIC's Exhibit 19 filing, there is no genuine issue of standing or actual injury.

This law shows the next two do not matter: when the summary judgment motion concerns liability only, then disputes about the amount of damages, but not liability, do not matter. *See*, *e.g.*, *TVBI Co., Ltd. v. Hong Thoa Thi Pham*, 2019 WL 1779975, at *4 (N.D. Cal. Apr. 23, 2019).

Similarly, the NG's argument as to "whether other class members suffered injury in fact" is not a genuine issue of fact for the Class members, **none of whom received the lowest available rate**. "Individual questions of whether each class member was actually harmed bears on the question of damages, not liability." *Cf. Medina v. United Airlines, Inc.*, 2022 WL 17095948, at *1 (C.D. Cal. June 13, 2022); *Jiminez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014). While the existence of damages affects summary judgment, the amount does not. *TVBI Co., Ltd.*, 2019 WL 1779975, at *4 (finding summary judgment proper as to liability because existence of damages was established; the amount of damages would be determined at trial).

Finally, NG's fourth possible dispute– "[w]hether PEIC qualified for the super group exemption under § 1861.16(c)(1) as of April 19, 2013," Dkt.. 497, Opp'n to SJ, at 16, is a question of law, not of fact. This exception only applies "if the commissioner determines" that each of the conditions of section 1861.16(c) is met. *See* Cal. Ins. Code § 1861.16(c)(1)(A)-(H).[2] NG's argument about whether PEIC qualified for section 1861.16(c)(1) exemption as of April 19, 2013 is a legally unsupported attempt to dispute the uncontroverted fact of the date of the CDI's Exhibit 19 approval for PEIC—a date that Defendants clearly admit in the record. Dkt. 497, Opp'n to SJ, at 9:8 (conceding that "CDI approval did not occur until July 2014").

**2.       The NG Defendants failed to comply with the Lowest Rate Rule.**

There is not a single defense witness who testifies to a single cross-offer being made

---
[2] All statutory references are to the California Insurance unless otherwise indicated.

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                    NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

throughout the certified class period.  *See* Dkt. 493, Pls. MSJ, 13:13-17:6.

          **a.   There are no factual disputes regarding the availability of a lower rate.**

               **(1)     Brown's rate, based on the NG Defendants' approved rate filings, demonstrates that a lower rate was available for Plaintiffs and the Class.**

NG's discussion of Brown's restitution analysis concerns the amount, not the fact, of restitution.  That PEIC had a lower rate at the time of the Kings' policy renewal, and that PEIC was in Defendants' Control Group until the approval of PEIC's Exhibit 19 (after the Kings' policy renewal) is not in genuine dispute.  The date of approval of PEIC's Exhibit 19 is established in the evidence, and is not disputed.  Dkt. 497, Opp'n to SJ, at 9:8.

Contrived "factual disputes" relating to the availability of a lower rate claimed by Mr. Patel are not supported by the evidence. Fundamentally, Patel is not qualified to put forth his re-rate "evidence," and has not established appropriate foundation or reliability for his opinions.  Nor was he disclosed as an expert.  (See Plaintiffs' Objections to Defendants' Declarations, in Section D below.)  Patel's analysis is inadmissible and irrelevant to the fact of restitution.  His manual re-rate of two cherry-picked policies cannot be determined to be accurate, and his data sources, assumptions, algorithms, rating methodology and actuarial process cannot be determined valid.

Even if Patel's Declaration were considered, it has numerous flaws, making verification of his calculations impossible. First, important rating information is missing, including the VIN, limits/deductibles, affinity group, zip codes, violations and accidents, annual mileage, and gender. Brown Reply Decl., ¶ 4, filed with this brief.  Thus, there is no way to determine the information Patel used or how it differs from the information Defendants provided to Plaintiffs in 2023.  *Id.* Next, Patel's reference to his process as "a manual re-rate" implies he did his re-rate "by hand." Patel, who is not a qualified actuary, does not indicate whether, or how, he used Defendants' filed and approved algorithms, and he describes using Defendants' "rating engines," which, during discovery, Defendants repeatedly represented they do not have.  *Id.* at ¶ 5.  Patel does not show any of his work to show what assumptions he applied, *id.* at ¶ 6, and provides little detail about other information he may have used. *Id.* at ¶ 7. Thus, what he exactly used and how that was applied to the selected policies is unknown and unreliable. *Id.* at ¶ 8.  Patel does not show how he

REPLY OF PLAINTIFF CLASS IN SUPPORT OF          NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

derived the INIC premiums referenced, and any assumptions applied (including which symbols were used), making it impossible to check and compare his work on any of his claimed calculations. *Id*. at ¶ 6. The Court should strike Patel's Declaration.

### (2) The evidence demonstrates that Defendants' procedures did not include cross-offering.

Brown's assumption that Defendants never cross-offered is proper because it is based on the uncontroverted evidence. *See* Dkt. 493, Pls. MSJ, at 1:26-2:4, 7:19-8:4, 8:23-9:5, 15:27-16:25.

### (3) Brown's assumptions relating to insured eligibility are reasonable in light of the evidence.

Brown makes no assumptions about affinity groups, using only open eligibility/broad market coverages. Dkt. 493-33, Brown Decl., ¶¶ 5, 16. He uses as a comparator those groups that are open to all or available simply by paying a modest fee. *Id.* Brown accepts the NG Defendants' determinations of who is in what affinity group. *Id.*

There is no genuine issue of material fact that Defendants and their agents violated section 1861.16, that Plaintiffs and the Plaintiff Class did not receive the lowest available rate, and that only the *amount* of class restitution for the certified class members remains for trial. The class certified by this Court includes only those who were not offered the lowest available GD rate: "Policyholders of NG Defendants (NGIC, INIC, IPIC, and MICG) who purchased California GDD private passenger automobile policies, including renewals, and were **not offered the lowest available GD rate** within the control group during the Class Period." Dkt. 480, Cert. Order, 47:6-10 (emphasis added).

### (4) The Court already rejected Defendants' attempts to insert a reliance requirement into the UCL claims.

NG's arguments about minor policy differences rehash the issue of reliance. This Court has already held that "[w]ith respect to the UCL, actual reliance is not a required element for the [unlawful and unfair] claims in this case." Dkt. 480, Cert. Order, 40:15-16. In addition, "Plaintiffs have demonstrated a means of common proof that Defendants had a common policy of unlawfully failing to cross-offer the lowest GDD rates, and that class members purchased policies under those circumstances." *Id.* 41:6-9 (citing *Miller v. Travel Guard Grp., Inc.*, 2023 WL 7106479, at *16 (N.D. Cal. Sept. 15, 2023) (finding that plaintiffs did not need to show that class members would

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                                     NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

have chosen less expensive travel insurance to demonstrate "harm under an unlawful theory"). Because reliance is not an element, arguments about whether a Class Member would have purchased a specific lower premium policy with minor differences are misplaced.

**(5)    Brown's treatment of missing data is actuarially sound.**

"[Brown's] model uses conservative assumptions to address missing, inconsistent, or incomplete data to ensure reliability." Dkt. 493-33, Brown Decl., ¶ 30. Brown excluded unratable policies where key data was missing, *Id*. at ¶ 40, and calculated missing characteristics, where reasonable, from other provided data. *Id*. at ¶ 44.

NG cannot benefit from their missing and inaccurate data.  *See Coleman*, 2023 WL 9110926, at *12 (rejecting  argument that damages model was "unreliable for failing to account for data that Defendants themselves do not adequately track"); *Gutierrez v. Wells Fargo & Co.*, No. 7-cv-5923, 2010 WL 1233810, at *11 (N.D. Cal. Mar. 26, 2010) ("[P]laintiffs cannot be expected to determine, with 100% accuracy, the exact overdraft charge associated with a particular fee reversal when defendant's own data system did not capture and store this information."). Brown calculated the difference between the offered GDD rate and the lowest available GDD rate, which matches Plaintiffs' theory.  Dkt. 480, Cert Order, at 45:22-23.  Defendants' quibbles with Brown's calculations are irrelevant to this motion.

**b.    There are no genuine factual disputes that a lower rate policy was not offered.**

**(1)    The NG Defendants had inadequate and/or non-existent compliance procedures.**

NG claims they included "discount notices in the paperwork issued to new customers and on renewal." They rely on their employee, Patel, who states that Defendants advised insureds to "**contact your agent**" [if you] "**would like your policy reviewed to assure you are receiving the best possible rate**"—a sentence which Patel claims is sufficient, and "an industry standard method of complying with the Lowest Rate Rule."  Dkt. 497, Defs.' Opp, 16:14-27.  This is an improper legal opinion.  In addition, Patel was not a disclosed expert and failed to provide any expert report.  His supposed survey (never submitted in evidence) lacks foundation and is based on his review of **eight insurance companies** out of the hundreds of companies that write auto

8

insurance in California. Further, it is an unscientific/non-random/unrepresentative survey that lacks foundation and improperly attempts to shift the NG Defendants' non-delegable statutory duty to their insureds. *See* CIC Bulletin 2024-14, Dkt. 494-2, Ex. A.

Defendants also argue that they wrote coverage directly via the internet, claiming that this is somehow different from inside sales. In both cases, however, the companies are liable for their agents' and representatives' actionable conduct under *respondeat superior*. In the case of direct company internet sales, as with sales via the inside call center, there is no legal excuse for not collecting from the applicant all of the information to be able to quote the lowest available GD rate from among the Control Group. The NG's arguments are a hollow excuse for their non-compliance.

Defendants next argue that for their independent agency business, "it was the responsibility of those agents to implement necessary policies and procedures sufficient to meet their contractual obligations," and that "Independent agents are independent contractors, not employees of Defendants." Dkt. 497, Defs.' Opp'n., 17:17-21. However, Defendant's independent agents are **directly appointed by the NG Defendants** and must comply with the NG Defendants' (not the agent's) underwriting requirements. It is the NG Defendants' rates and rules that their appointed agents **are required to follow**. Had the NG Defendants issued an underwriting requirement that the lowest available GD rate must be quoted and offered, and provided that quoting capability in their NPS policy system, their agents would have complied with such directives, would have cross-offered, and this litigation would have never taken place.

The NG Defendants should have required that any independent agent seeking appointment **must be appointed for each Defendant company** writing personal lines auto business in California to enable compliant cross-offering. *See* Laucher Declaration, Dkt. 493-30, ¶ 16; Nash Declaration, Dkt. 493-28, ¶ 11. Failure to do so is a knowing and continuous violation of section 1861.16. *See* CIC Bulletin 2024-14, Dkt. 494-2, Ex. A. The NG Defendants are the ones who: (1) determine who they appoint as agents, (2) write the agent's authority, instructions and insurance quoting criteria in their underwriting rules and guidelines, (3) determine what policy system is used to quote policies, (4) determine what underwriting information is collected by their policy

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                    NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

system to be able to quote which Defendant companies, and (5) determine whether or not *their system* has the functionality to quote the lowest available premium as required by section 1861.16(b).  Defendants' excuses ignore the undisputed liability facts in this case.

### (2) The absence of cross-offer compliance training and lowest available rate system capability is an undisputed fact.

Apart from NG's "Unacceptable Behaviors" training for employees, they admit that "the undisputed evidence establishes that Defendants did *not* train their independent agents." Dkt., 497, Defs.' Opp'n, 18:4-5; *see also* Conroy Decl., Defs.' Ex. H, at 7 (training materials provided to employee agents are *never* provided to independent agents). Given the NG Defendants' blanket admissions of:  (1) no training for appointed independent agents, (2) no internal sales cross-offer training for employee agents, (3) no evidence of  underwriting rules or guidelines for cross-offers, (4) failure to cross-appoint every independent agent to every control group company, and (5) having a policy system (used by internal and external agents) that cannot cross-offer regardless of which agent uses the system, there is no genuine issue of fact regarding the NG Defendants' violation of section 1861.16. Dkt. 493-26, 3/23/23 Cononico Rule 30(b)(6) Dep., 37:1-38:16; 66:17-67:6; Defs.' Ex. H, Conroy Decl. ¶ 5; Dkt. 493-2, Wolfram Dep., 107:14–108:1.

### (3) Defendants' misleading discussion of "third-party systems" is a red herring.

It is undisputed that independent agents (like internal agent employees and employee representatives used for internet sales) only quote what Defendants' NPS policy system allows and use the information the system accepts and collects to generate a quote.  Dkt. 493-8, Tayal Dep., 48:12–19, 51:21–23; Dkt. 493-2, Wolfram Dep. 40:14–18, 42:4–44:16, 105:11–106:5, 106:17–107:3; Dkt. 493-9, Patel Dep., 115:3–22. Director of Data Services, Daniel Wolfram, whose department performed common duties for all NG Defendants, confirmed that there is *no record of any cross-offering by any Defendant*. Dkt. 493-2, Wolfram Dep., 107:14-108:1. All NG Defendants had common and shared policy service operations, instead of separate policy service operations as mandated by section 1861.16(c)(1)(H).  *Id*. at 40:14-18, 41:21-44:16; Dkt. 493-9, 1/24/23 Patel Dep., 115:3-122. Whether it was "common practice" for independent agents to use third-party software applications (for non-Defendant companies to quote other products) is

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                    NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

irrelevant.  No one disputes that independent agents can represent other insurance companies as well. The NG Defendants' common and shared Director of Agency Sales discusses these other third-party applications, but significantly does not claim that these "third-party tools that compare product offerings from multiple insurance companies available in the marketplace" were somehow used *to quote the NG Defendants' policies* for cross-offer determination or compliance with the Lowest Rate Rule. *See* Conroy Decl. Defs.' Ex. H, at ¶ 9.  Therefore, there is no genuine issue here.

> **C.   Acting in concert as a single enterprise, the NG Defendants are jointly liable for their agents' violations of their statutory duty to cross-offer to the Plaintiff Class.**

Section 1861.16(b)'s legislative history confirms it was enacted to regulate *insurers*. Dkt. 170-1, Ex. 1 to Request for Judicial Notice, 105 (committee analysis re: Bill 2737). CDI Bulletin 2024-14 confirms this. (Dkt. 494-2, Ex. A) ("the insurer – not the agent or the insured – remains responsible for ensuring the applicant is offered the lowest premium"). Plaintiffs' Motion details the evidence establishing the NG Defendants' joint liability for acting in concert as "one consolidated organization" through the same ownership, management, personnel, operations and systems to prevent their agents from cross-offering, as well as their concerted action in failing to discharge their own inter-related statutory duty. Dkt. 493, 4:15-6:5, 6:24-9:11, 12:20-22:28. The NG Defendants jointly accomplished their scheme by: (1) having no procedure in place to require their agents to offer the lowest GD premium from within their Control Group, (2) not training *any* of their agents in their duty to cross-offer, (3) subjecting their common internal agents to termination if they did cross-offer; (4) utilizing agency sales processes that made it impossible for agents to cross-offer, and (5) knowingly implementing a shared policy administration system that was not set up to permit them or *any* of their agents to cross-offer. *Id*.  Defendants have failed to rebut these material facts.

As this Court recognized in its Order on Renewed Motion for Class Certification: "Defendants do not dispute that if the Kings' NGIC agent was acting on behalf of all four NG Defendants jointly, then under principles of common law agency, NG Defendants are jointly responsible for the agents violation of section 1861.16(b)." Dkt. 480, Cert. Order, 26:21-25.  The

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                    NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

same is true with respect to the entire Class. *All* NG Defendants acted jointly as "one consolidated organization" to circumvent the statutory duties imposed on them and their agents under section 1861.16(b). In short, all of the NG Defendants (not merely NGIC) are liable to the Class through agency principles for their concerted violations.

The NG Defendants are also jointly liable under the single enterprise doctrine. It has two elements: (1) such unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another *or* the two companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of one corporation alone. *Wallis v. Centennial Ins. Co.*, 2013 WL 3803971, at *5 (E.D. Cal. July 19, 2013) (recognizing that courts apply this doctrine when the corporate form is used to, among other things, "circumvent a statute"). Both conditions are satisfied here. The single enterprise doctrine is applied to reflect partnership-type liability where, as here, corporations integrate their resources and operations to achieve a common business purpose. *Toho-Towa Co., Ltd. v. Morgan Creek Prod., Inc.*, 217 Cal. App. 4th 1096, 1108 (2013). When addressing whether the requisite "unity of interest" element exists, courts have held:

> Because it is founded on equitable principles, application of the alter ego "'is not made to depend upon prior decisions involving factual situations which appear to be similar. . . . It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case.'"

*Id.* (citations omitted). Similarly, the court in *Las Palmas Assoc. v. Las Palmas Center Assoc.*, 235 Cal. App. 3d 1220, 1248-49 (1991) recognized that it would be unjust to permit those who control companies to operate them as a single enterprise and then assert their separateness to commit misdeeds with impunity. That is what the NG Defendants have done here.

NG's President conceded that the NG Defendants were run as "one consolidated organization." Dkt. 493-3, Pentis Dep., 23:11-25:22, 93:21-95:3, 100:1-22. It is undisputed that they had identical and/or shared management, sales, product, marketing, data management and policy service personnel, operations, functions and systems, and acted in concert as a single enterprise to circumvent the statutory duties owed under section 1861.16(b). The "inequitable result" element is also met. Defendants have acknowledged that "[w]rongful or inequitable conduct includes when the corporate form is used to "*circumvent a statute*, or accomplish some

12

other wrongful or inequitable purpose." Dkt. 444, Opp'n to Class Cert, at 11:9-10.

This Court should hold that the NG Defendants are a single enterprise for the *limited* purpose of their concerted scheme to circumvent their statutory duties under 1861.16(b). *McLaughlin v. L. Bloom Sons Co., Inc.,* 206 Cal. App. 2d 848, 851-53 (1962). Treating them as separate entities would defeat the purpose of section 1861.16 and Proposition 103, particularly because none of them had a super group exemption during the certified class period.

The NG Defendants are also jointly liable under the concerted action principles set forth in the Restatement (Second) of Torts, section 876. Aiding and abetting does not require that the aider and abettor owe a duty so long as it knows that the wrongdoer's conduct constitutes a breach of duty and it substantially assists that breach. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003). In any case, the Defendants here did have a duty under section 1861.18(b), as confirmed in the statute's language, legislative history and CDI interpretation. Civil conspiracy, like aiding and abetting, is a means of assigning liability for a tortious injury to those who act in support of a wrong, even though they do not directly commit the tortious act. *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*, 2024 WL 2261926, at *16 (N.D. Cal. May 16, 2024). The requisite concurrence and knowledge may be inferred from the nature of the acts done, the parties' relations to each other, and their common interests.

Here, the direct evidence establishes that each of the NG Defendants not only had statutory duties, but that each of them operated through the same ownership, management, personnel and systems and substantially assisted one another in executing their scheme. Therefore, each of them is liable for their agents' failure to cross-offer to Plaintiffs and the Plaintiff Class.

**D.      Defendants' Declarations Contain Objectionable Testimony.**

**1.      Declaration of Paul Braithwaite, Dkt. 493-4 (Defs.' Ex. C)**

Defendants re-submit their actuary's January 2025 Declaration that includes objectionable and stricken opinions. In its Class Certification Order, the Court found Braithwaite was not "qualified to offer testimony to support Defendants' legal arguments about the Class definition or about consumer choice," excluding his testimony and opinions on those subjects. Dkt. 480, 15:28-16:8 (striking applicable paragraphs including 100, 101, 113, 114, and 117).

REPLY OF PLAINTIFF CLASS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT      NO. 4:15-CV-00313-DMR

**2.    New Declaration of Rakesh Patel, Dkt. 497-4 (Defs.' Ex. D).**

Patel's new Declaration contains improper legal opinions and unfounded conclusions. Dkt. 493-4, ¶¶ 10, 77, 84-93.  Paragraphs 10 and 84-93 improperly assert corporate legal facts about PEIC and Sequoia by a witness who was not designated or knowledgeable about these companies, contrary to the misleading claim in paragraph 4 of his Declaration.  Defendants objected to any PEIC testimony from this witness during his deposition.  Ex. 1, Patel 3-22-23 Dep., at 17:6-8; 25:20-23; 200:16–201:1).   Patel's Declaration also improperly includes, without foundation, non-expert opinions regarding a claimed "industry standard of compliance with the Lowest Rate Rule," Dkt. 497-4, ¶ 80, unfounded testimony about consumer choice, *Id*. at ¶ 75, and unqualified actuarial expert opinion regarding rate calculations for two cherry picked policies--out of the hundreds of thousands in the certified class--without producing any evidentiary workpapers for these unfounded determinations. *Id.* at ¶¶ 44-50.

**3.    New Declaration of Torry Conroy, Dkt. 497-9 (Defs.' Ex. H).**

Conroy is the NG Defendants' Director of Agency Sales.  His new Declaration includes improper legal conclusions and opinions about the "responsibility" of independent agents "to abide by all applicable insurance code statutes and regulations." Dkt. 497-9, at ¶ 8.

**4.    Declaration of Amber Cononico, Dkt. 497-10 (Defs.' Ex. I).**

Cononico is the NG Defendants' Director of Training and Operations for Internal Sales and is not qualified as an actuarial or rating expert.  In her Declaration, she submits foundationless non-expert testimony regarding highly speculative attempts to re-rate, and speculative assumptions regarding missing or incomplete information necessary to re-rate insureds. Dkt. 497-10, at ¶¶ 12-13.

**5.    Declaration of Kenny Yeh, Dkt. 497-11 (Defs.' Ex. J).**

Yeh is a former Product Manager for Defendants' predecessor (GMAC) and did not claim to have knowledge regarding, nor was he designated to testify regarding, PEIC.  In Yeh's deposition, counsel repeatedly objected to questions having *anything at all to do with PEIC*.  Ex. 2, Yeh Dep., 31:7-22; 34:21-35:22).   Yet the Yeh Declaration is replete with unfounded legal conclusions about PEIC that are allegedly in documents not in evidence.  In addition, Yeh's

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

Declaration contains improper legal opinions and conclusions. Dkt. 497-11, ¶¶ 6-26. This also includes Yeh's misleadingly edited summary and legal interpretation of the CDI Letter Ruling. Finally, Yeh offers unfounded speculation about consumer needs, goals, considerations and choices. *Id.* at ¶¶ 27-28). The Court previously struck similar testimony. Dkt. 480, Cert. Order, 15:28–16:8.

**6.    Declaration of Honorable Benjamin Nelson, Dkt. 497-12 (Defs.' Ex. K).**

Nelson's addresses how NAIC makes assignments of company Group Codes, which are irrelevant to California's "common ownership or control" statutory language and the CDI's long-standing and consistently applied interpretation, standard and practice. With no California or CDI qualification or experience, Nelson improperly opines about the legal interpretation of Section 1861.16. Dkt. 497-12, at ¶¶ 10-16. These are improper legal opinions which lack a foundation.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Partial Summary Judgment on liability.

Dated: June 27, 2025

By:    */s/ Michael F. Ram*

Michael F. Ram, SBN 104805
mram@forthepeople.com
Marie N. Appel, SBN 187483
mappel@forthepeople.com
Colin G. Losey, SBN 352223
colin.losey@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 846-3862
Facsimile: (415) 358-6923

Jeffrey B. Cereghino, SBN 99480
jbc@cereghinolaw.com
CEREGHINO LAW GROUP LLP
739 Bryant Street
San Francisco, CA 94107
Telephone: (415) 433-4949

W. Craig Bashein, Admitted Pro Hac Vice
John P. Hurst, Of Counsel,
Admitted Pro Hac Vice

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT

BASHEIN & BASHEIN CO., L.P.A.
Terminal Tower
35th Floor, 50 Public Square
Cleveland, Ohio 44113
Telephone: (216) 771-3239

*Attorneys for Plaintiffs and the Class*

REPLY OF PLAINTIFF CLASS IN SUPPORT OF                    NO.  4:15-CV-00313-DMR
MOTION   FOR PARTIAL SUMMARY JUDGMENT