UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDD KING, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>NATIONAL GENERAL INSURANCE COMPANY, et al.,<br><br>        Defendants. | Case No. 15-cv-00313-DMR<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 486 |

On May 5, 2025, the court certified a class brought by Plaintiffs Diedre King and Edd King against Defendants National General Insurance Company ("NGIC"), Integon National Insurance Company ("INIC"), Integon Preferred Insurance Company ("IPIC"), and MIC General Insurance Corporation ("MICG") alleging violations of section 1861.16(b) of the California Insurance Code.  [Docket No. 480 (Class Cert. Order).]

On May 12, 2025, Defendants filed a timely motion for leave to file a motion for reconsideration of the class certification order.  [Docket No. 486 (Mot.).]  The court granted leave on the issue of Article III standing and predominance,[1] and deemed Defendants' submission to be their motion for reconsideration.  [Docket No. 487.]  Plaintiffs filed a response on May 21, 2025. [Docket No. 488 (Response).]

This matter is suitable for determination without oral argument.  Civ. L.R. 7-1(b).  For the following reasons, Defendants' motion for reconsideration is DENIED.

**I.  LEGAL STANDARD**

Civil Local Rule 7-9 governs motions for leave to file a motion for reconsideration.  That

---

[1] The court denied leave to file a motion to reconsider the class definition certified by the court.

1  rule provides that "[b]efore the entry of a judgment adjudicating all of the claims and the rights
2  and liabilities of all the parties in a case, any party may make a motion before a Judge requesting
3  that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order
4  on any ground set forth in Civil L.R. 7-9 (b)." A party seeking leave to file a motion for
5  reconsideration must "show reasonable diligence in bringing the motion" and one of the following
6  three grounds: (1) a material difference in fact or law exists from that which was presented to the
7  court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not
8  know at the time of the order for which reconsideration is sought; (2) the emergence of new
9  material facts or a change of law; or (3) a manifest failure by the court to consider material facts or
10 dispositive legal arguments presented before such order. Civ. L.R. 7-9(b)(1)-(3). The moving
11 party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-
12 9(c). Whether to grant or deny a motion for reconsideration is in the sound discretion of the
13 district courts. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003).

**II.   DISCUSSION**

   **A.   Manifest Failure**

16 Defendants move for reconsideration based on a "manifest failure" to consider Defendants'
17 dispositive legal arguments concerning Article III standing and predominance. Mot. 2.
18 Plaintiffs bring a claim under the "unlawful" prong of California's Unfair Competition
19 Law ("UCL"), alleging that the class was harmed because Defendants failed to discharge their
20 statutory duty to cross-offer the lowest rate Good Driver Discount insurance policy to the class,
21 and therefore the class paid more for their policies than they should have. Defendants argued in
22 their opposition to class certification that there are many factors other than price that customers
23 look at when choosing their insurance policy, so it requires an individualized inquiry to determine
24 if each class member actually would have accepted the lower-rate policy if offered. Therefore, it
25 is an individual issue whether Defendants' alleged statutory violation caused each class member
26 harm. Defendants argued that because Plaintiffs provided no means of common proof to
27 determine causation and harm, Plaintiffs failed to meet the requirement of Federal Rule of Civil
28 Procedure 23(b)(3) that common questions of law or fact predominate.

2

1    In the order granting class certification, the court held that Plaintiffs met the Rule 23(b)(3)
2    predominance requirement with respect to the UCL.  The court found that because reliance is not
3    an element of Plaintiffs' UCL claim, Plaintiffs do not have to prove that each class member
4    actually would have accepted the lower-rate policy in order to prove harm under the UCL.  Class
5    Cert. Order 40-41.  The court cited *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12
6    (2012), *as modified on denial of reh'g* (Apr. 16, 2012), and held that causation and harm under the
7    UCL could be demonstrated by the fact that class members purchased insurance policies that were
8    unlawfully sold (i.e., that failed to cross-offer the lowest rate).  Class Cert. Order 40-41.

9    Defendants now assert that the court failed to consider their dispositive legal argument that
10   individual issues predominate as to Article III standing.  Specifically, in their opposition to class
11   certification, Defendants stated: "Relevant to the predominance inquiry is whether ALL class
12   members have Article III standing to recover individual damages."  [Docket No. 444 (Class Cert.
13   Opp'n) 19.]  Defendants cited *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), which held:
14   "Every class member must have Article III standing in order to recover individual damages.
15   Article III does not give federal courts the power to order relief to any uninjured plaintiff, class
16   action or not."  Class Cert. Opp'n 19 (quotations omitted).  Defendants also cited *Van v. LLR, Inc.*,
17   No. 3:18-CV-00197-JMK, 2023 WL 8434456, at *9 (D. Alaska Dec. 5, 2023), where the district
18   court denied class certification because individualized issues predominated with respect to Article
19   III standing.  Class Cert. Opp'n 20.

20   Because Defendants did raise Article III standing as a predominance issue in their brief and
21   the court did not address Article III standing in the context of predominance, the court granted
22   Defendants leave to bring this motion for reconsideration.

23   The court now turns to the merits of Defendants' argument.

24   **B.    Article III Standing**

25   To have standing to sue in federal court under Article III, a plaintiff must have "(1)
26   suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,
27   and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578
28   U.S. 330, 338 (2016), *as revised* (May 24, 2016).  The Supreme Court has not yet decided whether

3

1  a class may be certified under Rule 23(b)(3) when the class includes both injured and uninjured
2  class members. *See Lab'y Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1608 (2025) (dismissing
3  writ of certiorari on this issue as improvidently granted). In the Ninth Circuit, a class may be
4  certified where the plaintiff has demonstrated a method of proof that is capable of showing harm
5  on a class-wide basis, even if the class potentially includes more than a de minimis number of
6  uninjured class members. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
7  31 F.4th 651, 669, 681 (9th Cir. 2022). As discussed in the order certifying the class, Plaintiffs
8  have demonstrated a method of common proof to show whether Defendants failed to cross-offer
9  the lowest rate, but have not sufficiently addressed whether there is a method of common proof to
10 show whether each class member would have accepted the lowest rate. Class Cert. Order 41-43.[2]

11    Therefore, the question is whether Defendants' alleged failure to cross-offer the lowest rate
12 is itself a concrete harm for purposes of establishing Article III standing. "Article III standing
13 requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341.
14 "'Concrete' is not, however, necessarily synonymous with 'tangible.' . . . Because the doctrine of
15 standing derives from the case-or-controversy requirement, and because that requirement in turn is

---

[2] In their response brief, Plaintiffs attempt to argue that their damages model only considers lower-rate policies that are identical to the class members' purchased policies—in other words, they contend that their damages model ensures a class member would have accepted the lowest rate policy because the only difference between the policies is price. Response 2. In support, Plaintiffs point to their expert report on the damages model from their first motion for class certification [Docket No. 309], not the expert report from their renewed motion for class certification [Docket No. 438], which is the motion the court adjudicated. The court is skeptical that it can consider this evidence because it was not submitted to support the renewed motion. Regardless, that report only discussed "ancillary coverage such as Towing & Labor." [Docket No. 368-4 at ¶ 15.] Defendants have pointed out other differences between policies beyond the ancillary coverage options upon which a class member might base their purchasing decision. Class Cert. Opp'n 25.

Plaintiffs also attempt to argue in their response brief that Defendants' agents did not discuss different policy options when selling policies to class members, so class members did not base their purchasing decision on the different policy benefits. Response 2-3. This argument is irrelevant. It only goes toward whether Defendants failed to cross-offer the lowest rate. The issue here is whether each class member would have accepted the lowest rate if offered.

Lastly, Plaintiffs attempt to relitigate whether Defendants have raised sufficient evidence that the differences in policy benefits could create an individual issue. Response 4-5. The court already ruled on this, Class Cert. Order 42-43, and Plaintiffs did not move for reconsideration of that ruling.

4

grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 340-341.  Here, Defendants' alleged failure to cross-offer the lowest rate has a close relationship with other UCL cases involving unlawful sale tactics or the failure to disclose material information to consumers.  The Ninth Circuit has found that such harms constitute an "injury-in-fact" for purposes of Article III standing.

For example, the Ninth Circuit upheld Article III standing where the plaintiff's injury was that she purchased "goods that a defendant was allegedly not legally allowed to sell in the form being offered." *Franz v. Beiersdorf, Inc.,* 745 F. App'x 47, 49 (9th Cir. 2018) (citing *Medrazo*, 205 Cal. App. 4th at 11-13).  Here, Plaintiffs allege that class members purchased insurance policies that Defendants sold in an unlawful form—that is, without cross-offering a policy within the control group with the lowest rate for that coverage.

As another example, the Ninth Circuit held that class members suffered a concrete harm under Article III when they purchased a product after being exposed to materially misleading information about it.  *See Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 595 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651 (9th Cir. 2022) ("Plaintiffs contend that class members paid more for [the product] than they otherwise would have paid, or bought it when they otherwise would not have done so, because [Defendant] made deceptive claims and failed to disclose the system's limitations.  To the extent that class members were relieved of their money by [Defendant's] deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'").  In UCL cases involving materially misleading omissions, there is a presumption of harm and causation where "a reasonable consumer 'would attach importance to [the information's] existence or nonexistence in determining his choice of action in the transaction in question.'" *Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)).  In such UCL class actions, "[t]here is no requirement that plaintiffs establish proof of reliance as to absent class members . . . so reliance cannot raise individualized issues." *Orshan v. Apple Inc.,* No. 5:14-CV-05659-EJD, 2024 WL 4353034, at *17 (N.D. Cal. Sept. 30, 2024).  Here, a reasonable consumer

would attach importance to the existence of a lower-price insurance policy with similar or identical coverage.  As a result, there is a presumption of harm for each class member who purchased Defendants' policies where Defendants unlawfully failed to make a cross-offer.  By allegedly failing to make the statutorily-mandated cross-offer, Defendants denied class members the option of purchasing a lower-priced policy, whether or not they would have chosen that policy over the one they ultimately selected.

For purposes of Article III standing, it is sufficient for Plaintiffs to demonstrate a method of common proof that class members purchased a policy from Defendants, and that Defendants unlawfully failed to disclose lower-price policy options to class members.  Plaintiffs have done so here.

## III.   CONCLUSION

The court has considered Defendants' argument regarding Article III standing and predominance and finds that it does not change the outcome of the order granting class certification.  The court denies Defendants' motion for reconsideration.

**IT IS SO ORDERED.**

Dated: July 3, 2025

Donna M. Ryu
Chief Magistrate Judge