United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDD KING, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NATIONAL GENERAL INSURANCE COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-00313-DMR<br><br>**AMENDED ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 486 |

On May 5, 2025, the court certified a class brought by Plaintiffs Diedre King and Edd King against Defendants National General Insurance Company ("NGIC"), Integon National Insurance Company ("INIC"), Integon Preferred Insurance Company ("IPIC"), and MIC General Insurance Corporation ("MICG") alleging violations of section 1861.16(b) of the California Insurance Code. [Docket No. 480 (Class Cert. Order).]

On May 12, 2025, Defendants filed a timely motion for leave to file a motion for reconsideration of the class certification order. [Docket No. 486 (Mot.).] The court granted leave on the issue of Article III standing and predominance,[1] and deemed Defendants' submission to be their motion for reconsideration. [Docket No. 487.] Plaintiffs filed a response on May 21, 2025. [Docket No. 488 (Response).]

This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, Defendants' motion for reconsideration is DENIED.[2]

---

[1] The court denied leave to file a motion to reconsider the class definition certified by the court.

[2] This order amends Docket No. 503, page 2, line 18 to clarify that Plaintiffs' claim is brought under both the "unlawful" and "unfair" prongs of the UCL.

## I.  LEGAL STANDARD

Civil Local Rule 7-9 governs motions for leave to file a motion for reconsideration. That rule provides that "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order on any ground set forth in Civil L.R. 7-9 (b)." A party seeking leave to file a motion for reconsideration must "show reasonable diligence in bringing the motion" and one of the following three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments presented before such order. Civ. L.R. 7-9(b)(1)-(3). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c). Whether to grant or deny a motion for reconsideration is in the sound discretion of the district courts. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003).

## II.  DISCUSSION

### A.  Manifest Failure

Defendants move for reconsideration based on a "manifest failure" to consider Defendants' dispositive legal arguments concerning Article III standing and predominance. Mot. 2.

Plaintiffs bring a claim under the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL"), alleging that the class was harmed because Defendants failed to discharge their statutory duty to cross-offer the lowest rate Good Driver Discount insurance policy to the class, and therefore the class paid more for their policies than they should have. Defendants argued in their opposition to class certification that there are many factors other than price that customers look at when choosing their insurance policy, so it requires an individualized inquiry to determine if each class member actually would have accepted the lower-rate policy if offered. Therefore, it is an individual issue whether Defendants' alleged statutory violation caused each class member harm. Defendants argued that because Plaintiffs provided no means of common

2

1  proof to determine causation and harm, Plaintiffs failed to meet the requirement of Federal Rule of
2  Civil Procedure 23(b)(3) that common questions of law or fact predominate.

3  In the order granting class certification, the court held that Plaintiffs met the Rule 23(b)(3)
4  predominance requirement with respect to the UCL.  The court found that because reliance is not
5  an element of Plaintiffs' UCL claim, Plaintiffs do not have to prove that each class member
6  actually would have accepted the lower-rate policy in order to prove harm under the UCL.  Class
7  Cert. Order 40-41.  The court cited *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12
8  (2012), *as modified on denial of reh'g* (Apr. 16, 2012), and held that causation and harm under the
9  UCL could be demonstrated by the fact that class members purchased insurance policies that were
10 unlawfully sold (i.e., that failed to cross-offer the lowest rate).  Class Cert. Order 40-41.

11 Defendants now assert that the court failed to consider their dispositive legal argument that
12 individual issues predominate as to Article III standing.  Specifically, in their opposition to class
13 certification, Defendants stated: "Relevant to the predominance inquiry is whether ALL class
14 members have Article III standing to recover individual damages."  [Docket No. 444 (Class Cert.
15 Opp'n) 19.]  Defendants cited *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), which held:
16 "Every class member must have Article III standing in order to recover individual damages.
17 Article III does not give federal courts the power to order relief to any uninjured plaintiff, class
18 action or not."  Class Cert. Opp'n 19 (quotations omitted).  Defendants also cited *Van v. LLR, Inc.*,
19 No. 3:18-CV-00197-JMK, 2023 WL 8434456, at *9 (D. Alaska Dec. 5, 2023), where the district
20 court denied class certification because individualized issues predominated with respect to Article
21 III standing.  Class Cert. Opp'n 20.

22 Because Defendants did raise Article III standing as a predominance issue in their brief and
23 the court did not address Article III standing in the context of predominance, the court granted
24 Defendants leave to bring this motion for reconsideration.

25 The court now turns to the merits of Defendants' argument.

26 **B.      Article III Standing**
27 To have standing to sue in federal court under Article III, a plaintiff must have "(1)
28 suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

3

and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). The Supreme Court has not yet decided whether a class may be certified under Rule 23(b)(3) when the class includes both injured and uninjured class members. *See Lab'y Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1608 (2025) (dismissing writ of certiorari on this issue as improvidently granted). In the Ninth Circuit, a class may be certified where the plaintiff has demonstrated a method of proof that is capable of showing harm on a class-wide basis, even if the class potentially includes more than a de minimis number of uninjured class members. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669, 681 (9th Cir. 2022). As discussed in the order certifying the class, Plaintiffs have demonstrated a method of common proof to show whether Defendants failed to cross-offer the lowest rate, but have not sufficiently addressed whether there is a method of common proof to show whether each class member would have accepted the lowest rate. Class Cert. Order 41-43.[3]

Therefore, the question is whether Defendants' alleged failure to cross-offer the lowest rate is itself a concrete harm for purposes of establishing Article III standing. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341.

---

[3] In their response brief, Plaintiffs attempt to argue that their damages model only considers lower-rate policies that are identical to the class members' purchased policies—in other words, they contend that their damages model ensures a class member would have accepted the lowest rate policy because the only difference between the policies is price. Response 2. In support, Plaintiffs point to their expert report on the damages model from their first motion for class certification [Docket No. 309], not the expert report from their renewed motion for class certification [Docket No. 438], which is the motion the court adjudicated. The court is skeptical that it can consider this evidence because it was not submitted to support the renewed motion. Regardless, that report only discussed "ancillary coverage such as Towing & Labor." [Docket No. 368-4 at ¶ 15.] Defendants have pointed out other differences between policies beyond the ancillary coverage options upon which a class member might base their purchasing decision. Class Cert. Opp'n 25.

Plaintiffs also attempt to argue in their response brief that Defendants' agents did not discuss different policy options when selling policies to class members, so class members did not base their purchasing decision on the different policy benefits. Response 2-3. This argument is irrelevant. It only goes toward whether Defendants failed to cross-offer the lowest rate. The issue here is whether each class member would have accepted the lowest rate if offered.

Lastly, Plaintiffs attempt to relitigate whether Defendants have raised sufficient evidence that the differences in policy benefits could create an individual issue. Response 4-5. The court already ruled on this, Class Cert. Order 42-43, and Plaintiffs did not move for reconsideration of that ruling.

4

1  "'Concrete' is not, however, necessarily synonymous with 'tangible.' . . . Because the doctrine of
2  standing derives from the case-or-controversy requirement, and because that requirement in turn is
3  grounded in historical practice, it is instructive to consider whether an alleged intangible harm has
4  a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit
5  in English or American courts." *Id.* at 340-341. Here, Defendants' alleged failure to cross-offer
6  the lowest rate has a close relationship with other UCL cases involving unlawful sale tactics or the
7  failure to disclose material information to consumers. The Ninth Circuit has found that such
8  harms constitute an "injury-in-fact" for purposes of Article III standing.

9  For example, the Ninth Circuit upheld Article III standing where the plaintiff's injury was
10 that she purchased "goods that a defendant was allegedly not legally allowed to sell in the form
11 being offered." *Franz v. Beiersdorf, Inc.,* 745 F. App'x 47, 49 (9th Cir. 2018) (citing *Medrazo*,
12 205 Cal. App. 4th at 11-13). Here, Plaintiffs allege that class members purchased insurance
13 policies that Defendants sold in an unlawful form—that is, without cross-offering a policy within
14 the control group with the lowest rate for that coverage.

15 As another example, the Ninth Circuit held that class members suffered a concrete harm
16 under Article III when they purchased a product after being exposed to materially misleading
17 information about it. *See Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 595 (9th Cir. 2012),
18 *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
19 31 F.4th 651 (9th Cir. 2022) ("Plaintiffs contend that class members paid more for [the product]
20 than they otherwise would have paid, or bought it when they otherwise would not have done so,
21 because [Defendant] made deceptive claims and failed to disclose the system's limitations. To the
22 extent that class members were relieved of their money by [Defendant's] deceptive conduct—as
23 Plaintiffs allege—they have suffered an 'injury in fact.'"). In UCL cases involving materially
24 misleading omissions, there is a presumption of harm and causation where "a reasonable consumer
25 'would attach importance to [the information's] existence or nonexistence in determining his
26 choice of action in the transaction in question.'" *Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1225
27 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)). In such UCL class
28 actions, "[t]here is no requirement that plaintiffs establish proof of reliance as to absent class

5

1  members . . . so reliance cannot raise individualized issues." *Orshan v. Apple Inc.,* No. 5:14-CV-05659-EJD, 2024 WL 4353034, at *17 (N.D. Cal. Sept. 30, 2024). Here, a reasonable consumer would attach importance to the existence of a lower-price insurance policy with similar or identical coverage. As a result, there is a presumption of harm for each class member who purchased Defendants' policies where Defendants unlawfully failed to make a cross-offer. By allegedly failing to make the statutorily-mandated cross-offer, Defendants denied class members the option of purchasing a lower-priced policy, whether or not they would have chosen that policy over the one they ultimately selected.

For purposes of Article III standing, it is sufficient for Plaintiffs to demonstrate a method of common proof that class members purchased a policy from Defendants, and that Defendants unlawfully failed to disclose lower-price policy options to class members. Plaintiffs have done so here.

### III. CONCLUSION

The court has considered Defendants' argument regarding Article III standing and predominance and finds that it does not change the outcome of the order granting class certification. The court denies Defendants' motion for reconsideration.

**IT IS SO ORDERED.**

Dated: July 18, 2025

_____
Donna M. Ryu
Chief Magistrate Judge