UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDD KING, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>NATIONAL GENERAL INSURANCE COMPANY, et al.,<br><br>          Defendants. | Case No. 15-cv-00313-DMR<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 493 |

Plaintiffs Diedre King and Edd King ("Plaintiffs" or "the Kings") bring this class action against Defendants National General Insurance Company ("NGIC"), Integon National Insurance Company ("INIC"), Integon Preferred Insurance Company ("IPIC"), and MIC General Insurance Corporation ("MICG") (collectively "Defendants" or "NG Defendants"), alleging violations of section 1861.16(b) of the California Insurance Code.  Plaintiffs now move for partial summary judgment on liability for their claims under the UCL unlawful and unfair prongs, arguing that the "undisputed evidence confirms the failure of the NG Defendants and their jointly controlled agents and representatives to cross-offer in violation of the statutory duties they owed under California Insurance Code section 1816.16."  [Docket No. 493 (Mot.) 3.]  Defendants oppose.  [Docket No. 497 (Opp'n).]

This matter is suitable for resolution without a hearing.  Civ. L.R. 7-1(b).  For the following reasons, Plaintiffs' motion is denied.

**I.    BACKGROUND**

The court discussed the factual and procedural background of this case extensively in its order on supplemental briefing [Docket No. 422 (Order on Supp. Briefing)] and order certifying the class [Docket No. 480 (Class Cert. Order)].

In brief, California requires insurers that provide private passenger automobile insurance ("PPA" policies) to offer a Good Driver Discount ("GDD") to qualified drivers. *See* Cal. Ins. Code §§ 1861.025 (defining persons qualified to purchase a GDD policy), 1861.02(b)(1) ("Every person who meets the criteria of Section 1861.025 shall be qualified to purchase a Good Driver Discount policy from the insurer of his or her choice."). When multiple insurers have common ownership or operate in California under common management or control, California law requires that "[a]n agent or representative representing one or more" of such insurers "shall offer, and the insurer shall sell, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control group, which offers the lowest rates for that coverage." Cal. Ins. Code § 1861.16(b). Insurers sharing "common ownership, management, or control" are referred to as a "control group." The requirement to offer the policy with the lowest Good Driver rates in a control group is known as the "Lowest Rates Rule." An insurer within a control group is not subject to the Lowest Rates Rule if it meets the eight conditions required for a "Super Group Exemption," as set forth in section 1861(c)(1). *See* Cal. Ins. Code § 1861.16(c)(1).

On May 5, 2025, the court certified a class as to Plaintiffs' UCL claim alleging unfair and unlawful business practices in violation of Cal. Ins. Code section 1861.16(b). The class is defined as:

> Policyholders of NG Defendants (NGIC, INIC, IPIC, and MICG) who purchased California GDD private passenger automobile policies, including renewals, and were not offered the lowest available GDD rate within the control group during the Class Period. The control group is defined as NGIC, INIC, IPIC, and MICG from January 22, 2011 to present; and includes PEIC during the period of April 19, 2013 to July 18, 2014.

Class Cert. Order 47. The court noted, however, that the Kings' individual standing rests entirely on their claim that they were not offered a lower-rate PEIC policy in June 2013. *Id.* at 22. In its order on supplemental briefing, the court held that the Kings would need to prove that PEIC was part of the same control group as the NG Defendants in June 2013 to establish Article III standing. Order on Supp. Briefing 15-16. In analyzing Plaintiffs' motion for class certification, the court accepted Plaintiffs' version of the disputed facts as true, as it is legally required to do. It held that Plaintiffs had submitted enough evidence to create "a sufficient factual basis from which a

2

reasonable juror could decide to accept Plaintiffs' assertion that PEIC and the NG Defendants were in the same control group as of June 2013." *Id.* at 20.

## II. LEGAL STANDARDS

### A. Summary Judgment

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for partial summary judgment goes toward only a part of a claim for defense—for example, "a party may move for summary judgment on the liability issues in a claim, leaving the issue of damages . . . for trial." *Harper v. City of San Jose*, No. C 09-05758 JW, 2011 WL 7109218, at *1 (N.D. Cal. Mar. 7, 2011). A motion for partial summary judgment has the same standard of proof as a motion for full summary judgment. *Id.* at 2.

The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

### B. Article III Standing in a Class Action

"[S]tanding is the threshold issue in any suit." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (quoting *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003)). To satisfy the Article III standing requirement, a plaintiff must show: (1) an "injury in fact" that is concrete and particularized, as well as actual or imminent, and not conjectural or hypothetical; (2) that the injury is fairly

1  traceable to Defendants' challenged conduct; and (3) that it is likely, as opposed to merely
2  speculative, that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504
3  U.S. 555, 560–61 (1992). "[E]ach element [of standing] must be supported in the same way as any
4  other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of
5  evidence required at the successive stages of the litigation." *Id.* at 561.

6  Article III standing applies with equal force to class actions as to individual claims. *Lewis*
7  *v. Casey*, 518 U.S. 343, 357-358 (1996). "[I]f none of the named plaintiffs purporting to represent
8  a class establishes the requisite of a case or controversy with the defendants, none may seek relief
9  on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494
10 (1974). Even if a class has already been certified, the court must decertify the class and dismiss
11 the case if the class representatives are subsequently found to lack standing. *NEI Contracting*, 926
12 F.3d at 532. Unlike the mootness doctrine, which sometimes permits substituting a proper class
13 representative to allow the suit to proceed when the representative's individual claims have been
14 mooted, a class certification order "must be vacated" if the representative had no standing "from
15 the outset of [their] litigation." *Id.* at 532-533 (citing *Lierboe*, 350 F.3d at 1023, 1023 n.6).

## III. DISCUSSION

17  According to Plaintiffs, uncontroverted evidence establishes that Defendants and their
18 jointly controlled agents and representatives violated their statutory duties under section
19 1861.16(b) to offer and sell qualified policyholders the lowest available GDD premium of a
20 company within their control group. Mot. 3. Plaintiffs argue there is no dispute that 1)
21 Defendants had the duty to cross-offer the lowest available GDD rate from within their control
22 group; 2) Defendants were part of the same control group during all relevant times; 3) Defendants
23 acted in concert; 4) Defendants in fact did not cross-offer the lowest available GDD premium; and
24 5) Plaintiffs and class members purchased policies from Defendants without being offered the
25 lowest available GDD premium, so they paid more for their policies than they should have.

26  Defendants raise a host of arguments in opposition. The court need only address one,
27 because it is dispositive of this motion. Defendants argue there is a dispute of fact regarding
28 whether PEIC was part of the control group from April 19, 2013 to April 1, 2014; accordingly,

4

there is a factual dispute as to whether the Kings have Article III standing.

PEIC has been dismissed and is no longer a party. Class Cert. Order 28. Defendants concede that NGIC, INIC, IPIC, and MICG were in the same control group during the relevant time, and that PEIC was part of that control group between April 1, 2014 and May 5, 2014. Order on Supp. Briefing 11; Class Cert. Order 21 n.8. However, Defendants hotly contest whether PEIC was part of the control group when the Kings made their June 2013 policy purchase.[1] As noted by the court in its prior ruling, "[t]he key dispute [regarding PEIC] is whether the April 19, 2013 acquisition of PEIC by AmTrust caused PEIC to join the NG Defendants' control group. If PEIC did not join the control group until April 1, 2014, then the Kings do not have standing with respect to their June 2013 policy purchase." Order on Supp. Briefing 16. This issue has been litigated extensively. There is a dispute of material fact regarding whether PEIC was in the control group at the relevant time. *Id.* at 15-20 (analyzing numerous conflicting facts in the record regarding whether and when PEIC was in the control group). The court took pains to explain that although it was a "close question," Plaintiffs provided "enough evidence to satisfy the standing requirement" at the class certification stage, but ultimately the question of the Kings' standing remains open for the finder of fact to decide. *Id.* at 20.

If the Kings are found to lack Article III standing, they can no longer seek relief on behalf of the class, and the class must be decertified and dismissed. *See NEI Contracting*, 926 F.3d at 532. Defendants cannot be liable if the Kings do not have standing. For this reason, there is a dispute of material fact regarding Defendants' liability.

Plaintiffs completely fail to address this point. Instead, they blatantly mischaracterize the court's class certification order as ruling that "PEIC was a member of the same Defendant Control Group at the time of the Kings' policy renewal." Mot. 10. The court did no such thing.[2] The

---

[1] This is the Kings' sole remaining viable policy purchase. The court previously ruled they do not have standing with regard to their June 2012 policy purchase. Order on Supp. Briefing 21-24.

[2] Defendants point out Plaintiffs' mischaracterization of the court's order in their opposition. Opp'n 8. Plaintiffs' reply brief makes no attempt to respond. [Docket No. 499 (Reply).] Unfortunately, this is not the first time the court has had to call Plaintiffs to task for palpably misrepresenting its rulings. *See, e.g.,* Docket No. 401, Order Granting Sequoia's Motion for

1  court included a reference to PEIC in the class definition, but a class definition is not a finding of
2  fact.  As discussed above, at the class certification stage, Plaintiffs met the relatively low burden
3  of providing a sufficient (albeit disputed) factual basis to move the case forward.  That does not
4  mean they will be able to meet their burden of proof to establish Article III standing at trial.

The factual dispute underlying the Kings' standing precludes partial summary judgment on Defendants' liability.  The parties' remaining arguments are moot.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is denied.

**IT IS SO ORDERED.**

Dated: July 31, 2025

_____
Donna M. Ryu
Chief Magistrate Judge

---

Summary Judgment at 7 ("Plaintiffs rip the quote out of context and thoroughly mischaracterize the court's prior order.").