UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDD KING, et al.,

Plaintiffs,

v.

NATIONAL GENERAL INSURANCE COMPANY, et al.,

Defendants.

Case No. 15-cv-00313-DMR

**ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 492

Plaintiffs Diedre King and Edd King bring this class action against Defendants National General Insurance Company ("NGIC"), Integon National Insurance Company ("INIC"), Integon Preferred Insurance Company ("IPIC"), and MIC General Insurance Corporation ("MICG") for breach of the implied covenant of good faith and fair dealing, and for violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., alleging underlying violations of section 1861.16(b) of the California Insurance Code. [Docket No. 480 (Class Cert. Order).] On May 5, 2025, the court certified a class as to the UCL claim but denied class certification of the breach of the implied covenant claim. *Id.*

Defendants now move for judgment on the pleadings or alternatively summary judgment pursuant to Federal Rules of Civil Procedure 12(c) and 56. [Docket Nos. 492 (Mot.); 498 (Reply).] Plaintiffs oppose. [Docket No. 496 (Opp'n).] The court held a hearing on August 28, 2025. For the following reasons, Defendants' motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

Under California law, insurers who provide private passenger automobile insurance ("PPA" policies) must offer a Good Driver Discount ("GDD") to qualified drivers. *See* Cal. Ins.

Code §§ 1861.025 (defining persons qualified to purchase a GDD policy), 1861.02(b)(1) ("Every person who meets the criteria of Section 1861.025 shall be qualified to purchase a Good Driver Discount policy from the insurer of his or her choice."). The rate charged for a GDD policy must be "at least 20 percent below the rate the insured would otherwise have been charged for the same coverage." *Id.* § 1861.02(b)(2). When multiple insurers have common ownership or operate in California under common management or control, California law requires that "[a]n agent or representative representing one or more" of such insurers "shall offer, and the insurer shall sell, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control group, which offers the lowest rates for that coverage." Cal. Ins. Code § 1861.16(b). Insurers sharing "common ownership, management, or control" are referred to as a "control group."

In 2012, Plaintiffs Diedre King and Edd King qualified as good drivers and jointly purchased a GDD insurance policy from NGIC.[1] On June 2, 2013, they purchased a renewal policy from NGIC for $1,752. NGIC did not offer Plaintiffs any rates lower than their renewal policy. However, Plaintiffs argue that NGIC and PEIC were in the same control group in 2013, and a lower-rate GDD policy was available with PEIC at the time Plaintiffs purchased their renewal policy. Plaintiffs argue that the lower-rate PEIC policy should have been offered to them pursuant to section 1861.16(b) of the California Insurance Code. Plaintiffs submitted declarations stating that had they been offered the lower-rate PEIC policy, they would have purchased it instead of the NGIC policy. Plaintiffs argue that Defendants violated section 1861.16(b) by failing to cross-offer the PEIC policy. Plaintiffs also assert that Defendants systematically failed to cross-offer the lowest GDD rates to Defendants' policyholders in violation of section 1861.16(b). Plaintiffs represent a class of consumers who purchased Defendants' policies from January 22, 2011 to the present and who were not offered the lowest available GDD rate within Defendants' control group.

[1] This factual background is explained in more depth in prior orders. *See, e.g.*, Docket No. 480 (Class Cert. Order); Docket No. 183 (Order on MTD); and Docket No. 506 (Order Denying Recon.).

**B. Procedural History**

Plaintiffs' operative complaint (the fourth amended complaint, "4AC") asserted claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory and injunctive relief; (4) fraud and misrepresentation; and (5) violations of the UCL under the unlawful, unfair, and fraudulent business practices prongs. [Docket No. 163 (4AC).] Defendants moved to dismiss the 4AC under Federal Rule of Civil Procedure 12(b)(6), which the court granted with respect to Plaintiffs' claims for breach of contract, fraud, and the fraudulent business practices prong of the UCL. Order on MTD 28. The court subsequently held that Plaintiffs lacked standing to pursue injunctive relief. [Docket No. 422 (Order on Supp. Briefing).] Plaintiffs filed a motion to certify the class on July 7, 2023, and after further case developments, filed a renewed class certification motion on December 12, 2024. [Docket Nos. 309, 438.] At the time Plaintiffs filed their renewed Rule 23 motion, only two claims remained: (1) a damages claim for breach of the implied covenant of good faith and fair dealing, and (2) a claim for restitution under the unlawful and unfair prongs of the UCL.

The court certified a class for the UCL claim but denied class treatment of the breach of implied covenant claim. Class Cert. Order 40-42. In so holding, the court explained that an essential element of the implied covenant claim is that the plaintiff "suffered damages proximately caused by the defendant's breach." *Id.* at 41-42. In this case, a policyholder might not have suffered an injury caused by Defendants' failure to offer the lowest GDD rate because Defendants identified reasons why the policyholder might be "willing to pay a higher price for benefits that go beyond the basic coverage amounts." *Id.* at 42. Plaintiffs failed to raise "any evidence of a method of common proof to determine proximate causation on a class-wide basis." *Id.* at 43. This individualized issue thus defeated class certification for that claim. *Id.* In contrast, the court held that reliance was not an element of a UCL claim under the unlawful or unfair prongs because policyholders would only need to show that they purchased a product that Defendants used unlawful means to sell. *Id.* at 40-41. The court granted class certification for the UCL claim. *Id.* at 47. Defendants moved for reconsideration of the class certification order, arguing that Article III standing created an individualized issue for the UCL claim. The court denied the motion.

Order Denying Recon. 6.

Plaintiffs' surviving individual claims are for damages for breach of the implied covenant, and for restitution under the UCL unlawful and unfair prongs. The sole claim certified for class treatment is for restitution under the UCL. Defendants now argue that the UCL claim must be dismissed because the court lacks equitable jurisdiction to award restitution due to the existence of an adequate legal remedy.

## II.     LEGAL STANDARDS

### A.     Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). The court must construe all factual allegations "in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

"Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule." *U.S. ex. rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Accordingly, the court "must assess whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Chavez*, 683 F.3d at 1108 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Mere conclusory statements in a complaint and 'formulaic recitations of the elements of a cause of action' are not sufficient." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.     Motion for Summary Judgment

In a Rule 12(c) motion, "if a party presents evidence outside the pleadings and the court does not exclude that evidence, then the motion must be treated as one for summary judgment under Rule 56." *Tseng v. PeopleConnect, Inc.*, 665 F. Supp. 3d 1136, 1142 (N.D. Cal. 2023) (citing *Bain v. United Healthcare Inc.*, No. 15-CV-03305-EMC, 2016 WL 4529495, at *5 (N.D.

United States District Court
Northern District of California

Cal. Aug. 30, 2016)).

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

## III. DISCUSSION

Defendants' sole basis for their motion for judgment—whether under Rule 12(c) on the pleadings, or alternatively under Rule 56[2]—is that the court lacks equitable jurisdiction over Plaintiffs' UCL claim because they have an adequate legal remedy in their claim for breach of the implied covenant of good faith and fair dealing.

### A. Principles of Equitable Jurisdiction

At the time of the drafting of the U.S. Constitution, England had developed two relevant court systems: courts of law and courts of equity. *See Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 872 (N.D. Cal. 2021) (discussing the history of the division between law and equity). The American federal court system partially followed the English model and separated actions into those at law and those in equity. *Id.* Generally, actions at law sought

[2] In their Rule 56 argument, Defendants point to evidence regarding Plaintiffs' damage calculations which shows that Plaintiffs seek the exact same amount of monetary compensation for both of their claims.

money damages while actions in equity sought injunctions or similar relief, although some forms of equitable relief also included monetary compensation (such as restitution). *Id.* In 1938, the Federal Rules of Civil Procedure were adopted, which merged the two types of actions and allowed federal courts to hear both claims for legal remedies and claims for equitable remedies. *Id.* at 873. But the distinction between a legal and an equitable claim remains important. For example, the Seventh Amendment guarantees the right to a jury trial for actions at law, but not equity. *Id.*

The "most important limitation" of equity in modern federal law is that "a court may not act in equity if there is an adequate remedy at law." Andrea Olson, *Resolving Equity's Erie Problem*, 56 Ariz. St. L.J. 289, 303-04 (2024). This traditional principal of federal law sometimes conflicts with state law where the state has moved away from the distinction between law and equity. For example, California's state consumer protection laws reject the "no adequate remedy at law" rule. *Id.* at 292. These California statutes allow equitable remedies, including restitution, even if money damages are also available. *Id.*

In a series of cases over the last five years, the Ninth Circuit has made clear that the federal "no adequate remedy at law" rule still applies for cases brought in federal court, regardless of what California law provides. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("we hold that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action").[3]

*Sonner* is the seminal Ninth Circuit case which addresses the "no adequate remedy at law" rule with respect to a UCL claim for restitution. The plaintiff in *Sonner* brought a class action complaint under the California Legal Remedies Act ("CLRA") and the UCL. On the brink of trial, the plaintiff dropped the CLRA damages claim—the only legal claim—for strategic reasons. *Sonner*, 971 F.3d at 838. Even though the CLRA legal claim was no longer part of the case, the Ninth Circuit held that the court had no jurisdiction over the remaining UCL and CLRA claims for

[3] Plaintiffs' case is brought under CAFA, not diversity jurisdiction. The federal rule applies in either situation.

equitable restitution because the plaintiff failed to establish the lack of an adequate legal remedy. *Id.* at 844. The Ninth Circuit held:

> Initially, the operative complaint does not allege that Sonner lacks an adequate legal remedy. . . . More importantly, Sonner concedes that she seeks the same sum in equitable restitution as "a full refund of the purchase price"—$32,000,000—as she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion.

*Id*. The plaintiff in *Sonner* cited to *American Life Insurance Co. v. Stewart*, 300 U.S. 203, 214 (1937), which held that "[a] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." *Stewart*, 300 U.S. at 214. The plaintiff relied on this language from *Stewart* to argue that the dismissed CLRA damages claim was not an adequate legal remedy. *Sonner*, 971 F.3d at 844 n.8. The Ninth Circuit rejected this argument because the plaintiff "fail[ed] to explain how damages are any less prompt, certain, or efficient than restitution." *Sonner*, 971 F.3d at 844 n.8. *Sonner* focused its analysis on the nature of the equitable and legal remedies and whether they were addressing the same past harm, and not on the plaintiff's ability to successfully pursue the legal claim. *Id.* at 844.

Two years later, the Ninth Circuit built on *Sonner* when it issued *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308 (9th Cir. 2022). The plaintiff in *Guzman* brought a UCL claim after his CLRA damages claim was time-barred. *Guzman*, 49 F.4th at 1311. Even though the plaintiff "could no longer pursue" the time-barred CLRA damages claim, the Ninth Circuit held that the claim remained an adequate remedy at law and therefore, the court had no equitable jurisdiction over the UCL claim. *Id.* at 1312. The court explained that "[f]ailure to comply with a remedy at law does not make it inadequate so as to require the district court to exercise its equitable jurisdiction." *Id.* (quoting *United States v. Elias*, 921 F.2d 870, 874-75 (9th Cir. 1990)). As such, the plaintiff's "failure to have timely pursued his CLRA claim cannot confer equitable jurisdiction on a federal court to entertain his UCL claim." *Id.* The Ninth Circuit ordered that the UCL claim be dismissed without prejudice to refiling the same claim in state court. *Id.* at 1314.

The most recent Ninth Circuit case to address this issue is *Key v. Qualcomm Inc*., 129 F.4th 1129 (9th Cir. 2025). The underlying district court order, *In re Qualcomm Antitrust Litig.*,

United States District Court
Northern District of California

No. 17-MD-02773-JSC, 2023 WL 7393012, at *1 (N.D. Cal. Nov. 7, 2023), was part of a multi-district litigation comprising a series of consolidated consumer lawsuits against Qualcomm. The plaintiffs had two claims: that Qualcomm's exclusive chip supply contracts with device manufacturers violated California's Cartwright Act (a legal claim), and that those same contracts violated the UCL (an equitable restitution claim). *Id.* The Honorable Jacqueline Scott Corley granted summary judgment on the Cartwright Act claim because the plaintiffs failed to "provide evidence of actual antitrust injury via a pass-through from Apple to class members based on the exclusive dealing." *Id.* at 7-8. As for the UCL claim, Judge Corley noted that a "UCL monetary claim might lie when conduct falls outside 'the confines of traditional antitrust law,'" but nevertheless held that the court had no equitable jurisdiction because the plaintiffs failed to show that the Cartwright Act was inadequate to remedy the harm alleged. *Id.* at 8 (quoting *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1057 (N.D. Cal. 2021)). The district court went on to state that, "under *Sonner* and *Guzman v. Polaris Industries*, the failure to pursue, or to successfully pursue, an adequate remedy at law does not make that remedy inadequate. The same principle applies here. Plaintiffs have a Cartwright Act claim—they just failed to prove it. That failure of proof does not make the legal remedy inadequate." *Id.* On appeal, the Ninth Circuit in *Key v. Qualcomm* quoted Judge Corley's holding with approval. *Key*, 129 F.4th at 1142 (affirming the district court's finding that it had no equitable jurisdiction over the UCL unfair claim and remanding with instructions to dismiss the claim without prejudice to refiling in state court).

The court now turns to the task of applying these governing principles to the present case.

**B. Adequate Legal Remedy**

Restitution under the UCL is an equitable remedy. Therefore, "a federal court must apply traditional equitable principles before awarding restitution under the UCL []." *Sonner*, 971 F.3d at 841. Under these principles, Plaintiffs must establish that they lack "an adequate remedy at law" before securing restitution for past harm under the UCL. *See id.* at 844.

Defendants argue that Plaintiffs have an adequate remedy at law: their claim for damages for breach of the implied covenant of good faith and fair dealing. Defendants assert that the implied covenant claim and the UCL claim both seek "the same amount of money for the exact

same harm," and the Ninth Circuit has held that that the court has no equitable jurisdiction under those circumstances. *Sonner*, 971 F.3d at 844.

Plaintiffs respond that their breach of implied covenant claim is not an adequate legal remedy, for two reasons. First, they argue that their implied covenant claim is brought under a different theory than their UCL claim. Second, Plaintiffs argue that even if both claims are brought under the same theory, the implied covenant claim requires an additional element—reliance/causation—which is not required to prove the UCL claim. It is therefore more difficult to prove. According to Plaintiffs, this renders their legal remedy inadequate under the Supreme Court's standard as set forth in *Stewart*, that "[a] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." *Stewart*, 300 U.S. at 214.

**1. Plaintiffs' Implied Covenant and UCL Claims Are Based on the Same Theory**

*Sonner* "did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories." *Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *6 n.5 (N.D. Cal. Mar. 10, 2022). The case *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) illustrates this point. In *Elgindy*, the court noted that the plaintiff's complaint was based on "two distinct theories": 1) that the defendants acted unlawfully and unfairly by bundling an impermissible fee into their insurance policies, embodied in the UCL claim under the unlawful and unfair prongs; and 2) that the defendants acted fraudulently by concealing the existence of the fee from consumers, embodied in the UCL claim under the fraudulent prong, the California False Advertising Law ("FAL") claim, and the common law fraud claim. *Id.* at 4, 15. Therefore, common law fraud (a legal remedy) could not foreclose equitable relief under the UCL unlawful/unfair prongs because they were "rooted in a different theory." *Id.* at 15. In contrast, *Elgindy* held that the UCL fraudulent prong claim, the FAL claim, and the common law fraud claim were all fraud-based, and were "rooted in the same theory and factual allegations," even though they had materially different elements and required different proofs of conduct. *Id.* As such, in order to pursue the FAL and UCL fraudulent prong claim, the plaintiff had to demonstrate

United States District Court
Northern District of California

that the common law fraud claim was inadequate. *Id.*

Here, Plaintiffs argue that their breach of implied covenant claim is rooted in a different theory than their UCL claim. As support, they cite *Elgindy* and *Lin v. JPMorgan Chase Bank, N.A.*, No. 2:24-CV-01837-JLS-E, 2024 WL 5182199 (C.D. Cal. Aug. 15, 2024). In *Lin*, the plaintiff had been defrauded by a non-party. 2024 WL 5182199 at *1. The plaintiff sued her bank, Chase, for allowing the plaintiff's suspicious transfers to go through instead of flagging the potential fraud. *Id.* The plaintiff brought claims under the Financial Elder Abuse Law (a legal remedy), which imposes liability on an entity that knowingly assists the taking of real or personal property of an elder. *Id.* at 2. The plaintiff also sought restitution under the UCL unfair prong, alleging that the harms inherent in Chase's business practice of processing suspicious wire transfers without further inquiry outweigh any potential benefits. *Id.* at 9. *Lin* held that the financial elder abuse claim was under a materially different theory than the UCL unfair claim, so the court had equitable jurisdiction. *Id.*

Though Plaintiffs cite *Elgindy* and *Lin*, they fail to explain how these cases apply to their own. At oral argument, Plaintiffs were given an opportunity to clarify how their breach of implied covenant claim is rooted in a materially different theory than their UCL claim. They were unable to do so, other than stating that the implied covenant claim has different elements than their UCL claim (such as proof of reliance/causation). Plaintiffs' underlying theory is that Defendants violated section 1861.16(b) of the California Insurance Code by failing to cross-offer the lowest GDD rates. Their implied covenant and UCL claims are rooted in this same theory as well as the same facts. As discussed below, both claims seek the identical amount of monetary relief. That the two claims have different elements and proofs of conduct does not root them in different theories. *See Elgindy*, 2021 WL 1176535, at *15; *see also In re Ford Tailgate Litig.*, No. 11-cv-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) ("where the [equitable] claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action") (citation omitted).

Plaintiffs' two claims are not based on different theories. Therefore, Plaintiffs must demonstrate that breach of the implied covenant is not an adequate legal remedy for the alleged

harm.

**2. Plaintiffs Have an Adequate Legal Remedy**

Plaintiffs contend that their breach of implied covenant claim is not an adequate legal remedy because it includes an additional element (reliance/causation) which makes the claim harder to prove than their UCL claim. Plaintiffs hinge much of this argument on the language from the Supreme Court that "[a] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." *Stewart*, 300 U.S. at 214. They assert that a legal claim that includes different elements and is harder to prove is not "equally prompt and certain" under *Stewart*.

The circumstances in *Stewart* were vastly different from Plaintiffs' case. In *Stewart*, the plaintiff American Life Insurance Company ("Am Life") brought an equitable claim to rescind a contract. Stewart, the defendant, argued that a legal remedy (fraud) could have also made Am Life whole. However, this legal remedy (fraud) was only a defense, meaning that it was only available to Am Life if Stewart first brought a claim to enforce the contract. On top of that, the contract contained a provision that barred any challenges to enforcement after two years. In other words, to raise the legal claim, Am Life would have to wait for Stewart to bring an enforcement claim before Am Life could assert a fraud defense; if Stewart took more than two years to bring that claim, Am Life would be barred from raising the fraud legal remedy at all. The Supreme Court held that fraud was not an adequate legal remedy because Am Life was at the mercy of the opposing party to be able to obtain that relief:

> A remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient. "It must be a remedy which may be resorted to without impediment created otherwise than by the act of the party." Here the insurer had no remedy at law at all except at the pleasure of an adversary.

*Stewart*, 300 U.S. at 214-215 (quoting *Cable v. U.S. Life Ins. Co.*, 191 U.S. 288, 303 (1903)). In this case, Plaintiffs have been able to raise a legal claim for breach of the implied covenant without such impediment. Plaintiffs do not cite, and the court was unable to locate, any Supreme Court or appellate-level case which held that differences in proof may render a legal remedy inadequate.

The case most analogous to Plaintiffs' situation is *Qualcomm*, which runs directly counter to Plaintiffs' argument. In the district court case, Judge Corley noted the possibility that a plaintiff may prevail on a UCL claim even when the plaintiff cannot prove a legal claim under "the confines of traditional antitrust law." *In re Qualcomm Antitrust Litig.*, 2023 WL 7393012, at *8. Nevertheless, the court dismissed the UCL claim because the plaintiffs had raised a Cartwright Act claim. *Id.* Even though the plaintiffs failed to meet their burden of proof on the elements of a Cartwright Act claim at summary judgment, "the failure to pursue, or to successfully pursue, an adequate remedy at law does not make that remedy inadequate." *Id.* The Ninth Circuit affirmed Judge Corley's holding that the failure to prove a legal claim "does not make that remedy inadequate." *Key*, 129 F.4th at 1142.[4]

Here, Plaintiffs' breach of implied covenant claim and UCL claim have different elements of proof. This generated a split outcome at the Rule 23 stage. In its order on class certification, the court held that Plaintiffs satisfied the predominance standard to certify a class for their UCL claim, but could not do so for their breach of implied covenant claim because Plaintiffs did not identify evidence of a method of common proof for that claim. Class Cert. Order 40-44. Plaintiffs' failure to meet their burden of proof to certify a class for the legal claim does not make the legal remedy inadequate. "[F]ailure of proof does not make the legal remedy inadequate." *In re Qualcomm Antitrust Litig.*, 2023 WL 7393012, at *8. The court finds that the breach of implied covenant claim is an adequate legal remedy, and the court does not have equitable jurisdiction over Plaintiffs' UCL claim.

Cases following *Qualcomm* and *Key* support the court's finding. In *Phillips v. Brooklyn Bedding LLC*, No. 23-CV-03781-RFL, 2024 WL 2830663, at *2 (N.D. Cal. Mar. 28, 2024), the plaintiff argued he had "no adequate remedy at law because his legal claims have different elements that are harder to prove and require additional showings of proof" compared to his equitable restitution claims. The court rejected this argument, quoting *Qualcomm*. *Phillips*, 2024

[4] Tellingly, Plaintiffs completely ignore *Key* in their opposition brief. When asked about this omission at oral argument, they did not give a good reason for failing to discuss recent governing Ninth Circuit precedent.

WL 2830663, at *2. *Phillips* held that differences in proof between the claims do not make a legal remedy inadequate, and it dismissed the plaintiff's restitution claims for lack of equitable jurisdiction. *Id.* Likewise, in *Gradney v. Polar Beverages*, No. 25-CV-02149-EMC, 2025 WL 2105831, at *9 (N.D. Cal. July 28, 2025), the court cited *Key* and rejected an argument that a UCL claim could be brought because its requirements were "technically less rigorous" than the requirements for a legal claim.

Plaintiffs rely on a handful of district court cases in this circuit to support their argument, but the court finds them unpersuasive. Many of them are older and do not appear to reflect the current state of this rapidly developing area of Ninth Circuit law. Most of them are also distinguishable because they are early in the procedural posture of the case, when it may be too soon to determine if a legal remedy is adequate. A number of courts hold that *Sonner* has limited applicability to the pleading stage; those courts allow equitable claims to proceed under a "pleading in the alternative" theory even where an adequate legal remedy ultimately might turn out to exist. *See, e.g.*, *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 896 (N.D. Cal. 2022); *Belyea v. GreenSky, Inc.*, No. 3:20-CV-01693-JSC, 2023 WL 8701311, at *7 (N.D. Cal. Dec. 15, 2023). Judge Corley in *Belyea* held that an equitable claim may go forward as an alternative if, at the pleading stage, "it was premature to determine *as a matter of law* the plaintiff had an adequate remedy at law." *Belyea*, 2023 WL 8701311, at *7 (emphasis in original). In such cases, the court may reassess later in the case whether the legal claim is adequate. *Id.* If the court later determines that the legal claim is adequate, then under Ninth Circuit authority, the court must dismiss the equitable claim. Cases which involve alternative claims at the pleading stage are inapplicable to this case, which is nearing trial; it has been clear for a long time that Plaintiffs have pleaded a breach of implied covenant claim, even if it could not be certified for class treatment.

Plaintiffs also lean heavily on *Elgindy* and *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111 (N.D. Cal. 2023). Both cases were decided at the pleadings stage and are therefore inapplicable. They are also distinguishable for other reasons. *Elgindy* was an order on a motion to dismiss. The court held that the plaintiffs had alleged a UCL fraudulent prong claim and an FAL claim, but had failed to plead a common-law fraud claim. 2021 WL 1176535, at *11-14.

Common-law fraud requires an additional element of fraudulent intent, and the plaintiffs failed to plausibly allege intent. *Id.* at 14. As explained above, *Elgindy* held that the fraud-based claims were all rooted in the same theory even if they had different elements, so the plaintiff needed to demonstrate the lack of an adequate remedy at law for the court to award equitable restitution. *Id.* at 15. The court held that the legal claim (common-law fraud) was inadequate because "the elements of a common-law fraud claim require proof of conduct beyond that which must be shown to establish liability under the UCL and FAL." Notably, in making this ruling, the court emphasized that the plaintiffs had "failed to state a claim for common-law fraud." *Id.* The court interprets *Elgindy* to apply where the plaintiffs are not able to plead a legal claim on the facts alleged, meaning that plaintiffs have no adequate legal remedy as a matter of law. Here, Plaintiffs have pleaded a legal claim; they simply failed to meet the applicable standards to certify a class for that claim. *Elgindy* is distinguishable.

*Murphy*, like *Elgindy*, was an order on a motion to dismiss. The court noted that *Sonner* "has minimal application at the pleading stage." *Murphy*, 651 F. Supp. 3d at 1129. The plaintiffs alleged that their legal remedy was inadequate because they might recover less under their legal claim than under their equitable claims. *Id.* For example, to obtain a full refund of the product as a damages award, the plaintiffs would have to show that the product had no market value; but no such showing was required for restitution. *Id.* *Murphy* held that the plaintiffs were not required at the pleading stage to actually demonstrate that they would recover less damages than restitution, and so the court allowed the equitable claims to go forward. *Id.* The court understands *Murphy* as standing for the proposition that, at the pleading stage, an equitable claim may go forward if the plaintiff alleges that the damages award could be less than restitution, which would make the legal remedy inadequate. *See also Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024) (citing *Murphy* and finding that the plaintiff sufficiently alleged at the pleading stage that the legal claim was inadequate because the damages calculation might result in a lower recovery amount than under restitution); *French v. Banana Republic LLC*, No. 24-CV-05216-VC, 2024 WL 4682312, at *2 (N.D. Cal. Nov. 4, 2024) (same); *Crowder v. Shade Store, LLC*, No. 23-CV-02331-NC, 2025 WL 754067, at *2 (N.D. Cal. Mar. 10, 2025) (same). The *Murphy* line of

cases focused on differences in the calculation of remedies, not the elements of the claims themselves. Here, it is undisputed that Plaintiffs would recover the exact same amount under their damages claim and their restitution claim if Plaintiffs prevailed on the merits. There is no difference in the calculation of remedies. *Murphy* is distinguishable.

To the extent the cases cited by Plaintiffs suggest that a legal claim is inadequate if it has different elements of proof, the court finds this authority unpersuasive in light of *Key*.[5] Plaintiffs' argument boils down to this: a legal remedy is inadequate, even if it is based on the same theory and seeks the same monetary relief, if it is harder to prove. This argument runs smack into *Key*, which held that the failure to prove a legal claim does not make it inadequate. "In the Ninth Circuit, the relevant test is whether an adequate damages remedy is available, not whether the plaintiff elects to pursue it, or whether she will be successful in that pursuit." *Mullins v. Premier Nutrition Corp*., No. 13-CV-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom. Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020), *and aff'd sub nom. Sonner v. Premier Nutrition Corp*., 962 F.3d 1072 (9th Cir. 2020), *opinion amended and superseded on denial of reh'g*, 971 F.3d 834 (9th Cir. 2020). Plaintiffs' argument runs counter to Ninth Circuit authority.

For the reasons stated above, the court follows the line of cases which hold that a mere difference in proof between claims does not make the legal remedy inadequate where the claims are rooted in the same theory. *See, e.g.*, *Phillips*, 2024 WL 2830663, at *2 (rejecting argument that a remedy at law is inadequate if it has "different elements that are harder to prove and require additional showings of proof"); *Gradney*, 2025 WL 2105831, at *9 (rejecting argument that a remedy at law is inadequate if the UCL claim is "technically less rigorous"); *Clevenger v. Welch Foods Inc*., No. SACV 20-01859-CJC (JDEX), 2022 WL 18228288, at *5 (C.D. Cal. Dec. 14, 2022) ("mere differences in proof between the claims does not make the [legal] remedy inadequate"); *Gill v. Chipotle Mexican Grill, Inc.*, No. 8:24-CV-01672-FWS-JDE, 2025 WL 1443767, at *5 (C.D. Cal. May 19, 2025) ("In summary, Plaintiffs argue that restitution could be

[5] *Crowder* is the only case cited by Plaintiffs which came out after *Key*, and it is inapplicable for the reasons explained above.

higher or easier to obtain than damages. But the court is not persuaded that these allegations sufficiently reflect an *inadequate* remedy at law.").[6]

At oral argument, Plaintiffs pressed another argument which they briefly mentioned in their papers. They contend that the legal remedy is inadequate for the class because the breach of implied covenant claim "has not been certified" and "can provide no legal relief to the Class." Opp'n 3. Plaintiffs could not cite any case which would suggest that the failure to certify a class is enough to make a legal claim inadequate as to the class. Again, the only reason why the class has no legal claim is because Plaintiffs failed to raise any evidence of a method of common proof. Failure of proof "does not make [a legal] remedy inadequate." *Key*, 129 F.4th at 1142.

As the breach of implied covenant claim is an adequate legal remedy, the court dismisses Plaintiffs' UCL unlawful and unfair claim without prejudice because the court lacks equitable jurisdiction.

### C. Amendment Would Be Futile

In their opposition, Plaintiffs do not seek leave to amend their pleadings. Regardless, amendment would be futile.[7] Plaintiffs cannot demonstrate that they lack an adequate legal remedy because the court finds that the breach of implied covenant claim is adequate.

---

[6] Defendants also cite several cases where breach of the implied covenant of good faith and fair dealing was held to be an adequate remedy at law precluding federal jurisdiction over a claim for restitution under the UCL. *See, e.g., Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016); *Blain v. Liberty Mut. Fire Ins. Co.*, No. 22-CV-00970-AJB-DEB, 2023 WL 3612390, at *1 (S.D. Cal. May 22, 2023); *Avdi v. State Farm Gen. Ins. Co.*, No. 8:24-CV-00812-FWS-DFM, 2024 WL 5424416, at *5 (C.D. Cal. Nov. 27, 2024). The plaintiffs in these cases did not argue that the breach of implied covenant claim was inadequate because it was harder to prove, so the cases are not precisely on point. *See Moss*, 197 F. Supp. 3d at 1203 ("Plaintiff does not dispute that she has an adequate remedy at law by way of her breach of contract claims"). Nevertheless, the cases do suggest that a breach of implied covenant claim can be an adequate legal remedy where the equitable claim is for violation of the UCL, which is consistent with the court's finding here. *See id.* ("Where . . . a plaintiff can seek money damages if she prevails on claims for breach of contract or breach of the implied covenant of good faith and fair dealing, she has an adequate remedy at law. . . . Such is the case even if all of plaintiff's non-UCL claims ultimately fail.").

[7] "To amend a pleading after the scheduling order deadline . . . the moving party must both demonstrate good cause to modify the scheduling order under Rule 16(b), and show that amendment is warranted under Rule 15(a)." *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 653–54 (N.D. Cal. 2025) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992)). Leave to amend may be denied "where the amendment would be futile," *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

Plaintiffs raise one additional argument in their opposition. They contend that they have stated a claim for entitlement to injunctive relief under the UCL. Opp'n 2-3. Plaintiffs are improperly attempting to resuscitate their injunctive relief claim, which the court dismissed almost a year ago when it found that Plaintiffs failed to prove standing for injunctive relief. Order on Supp. Briefing 34-35. That order stands. In any event, Plaintiffs' improper attempt also fails on its merits. Plaintiffs raise a convoluted argument that the UCL class that was certified "now includes current policyholders who have been, or will be, offered Good Driver policy premiums at renewal," and injunctive relief is necessary to protect the current policyholders' rights. *Id.* The court only certified a class for the class period up to "the present." Class Cert. Order 47. The class does not include relief for future policy renewals.

**D. Evidence Outside the Pleadings**

Defendants present evidence outside the pleadings that Plaintiffs seek identical monetary relief under their breach of implied covenant claim and their UCL claim. Mot. 10; Reply 4-5; [Docket No. 438-39 (Scott Brown Decl., Dec. 6, 2024) ¶ 51, Exs. A and F]. Therefore, the court treats this as a summary judgment motion under Rule 56 and considers that evidence. *See Tseng*, 665 F. Supp. 3d at 1142 (N.D. Cal. 2023). Plaintiffs failed to raise any evidence to rebut Defendants' argument that Plaintiffs seek identical monetary relief under their legal and equitable claims. For the reasons stated above, the court finds that it lacks jurisdiction to award equitable restitution under Plaintiffs' UCL claim.

## IV. CONCLUSION

The court finds that Plaintiffs' breach of implied covenant claim is an adequate legal remedy. For this reason, the court cannot exercise equitable jurisdiction over Plaintiffs' UCL claim, and lacks authority to make a merits determination on that claim. *Guzman*, 49 F.4th at 1314. Where the case was originally filed in federal court, the proper course when the court lacks equitable jurisdiction is to dismiss the UCL claim without prejudice to refiling somewhere other than federal court. *Id.* The court grants Defendants' motion and dismisses the UCL claim without prejudice to refiling elsewhere.

On August 21, 2025, the parties filed a joint discovery letter regarding a dispute about

Defendants' data production necessary for Plaintiffs to provide class notice. [Docket No. 522.] Given that this order dismisses Plaintiffs' class claim, the joint discovery letter is denied as moot.

Plaintiffs' individual claim for breach of the implied covenant remains before this court. A case management conference will be held on October 29, 2025 at 1:30 p.m. by Zoom videoconference. The parties shall file an updated joint case management statement by October 22, 2025.

**IT IS SO ORDERED.**

Dated: August 29, 2025

Donna M. Ryu
Chief Magistrate Judge