UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDD KING, et al.,

              Plaintiffs,

    v.

NATIONAL GENERAL INSURANCE COMPANY, et al.,

              Defendants.

Case No.  15-cv-00313-DMR

**ORDER GRANTING MOTION TO STAY**

Re: Dkt. No. 532

The sole remaining claim in this case is an individual claim for breach of the implied covenant of good faith and fair dealing brought by Plaintiffs Diedre King and Edd King against Defendants National General Insurance Company ("NGIC"), Integon National Insurance Company ("INIC"), Integon Preferred Insurance Company ("IPIC"), and MIC General Insurance Corporation ("MICG").  Plaintiffs now move to stay this federal court action (*King I*) pending a parallel state court proceeding, *Edd King v. National General Ins. Co*., S.F. Super. Ct., No. CGC-25-628850 (*King II*).  [Docket Nos. 532 (Mot.); 534 (Reply).]  Defendants oppose a stay.  [Docket No. 533 (Opp'n).]

This matter is suitable for determination without oral argument.  Civ. L.R. 7-1(b).  For the following reasons, Plaintiffs' motion is GRANTED.

## I.    BACKGROUND

Plaintiffs initially brought this case as a putative class action alleging that Defendants violated section 1861.16(b) of the California Insurance Code by failing to offer qualified drivers the lowest rates for Defendants' automobile insurance policies.  Lengthy proceedings before this court and the California Department of Insurance followed.  Plaintiffs moved for class certification on two claims: 1) restitution under the unlawful and unfair prongs of the Unfair Competition Law

1    ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., and 2) damages under breach of the implied

2    covenant of good faith and fair dealing.  On May 5, 2025, the court certified a class as to

3    Plaintiffs' UCL claim, but denied class treatment of the breach of the implied covenant claim.

4    [Docket No. 480 (Order Certifying Class).]  Both claims were based on the same conduct and

5    alleged violations of section 1861.16(b).

6        On June 3, 2025, after discovery had closed and with five months remaining before trial,

7    Defendants filed a motion for judgment on the pleadings or alternatively summary judgment.

8    [Docket No. 490.]  Defendants argued for the first time that the UCL claim had to be dismissed

9    because the federal court lacked equitable jurisdiction over it.  *Id.*  On August 29, 2025, the court

10   granted Defendants' motion and dismissed the UCL claim for lack of equitable jurisdiction.

11   [Docket No. 525 (Order Dismissing UCL Claim).]  The dismissal was without prejudice to

12   Plaintiffs refiling their UCL claim in an appropriate forum.  *Id.*  As a result, only Plaintiffs'

13   individual claim for breach of the implied covenant remains before this court.

14       On September 5, 2025, Plaintiffs filed their UCL claims in the San Francisco County

15   Superior Court as a putative class action.  [Docket No. 532-1 (*King II* Compl.).]  The parties do

16   not dispute that the allegations in the state court complaint involve the same parties, conduct, and

17   statutory violations as alleged in *King I*.

18       Plaintiffs argue that the federal action should be stayed under the *Colorado River* doctrine.

19   Defendants respond that the federal action should proceed to trial on Plaintiffs' individual breach

20   of implied covenant claim.

21   **II.    LEGAL STANDARD**

22       The *Colorado River* doctrine provides that, in some circumstances, a federal suit may be

23   stayed or dismissed due to the presence of a concurrent state court proceeding.  *Colorado River*

24   *Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).  The doctrine rests on

25   "considerations of '[w]ise judicial administration, giving regard to conservation of judicial

26   resources and comprehensive disposition of litigation.'"  *Id.* at 817 (quoting *Kerotest Mfg. Co. v.*

27   *C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183 (1952)).  "Abstention from the exercise of federal

28   jurisdiction is the exception, not the rule."  *Id.* at 813.  It is only appropriate in "exceedingly rare"

United States District Court
Northern District of California

2

circumstances. *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017).

There are eight factors the court must evaluate in assessing the appropriateness of a *Colorado River* stay or dismissal:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Seneca*, 862 F.3d at 841-42 (quoting *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011)). These factors are not a "mechanical checklist"—rather, the court must examine them in "a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 842 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 21 (1983)). The balance of the factors is "heavily weighted in favor of the exercise of jurisdiction." *Cone Mem'l Hosp.*, 460 U.S. at 16.

## III. DISCUSSION

The court examines each *Colorado River* factor and finds that this case presents exceptional circumstances that justify federal abstention.

### A. Jurisdiction Over Property and Inconvenience of Forum

The parties agree that the first two *Colorado River* factors are neutral. Neither this court nor the state court have assumed jurisdiction over property. Plaintiffs live in San Francisco, so both forums are equally convenient. *See Nakash v. Marciano*, 882 F.2d 1411, 1415 n.6 (9th Cir. 1989) ("Some of the factors identified by the Court are irrelevant to this case. There is no *res* in the control of either court and the forums are equally convenient.").

### B. Avoidance of Piecemeal Litigation

Plaintiffs argue that the third *Colorado River* factor weighs in their favor. They contend that resolution of the state case will "likely make this case unnecessary," while going forward in both cases will "engender piecemeal litigation." Mot. 8. Defendants respond that piecemeal litigation is not likely because the federal action can be tried and decided before the state court

United States District Court
Northern District of California

1   reaches any substantive issues.  Opp'n 6.  Defendants also argue that Plaintiffs must show

2   something more than the possibility of piecemeal litigation to carry this factor of the *Colorado*

3   *River* test.

4          "Piecemeal litigation occurs when different tribunals consider the same issue, thereby

5   duplicating efforts and possibly reaching different results."  *Am. Int'l Underwriters (Philippines),*

6   *Inc. v. Cont'l Ins. Co*., 843 F.2d 1253, 1258 (9th Cir. 1988).  "A general preference for avoiding

7   piecemeal litigation is insufficient to warrant abstention. . . . Instead, there must be exceptional

8   circumstances present that demonstrate that piecemeal litigation would be particularly

9   problematic."  *Seneca*, 862 F.3d at 842-43.  For example, the Ninth Circuit in *Seneca* noted that

10  piecemeal litigation in *Colorado River* was problematic because that case concerned water rights

11  in a river system; inconsistent dispositions of the water rights could trigger further litigation and

12  would be contrary to the clear federal policy for comprehensive adjudication of water rights.  *Id.* at

13  843.  In contrast, abstention is not warranted simply because a case "involves multiple defendants,

14  numerous claims, and crossclaims, that all present complex state tort and insurance issues."  *Id.*

15  These arguments are "the stuff of diversity jurisdiction," and do not evince "a special or important

16  rationale or legislative preference for resolving these issues in a single proceeding."  *Id.*

17         Here, concerns about piecemeal litigation support federal abstention.  The state court

18  proceeding is a putative class action.  The federal case involves the same facts, parties, and legal

19  theory as the state court proceeding, but will only resolve an individual claim.  The state action is

20  "vastly more comprehensive" compared to the federal action and can "adjudicate the rights of

21  many parties."  *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

22  Defendants argue "there is no substantial risk of piecemeal litigation duplicating efforts and

23  possibly reaching different results" because the federal action can reach a final decision before the

24  state court reaches any substantive issues.  Opp'n 6.  The court is not persuaded.  As discussed

25  below, the parties do not dispute that resolution on the merits in *King II* would resolve all issues in

26  *King I.*  But the effect of a win or loss in *King I* on the class claims in *King II* is unclear.  For

27  example, even if Plaintiffs prevail in *King I,* the state court in *King II* would still need to decide

28  substantive issues affecting the class.  Inconsistent findings between *King I* and *King II* could

United States District Court
Northern District of California

create confusion as to Defendants' obligations and the rights of class members in *King II*.  "The justifications that led to the development of the class action include the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-03 (1980).  Piecemeal litigation in this instance would run counter to the policies behind the class action mechanism.

This factor weighs in favor of a stay.

### C.      Order in Which the Forums Obtained Jurisdiction

The parties agree that the fourth *Colorado River* factor, the order in which the forums obtained jurisdiction, weighs against a stay.  Here, the individual claim in the federal action is entering the pretrial motion stage, while the state action was recently filed and is still in the pleadings stage.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions").

### D.      Rule of Decision

The fifth *Colorado River* factor is whether federal law or state law provides the rule of decision on the merits.  "[T]he presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction.  *Cone Mem'l Hosp.,* 460 U.S. at 26.  On the other hand, the presence of state-law issues only supports abstention "when the state law questions are themselves complex and difficult issues better resolved by a state court." *Seneca*, 862 F.3d at 844.  Otherwise, the presence of state-law issues is not relevant.

The only claim in this case is a state law claim.  Plaintiffs make no attempt to argue that the state law questions are particularly complex.  This factor is neutral.

### E.      Adequacy of State Forum

The parties agree the state court can adequately adjudicate Plaintiffs' claims.  "[W]hile inadequacy of the state forum . . . may preclude abstention, the alternatives never compel abstention."  *Seneca*, 862 F.3d at 845.  The sixth *Colorado River* factor is neutral.

### F.    Avoidance of Forum Shopping

The seventh *Colorado River* factor is the desire to avoid forum shopping.  The court finds that neither party engaged in improper forum shopping.  "It typically does not constitute forum shopping where a party 'acted within his rights in filing a suit in the forum of his choice.'" *Seneca,* 862 F.3d at 846 (quoting *Madonna*, 914 F.2d at 1371).  Plaintiffs filed the initial complaint in federal court, as was their right.  The court ultimately ruled it had no equitable jurisdiction over the UCL claims and dismissed them, but without prejudice to Plaintiffs re-filing the UCL claims in state court.  Plaintiffs promptly did so.  Likewise, Defendants now appropriately seek to proceed to trial in federal court, the forum initially selected by Plaintiffs.

This factor is neutral.

### G.    Parallelism of the Suits

The final *Colorado River* factor is "whether the state court proceedings will resolve all issues before the federal court," also described by courts as the "parallelism" factor.  *Seneca*, 862 F.3d at 845.  "Parallelism is necessary but not sufficient to counsel in favor of abstention."  *Id.* "[E]xact parallelism . . . is not required.  It is enough if the two proceedings are 'substantially similar.'"  *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).

Plaintiffs argue that *King I* and *King II* are parallel because they involve the same parties and arise from the same operative facts involving alleged violations of California Insurance Code section 1861.16(b).  Defendants argue that the proceedings are not parallel because Defendants have filed a demurrer in *King II* challenging Plaintiffs' individual claims as barred by the statute of limitations.  Defendants also argue that "promptness" is a consideration in the parallelism analysis, citing *Cone Memorial Hospital.*  The Supreme Court in *Cone Memorial Hospital* stated: "When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay."  *Cone Mem'l Hosp.*, 460 U.S. at 28.  Defendants read this language to mean that "promptness" is part of the parallelism factor.  They argue the state action will not provide a prompt resolution because it is very early in its procedural posture compared to

the federal action.

Defendants' statute of limitations argument is too speculative to affect the court's analysis. Defendants do not reach the merits of that argument, and instead merely assert that their demurrer is based on the statute of limitations and that equitable tolling does not apply. Opp'n 9. Plaintiffs contend they will defeat the demurrer because of the application of equitable tolling. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974); *Addison v. State of California*, 21 Cal. 3d 313 (1978). The court finds that Defendants' vague and conclusory assertion does not create a substantial doubt about the ability of *King II* to provide a complete resolution of the disputed issues.

As for Defendants' "promptness" argument, the court is unpersuaded that the eighth *Colorado River* factor requires comparing how long the state and federal actions will take to adjudicate. The case cited by Defendants, *Cone Memorial Hospital*, did not discuss parallelism as a separate factor. Rather, the Supreme Court found that abstention was inappropriate due to the fourth *Colorado River* factor—the order in which the forums obtained jurisdiction. *Cone Mem'l Hosp.*, 460 U.S. at 23.[1] The federal suit in *Cone Memorial Hospital* was "running well ahead" of the state suit at the time of the motion to stay, so the stay would have delayed resolution of the issues. *Id.* at 22. Defendants' argument that *King II* is "unlikely to be decided anytime soon" simply rehashes their arguments from the fourth *Colorado River* factor—that the state court proceeding will take longer because it was only recently filed. Opp'n 10. Moreover, the speed and efficiency of the state court proceeding will no doubt be aided by the fact that the same parties and counsel have spent years in federal court developing their competing theories, evidence, and damage models on a class-wide basis.

The Ninth Circuit has explained that the parallelism factor is meant to ensure "comprehensive disposition of litigation." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 982 (9th Cir. 2011) (citing *Colorado River*, 424 U.S. at 817). "Otherwise, a stay or dismissal will neither conserve judicial resources nor prevent duplicative litigation." *Id.* For example, in *Intel,*

---

[1] The Court also held that abstention was inappropriate because it was unclear if the state court could provide adequate relief under § 4 of the United States Arbitration Act of 1925. *Cone Mem'l Hosp.*, 460 U.S. at 26.

1    the Ninth Circuit held that a state action was not parallel to the federal action because the disputed

2    issues would only reach final resolution if the state court confirmed the disputed arbitration award.

3    *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). If the state court

4    overturned the arbitration award, there would be no final resolution and the case would have to

5    return to federal court, which of course would entail delays. *Id.* The Ninth Circuit emphasized its

6    concern with the "prompt and final resolution of all disputed issues," stating that a district court

7    "may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state

8    proceeding will end the litigation." *Id.* (citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*,

9    485 U.S. 271, 277 (1988)). In this context, "promptness" does not concern whether the state court

10   case is earlier in its procedural posture than the federal court case; rather, it examines whether the

11   state court case will reach a complete resolution of all disputed issues.

12          Plaintiffs explain that a win on the merits in state court would moot their federal case, and

13   a loss would foreclose the federal case.[2] Mot. 9. Defendants concede as much. Opp'n 10. The

14   court therefore has full confidence that a decision on the merits in the state court proceedings will

15   resolve the remaining individual claim before the federal court.

16          As Plaintiffs have shown that the cases are parallel, this factor is neutral. *See Seneca*, 862

17   F.3d at 845.

18          **H.    Balancing the Factors**

19          The court determines that the only non-neutral *Colorado River* factors are the avoidance of

20   piecemeal litigation and the order in which the forums obtained jurisdiction. One weighs in favor

21   of a stay and one weighs against it. These factors are not a "mechanical checklist"—rather, the

22   court must examine them in "a pragmatic, flexible manner with a view to the realities of the case

23   at hand." *Seneca*, 862 F.3d at 842 (citing *Cone Mem'l Hosp.*, 460 U.S. at 16, 21). The court

24   examines the history of the case and the realities of the parties' situation and finds that wise

25   judicial administration counsels staying this case.

26          The only reason Plaintiffs have now filed the UCL class claims in state court is because

27   _____

28   [2] This is because Plaintiffs' claims in state and federal court "arise from the same conduct and
     seek the same monetary recovery." Mot. 8-9.

United States District Court
Northern District of California

this court recently ruled it has no equitable jurisdiction over those claims. This ruling occurred late in the development of this case because Defendants did not raise the equitable jurisdiction challenge until months before trial, after a class had been certified as to the UCL claims and more than ten years after Plaintiffs filed their complaint. Thus, the delay in resolving Plaintiffs' class claims for violation of the UCL results from Defendants' own delay in bringing a challenge they could have raised years earlier.

Defendants cite *Cone Memorial Hospital* in their analysis of the order of jurisdiction. *Cone Memorial Hospital* is distinguishable because it concerned a motion to compel arbitration, which implicated "the statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Cone Mem'l Hosp.*, 460 U.S. at 23. Here, Defendants identify no similar statutory policy of rapid resolution of issues. To the contrary, the policies behind class actions weigh in favor of a stay. *Geraghty*, 445 U.S. at 402-03. And as previously noted, *King II* has the benefit of a significant head start, given the complete development of class-wide fact and expert evidence in *King I*.

Defendants argue that a resolution in *King I* would also moot all issues in *King II*, so it would be more efficient for *King I* to proceed to trial. The court has serious doubts about whether this is correct. For example, if Plaintiffs prevail in *King I*, it is unclear how that finding in an individual case would affect class members' claims in *King II*. Such piecemeal litigation creates precisely the sorts of inconsistencies and duplication of efforts that the class action vehicle is meant to avoid. *See Geraghty*, 445 U.S. at 402-03.

In sum, this case presents an exceptional circumstance that justifies the surrender of federal jurisdiction. Trying the individual case would mean expending considerable judicial resources for the resolution of a $500 claim. *See* Mot. 7 (valuing Plaintiffs' claim at $500). On top of that, a finding on Plaintiffs' individual breach of implied covenant claim could complicate their UCL class action claims in *King II* in contravention of the federal policy behind class actions. Far from promptly and efficiently resolving the issues, proceeding with *King I* would likely create duplicative judicial efforts and generate more litigation regarding the effect of *King I* on the class issues in *King II*. The court finds that, on balance, abstention is appropriate.

## IV.   CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' motion.  The case is STAYED. The hearing set for December 11, 2025 is vacated.  The parties shall file a status report every six months, beginning on June 1, 2026.


**IT IS SO ORDERED.**

Dated: December 8, 2025

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California